```
                                                    FILED
                                              Clerk's Office
                                                 USDC, Mass.
              UNITED STATES DISTRICT COURT    Date  9-15-04
              DISTRICT OF MASSACHUSETTS       By
                                                 Deputy Clerk
```

|  |  |
|---|---|
| EASTERN CONTRACTORS, INC., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 03-12216MLW |
| v. ) | |
| ) | |
| CITY OF WORCESTER and THOMAS ) | |
| R. HOOVER, City Manager, and HEERY ) | |
| INTERNATIONAL, INC. and THOMAS E. ) | |
| ELLIS, JR. ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF THE DEFENDANTS, HEERY INTERNATIONAL, INC. AND THOMAS E. ELLIS, JR., IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AND FOR ENTRY OF <u>SEPARATE AND FINAL JUDGMENT</u>**

Pursuant to Local Rule 7.1(B)(1), the defendants, Heery International, Inc. and Thomas E. Ellis, Jr. (collectively "Heery"), submit this memorandum of law in support of their motion for summary judgment and for entry of separate and final judgment as to all claims asserted against them by the plaintiff, Eastern Contractors, Inc. ("Eastern").

## I. INTRODUCTION

This matter arises out of a decision by the City of Worcester ("City") not to award a contract for the construction of the Worcester Vocational High School to Eastern because the City determined that Eastern was not the lowest responsible bidder. Heery's involvement with the Project is by virtue of a contract between Heery and the City whereby Heery agreed to provide construction management services on the Project, including but not limited to, reviewing general bids and recommending the award of the general bid.

After the City received general bids for the Project, Heery and the Project architect, Lamoureux Pagano Associates ("LPA"), conducted independent reviews of Eastern's references, bid documents, and Division of Capital Asset Management ("DCAM") update statement ("Update Statement"). During the course of their independent reviews, Heery and LPA discovered that there were a number of inaccurate statements and missing information in Eastern's Update Statement. The City offered Eastern the opportunity to correct the inaccurate statements and missing information in the Update Statement but Eastern failed to do so. Therefore, Heery and LPA recommended to the City that the City consider not awarding the construction contract on the Project to Eastern. The City subsequently determined that Eastern was not the lowest responsible bidder and awarded the construction contract for the Project to the second lowest bidder. The construction contract was awarded to Consigli/O'Connor Joint Venture ("Consigli/O'Connor"), whose bid was $1,342,632.00 higher than Eastern's $61,337,000 bid.

Eastern filed this lawsuit against Heery and Ellis alleging: (1) violation of c. 93 §102 (Count I); (2) violation of 42 U.S.C. §1981 (Count II); (3) violation of 42 U.S.C. §1983 (Count III); (4) violation of 42 U.S.C. §1985 (Count IV); (5) negligent misrepresentation (Count X); (6) interference with advantageous relationships (Count XI); and, (7) violation of c. 93A (Count XII).

As described herein, all of Eastern's claims fail as a matter of law. Specifically, Counts I through IV fail because there is no evidence that any actions of or recommendations made by Heery were based on the ethnicity or race of Eastern's

2

principals or employees. In addition, Eastern's claim under 42 U.S.C. §1983 (Count III) fails for the independent reason that neither Heery nor Ellis is a state actor.

Eastern's negligent misrepresentation claim (Count X) fails because there is no evidence of false information supplied by Heery, and Eastern cannot demonstrate that it reasonably relied on any information, false or otherwise, supplied by Heery.

Eastern's intentional interference with advantageous relationships claim (Count XI) fails because the alleged actions taken by Heery pursuant to Heery's contractual obligations are privileged. Further, the alleged "interference" resulted from the exercise of Heery's rights under its contract with the City. Moreover, Heery cannot be held liable for the independent reason that it was acting as an agent for the City when it performed its review of Eastern's bid on the Project and an agent cannot interfere with its principal's advantageous relationships as a matter of law. Finally, Eastern has no evidence that Heery acted intentionally or with actual malice in an effort to cause damage to Eastern.

Finally, Eastern's claim against Heery under M.G.L. c. 93A, §11 ("Chapter 93A") (Count XII) fails as a matter of law because Eastern cannot demonstrate that Heery committed any "unfair or deceptive trade practice" that would give rise to a Chapter 93A claim.

In addition, as there is no just reason for delay, Heery and Ellis request that the Court issue an Order directing the Clerk to enter separate and final judgment in their favor.

## II.   STATEMENT OF UNDISPUTED FACTS

Heery hereby incorporates its Statement of Undisputed Facts filed herewith. In general, Heery discovered numerous inaccurate statements and missing information in

3

to demonstrate the "integrity" component of the "skill, ability and integrity" required by law to be a responsible bidder for the Project.

### III.    ARGUMENT

#### A.    Standard of Review

"Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Geo. Knight Co., Inc. v. Watson Wyatt & Co., 170 F.3d 210, 213 (1st Cir. 1999) (affirming grant of summary judgment in favor of consulting firm on charges of professional negligence). The moving party discharges its initial burden by "pointing out... that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986), cert. denied 484 U.S. 1066 (1988). The burden then shifts to the non-moving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. Summary judgment is appropriate against the non-moving party who fails to make this requisite showing. Dias v. Vose, 865 F. Supp. 53, 56 (D.Mass. 1994), aff'd, 1995 U.S. App. LEXIS 4894 (1995).

Under Massachusetts public procurement laws, "The awarding authority may reject any and all bids, if it is in the public interest to do so." M.G.L. c. 30, §39M. "[T]he purpose of competitive bidding statutes is not only to ensure that the awarding authority obtain the lowest price among responsible contractors, but also to establish an open and honest procedure for competition for public contracts." Annese Elec. Serv., Inc. v. Newton, 431 Mass. 763, 767 (2000). The determination of who is the lowest responsible and eligible bidder is a matter delegated to the awarding authority. Capuano,

5

Inc. v. School Bldg. Committee, 330 Mass. 494, 496 (1953). The courts will not interfere to decide questions committed by law to the determination of public officials. Id. citing, Mullholland v. State Racing Commission, 295 Mass. 286, 291-292 (1936); Criscuolo v. Department of Public Utilities, 302 Mass. 438, 442 (1939). "The court has no authority to take from such officers the duty of deciding the questions submitted to them and in the absence of illegal or arbitrary action their conclusions as to matters of fact within their jurisdiction cannot be controverted." Capuano, 330 Mass. at 496 (citations omitted).

**B.    Eastern's Claim Under M.G.L. c. 93, §102 Fails as a Matter of Law.**

Eastern's claim against Heery for violation of M.G.L. c. 93, §102 (Count I) fails as a matter of law because there is no evidence that Heery or Ellis interfered with the ability or right of Eastern to make or enforce any contract on the basis of the sex, race, color, creed or national origin of any of Eastern's principals or employees.

M.G.L. c. 93, §102 provides in relevant part:

> (a) All persons within the commonwealth, regardless of sex, race, color, creed or national origin, shall have, except as is otherwise provided or permitted by law, the same rights enjoyed by white male citizens, to make and enforce contracts, to inherit, purchase, to lease, sell, hold and convey real and personal property, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> \*    \*    \*
>
> (c) A violation of subsection (a) is established if, based on the totality of the circumstances, it is shown that any individual is denied any of the rights protected by subsection (a).

Eastern has no evidence sufficient to survive summary judgment on its claim under M.G.L. c. 93, §102. In particular, Eastern has no admissible evidence that Heery or Ellis denied Eastern of its rights under M.G.L. c. 93, §102 to "make and enforce

6

contracts" because of the race, color, creed or national origin of any of Eastern's principals or employees. In fact, Eastern itself has filed an affidavit stating that it concluded that the reasons given by the City for rejecting Eastern's bid "are merely a pretext ... and that the underlying motivation for rejection of Eastern's bid may relate to the failure of slate products which were submitted and approved for use on the Quinsigamond Elementary School Project, or institutional resentment and de facto disqualification caused by the fact that Eastern successfully sued the City of Worcester and recovered by settlement substantial monies due on the Quinsigamond Project."[1]

Moreover, the undisputed facts demonstrate that the City rejected Eastern's bid because the materials supplied by Eastern failed to demonstrate that Eastern possessed the skill, ability and integrity to perform the construction contract for the Project. In particular, the City cited the failure of Eastern to demonstrate that it could comply with the personnel requirements of the Project throughout the entire term of the Project. In addition, the City cited the numerous instances of incomplete information and material omissions in the materials submitted by Eastern.

There is absolutely no admissible evidence of any actions taken by Heery on account of the race, color, creed or national origin of any of Eastern's principals or employees. Therefore, Eastern's claim fails as a matter of law.

C.  **Eastern's Claim under 42 U.S.C. §1981 Fails as a Matter of Law.**

Similar to the claim brought under M.G.L. c. 93, §102, Eastern's claim under 42 U.S.C. §1981 ("Section 1981") (Count II) fails as a matter of law because there is no evidence that Heery denied Eastern of its rights to "make and enforce contracts" because

---

[1] Heery and Ellis do not agree with the statements made by Mr. Motwane in his affidavit but accept Mr. Motwane's statements as true for purposes of this motion.

7

of the race, color, creed or national origin of any of Eastern's principals or employees.

Section 1981 provides, in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

As described above, there is no evidence of any actions taken by Heery on account of the race, color, creed or national origin of any of Eastern's principals or employees. Therefore, Eastern's claim fails as a matter of law.

**D.   Eastern's Claim under 42 U.S.C. §1983 Fails as a Matter of Law.**

The initial inquiry under 42 U.S.C. §1983 ("Section 1983") is "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Woodley v. Nantucket, 645 F. Supp. 1365, 1369 (D. Mass., 1986). Eastern's Section 1983 claim against Heery fails as a matter of law because: (1) Heery was not acting under the color of law when performing the acts of which Eastern complains; and (2) there is no evidence that Heery violated Eastern's equal protection rights.

**1.   Heery is not a State Actor.**

Eastern's claim under Section 1983 fails as a matter of law because Heery is not a state actor. In order to succeed on a claim under Section 1983, Eastern must demonstrate that it was deprived of a right secured by the Constitution or laws of the United States and that Heery acted under color of state law, or more precisely, "under color of any statute, ordinance, regulation, custom, or usage of any State...." 42 U.S.C. §1983;

8

Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970); see Malachowski v. City of Keene, 787 F.2d 704, 710 (1st Cir. 1986) (per curiam) ("It is black-letter law that a showing of interference with a constitutionally-protected right by someone acting under color of state law is a prerequisite to a §1983 action.").

The issue in this case, similar to that in National Collegiate Athletic Association v. Tarkanian, 488 US 179 (1988), is whether the City's actions in accepting Heery's recommendation not to award the construction contract on the Project to Eastern transformed Heery into a state actor. Like in Tarkanian, the answer here is "no." In Tarkanian, the National Collegiate Athletic Association ("NCAA") recommended that the University of Nevada – Las Vegas ("UNLV") impose sanctions on Tarkanian, UNLV's head basketball coach, which included suspension, and UNLV imposed the sanctions recommended by the NCAA. Id. at 186. Subsequently, Tarkanian filed suit against UNLV and the NCAA under Section 1983 claiming violations of due process. Id. at 189. In ruling that the NCAA was not a state actor, the Court stated that "[c]learly UNLV's conduct was influenced by the rules and recommendations of the NCAA, a private party." Id. It was UNLV, the state entity, however, that actually suspended Tarkanian. Id. As a result, the NCAA was not transformed into a "state actor." Id.

Here, like in Tarkanian, it was the City, and not Heery, that made the decision not to award the construction contract for the Project to Eastern. Although the City might have been influenced by Heery's recommendation, the City retained the authority to decide whether or not to award the construction contract to Eastern. As a result, Heery's recommendation that the City not award the construction contract to Eastern does not transform Heery into a state actor as a matter of law.

9

## 2.  Eastern has no Evidence that it was Deprived of its Equal Protection Rights Based on Impermissible Considerations.

Even if Heery could be considered a "state actor" (which it cannot), Eastern's claim under Section 1983 fails for the independent reason that there is no evidence that Heery violated Eastern's equal protection rights. In order to succeed on its Section 1983 claim based on violation of equal protection rights, Eastern must put forth evidence that: "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Yerardi's Moody Street Restaurant & Lounge v. Board of Selectmen of the Town of Randolph, 932 F.2d 89 (1st Cir. 1991).

Here, there is no evidence of any selective treatment of Eastern by Heery. Heery performed its contractually mandated review of Eastern's bid submissions. Moreover, after Eastern's bid was rejected by the City, Heery also reviewed the bid submission of the second lowest bidder, Consigli/O'Connor. In fact, in its review of the second lowest bidder, Heery became concerned about project staffing and requested additional information. In response Consigli/O'Connor "provid[ed] a thorough and detailed outline of their project staffing and management plan." SOF ¶50. Heery did not, however, find any incomplete information or omissions, like those that plagued Eastern's bid.

Moreover, no evidence exists that any alleged "selective treatment" of Eastern by Heery was based on impermissible considerations, such as race or ethnicity. In fact, Eastern's allegations of ethnic-based motives are after-the-fact efforts to make a case, as Eastern originally charged that the "selective treatment" by the City of not awarding it the construction contract for the Project was "the failure of slate products which were

10

submitted and approved for use on the Quinsigamond Elementary School Project, or institutional resentment and de facto disqualification caused by the fact that Eastern successfully sued the City of Worcester and recovered by settlement substantial monies due on the Quinsigamond Project." There is not even an allegation in Eastern's complaint that Heery was in any way involved in this alleged decision.

Because there is no evidence of any "selective treatment" of Eastern by Heery or that any alleged "selective treatment" (if it did exist) was based on impermissible considerations, such as race or ethnicity, Eastern's claim under Section 1983 against Heery fails as a matter of law.

E.     **Eastern's Claim under 42 U.S.C. §1985 Fails as a Matter of Law.**

Eastern's claim under 42 U.S.C. §1985 ("Section 1985") fails as a matter of law because there is no evidence of a conspiracy to deprive Eastern of its equal protection rights. Eastern does not identify a particular subsection of Section 1985 under which it is bringing the claim. Subsection 1 relates to preventing officers from performing their duties. Subsection 2 relates to intimidating parties, witnesses, or jurors. Neither of these subsections is applicable to the limited allegations presented by Eastern. Subsection 3 appears to be the only potentially applicable subsection. In order to prevail under 42 U.S.C. §1985(3), Eastern must prove:

> the existence of (1) a conspiracy, (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege.

To state a claim under Section 1985, a plaintiff must allege: "(1) a conspiracy to violate his constitutional rights; and (2) some racial or other class-based discriminatory animus

11

behind the conspirators' actions." Stanley v. City of New York, 587 F. Supp. at 396 (citations omitted); Gross v. Bohn, 782 F. Supp. 173, 181 (D. Mass., 1990).

Here, there is no evidence establishing the elements necessary to make out a cause of action under Section 1985. Eastern has no facts demonstrating the existence and scope of any alleged conspiracy, nor can it identify any evidence of a racial or class-based discriminatory animus behind the alleged conspirators' actions. As a result, Eastern's claim under Section 1985 fails as a matter of law.

### F.     Eastern's Negligent Misrepresentation Claim Fails as a Matter of Law.

The courts of Massachusetts follow the Restatement (Second) of Torts when evaluating the liability of a professional to a third-party for negligent misrepresentation. Nycal Corp. v. KPMG Peat Marwick LLP, 426 Mass. 491, 495-6 (1998); North American Specialty Ins. Co. v. LaPalme, 258 F.3d 35, 38-9 (1st Cir. 2001). Under the Restatement rule, a finding of liability requires: 1) inaccurate information; 2) negligently supplied; 3) in the course of one's professional endeavors; 4) to a third person or limited group of third persons whom the professional actually intends or knows will receive the information; 5) for a transaction that the professional actually intends to influence; and 6) with the result that the third-party justifiably relies on such information to his detriment. LaPalme, 258 F.3d at 41-2.

#### 1.     There Is no Evidence of False Information Supplied by Heery.

In order to recover on a misrepresentation claim, Eastern must put forward "proof of a statement made, as of the party's own knowledge, which is <u>false</u>, provided the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge." Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 458 (2002)

12

(emphasis added). Here, Eastern has no admissible evidence that Heery made any false statement. Heery merely reported to the City what it found during its review of Eastern's bid on the Project. In fact, Eastern does not identify one statement made by Heery in its Amended Verified Complaint that it claims is false. Because Heery did not make any false statements, Eastern's claim for negligent misrepresentation fails as a matter of law.

### 2. Eastern did not Rely on any Information Supplied by Heery as a Matter of Law.

Moreover, Eastern's negligent misrepresentation claim fails as a matter of law for the independent reason that Eastern did not rely on any statements made by Heery. Before a plaintiff can recover for negligent misrepresentation, it must put forward proof that it justifiably relied to its detriment on the alleged misrepresentation. Russell v. Cooley Dickinson Hospital, 437 Mass. 443, 458 (2002) ("without establishing an inducement to action or forbearance, the plaintiff cannot meet her burden of proving misrepresentation at trial and summary judgment is appropriate,"); Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 523 (1989) ("[where] the evidence does not support a finding that the plaintiff reasonably relied to his detriment," plaintiff could not recover for either intentional or negligent misrepresentation).

Here, the basis of Eastern's negligent misrepresentation claim is that Heery made false statements to the City, upon which the City relied when deciding that Eastern was not the lowest qualified bidder. Amended Verified Complaint ¶111. Eastern has no evidence (and does not even allege) that it relied in some way statements made by Heery to the City. As a result, its negligent misrepresentation claim fails as a matter of law.

G.  **Eastern's Claim for Interference with Advantageous Relationships Fails as a Matter of Law.**

  1.  **Heery's Actions Under its Contract with the City are Privileged and Heery cannot be Held Liable for the Exercise of its Rights Under its Contract with the City.**

Eastern's claim that Heery intentionally "interfered" with advantageous relationships fails, as a matter of law, because any alleged actions taken by Heery were privileged. A construction manager, like Heery, cannot be liable for intentional interference with contractual relations where the alleged interference results from the <u>bona fide exercise of its own rights</u> or where the construction manager possesses an equal or superior interest to that of the plaintiff in the subject matter. Corey v. Eastman, 166 Mass. 279 (1896); Victor M. Solis Underground Utility & Paving Co., Inc. v. City of Laredo, 751 S.W.2d 532, 535 (Tex. App. 1988) (emphasis added).

In addition, a construction manager, like Heery, is privileged to interfere with contractual relations where its interference is in the best interest of its principal, in this case, the City. Waldinger Corp. v. CRS Group Engineers, Inc., Clark Dietz Div., 775 F.2d 781, 790 (7th Cir. 1985); Dehnert v. Arrow Sprinklers, Inc., 705 P.2d 846, 850 (Wyo. 1985); Santucci Constr. Co. v. Baxter & Woodman, Inc., 502 N.E.2d 1134, 1139 (Ill. App. 1986). See Riblet Tramway Co. v. Erickson Assocs., Inc., 655 F. Supp. 81, 87 (D.N.H. 1987) (architect privileged where it gave honest advice to its client).

In Solis, the plaintiff, a contractor on a sewer project, brought an action for tortious interference with contractual relations against, among others, LAN, the project's consulting engineer. Id. at 533. Under its contract with the City of Laredo ("City"), LAN was responsible for continuously inspecting the contractor's work and reporting any failures of the work to the materials to conform to the project specifications. Id. at 534.

14

The plaintiff alleged that LAN conspired with the City's inspector, Ortiz, to harass the plaintiff into breaching its contract with the City. Id. The plaintiff alleged that a conspiracy between LAN and Ortiz forced the plaintiff to become angry and commit an act in breach of the plaintiff's contract. Id. The plaintiff testified that Ortiz disrupted the work at the site and hindered the plaintiff's ability to perform the work. Id.

In affirming a directed verdict in favor on LAN on the tortious interference with contractual relations claim, the Court stated that an "important element in a right of recovery for contract interference is that the interference must be without right or justification." Id. at 535. "Interference with contractual relations is privileged where it results from the bona fide exercise of a party's own rights or where the party possesses an equal or superior interest to that of the plaintiff in the subject matter." Id. In Solis, LAN had the absolute right under its contract to reject work that did not meet contract specifications. Id. LAN could not be liable for contract interference because the recommendation to terminate the contract with the plaintiff was based on LAN's superior contractual rights with the City and LAN's interest in protecting those rights. Id. LAN was justified in exercising its superior legitimate interest by recommending termination of the plaintiff's contract. Id.

Here, as in Solis, any alleged actions by Heery cannot form a basis for an intentional interference with advantageous relationships claim because, like LAN, the Heery's actions in making recommendations were privileged. Heery was justified as a matter of law, by the exercise of its own rights under its contract with the City, to perform the actions which the plaintiffs now claim amount to interference with advantageous relationships. Specifically, Heery had a duty to review the general bids and

15

make a recommendation as to the bid results. Heery was justified as a matter of law in taking all of the above actions under its contract. Therefore, Heery's actions cannot give rise to liability as a matter of law.

Furthermore, Heery's alleged actions are privileged for the independent reason that they were taken to further their client's, (the City's), best interests. Eastern has made no allegation and offered no proof that Heery's alleged actions were taken to further their own goals or interests. Instead, Eastern appears to allege that Heery's recommendation that Eastern not be accepted as the lowest qualified bidder is based on some unproven racial or ethnic discrimination. There is no evidence on this alleged discrimination, however.

Consistent with the holding in Solis, Heery's alleged interference with advantageous relationships was a privileged activity because it resulted from the bona fide exercise of Heery's contractual rights. Solis, 751 S.W. 2d at 533. As a result, because Heery's alleged actions were privileged as a matter of law, summary judgment should enter in their favor as to Eastern's interference with advantageous relations claims.

2.  **As the City's Agent, Heery Cannot be Held Liable for Interfering with the City's Advantageous Relationships.**

Heery cannot be held liable for the independent reason that it was acting as an agent for the City when it performed its review of Eastern's bid on the Project and an agent cannot interfere with its principal's advantageous relationships as a matter of law. In Hunneman Real Estate Corp. v. The Norwood Realty, Inc., 54 Mass. App. Ct. 416 (2002), the Court held that the plaintiff could not pursue a cause of action for tortious interference against the owners, officers, or employees of the plaintiff corporation when

16

the consequence would be for the company's owners, officers, or employees, in effect, being liable for interference with themselves. Id. at 425. This principle is based in part on the notion that an employee or an officer is acting as an agent of a corporation, and one cannot be guilty of tortious interference with its own contract. Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 663 n. 3(1981); Riseman v. Orion Research, Inc., 394 Mass. 311, 314 (1985); Schinkel v. Maxi-Holding, Inc., 30 Mass. App. Ct. 41, 50 (1991).

Heery was employed by the City as an agent to evaluate bids submitted for the Project. As a result, Heery as an agent for the City cannot be held liable for interfering with advantageous relationships between the City and another party because, in effect, Heery would be held liable for interfering with its own advantageous relationships.

### 3. Eastern Failed to Allege or Establish Sufficient Facts to Support Its Claim.

Eastern's claim for intentional interference with advantageous relations fails for another independent reason that Eastern is unable to set forth any evidence that the Heery acted with malice towards Eastern. "Claims of intentional interference with contractual or advantageous relations require a showing that the defendant knowingly and for an improper purpose or by improper means induces a party to breach a contract or not to enter into or continue a business relationship, resulting in damage. Buster v. George W. Moore, Inc., 438 Mass. 635, 652 (2003). See Swanset Dev. Corp. v. Taunton, 423 Mass 390, 397 (1996); G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 272 (1991); United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812-17 (1990).

Improper motive as an element of interference with advantageous relations requires "actual malice," which is defined as "a spiteful, malignant purpose, unrelated to the legitimate corporate interest." King v. Driscoll, 418 Mass. 576, 587 (1994) quoting

17

Wright v. Shriners Hosp. For Crippled Children, 412 Mass. 469 (1992) (citations omitted). Personal and financial gains are generally not enough to satisfy the requirement for actual malice. Id. at 587 citing, Unite Truck Leasing Corp. v. Geltman, 406 Mass. 811 (1990). Evidence of personal dislike will not satisfy the actual malice requirement. Id. at 587. In addition, to prove improper motive, the plaintiff must show that the defendant acted with "actual" rather than "merely implied," improper purpose. Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 663-64 (1981).

Eastern cannot identify any evidence that Heery acted with "actual malice" or intentionally committed acts calculated to cause damage to Eastern. The facts in the record demonstrate that Heery was acting in the City's interest when reviewing Eastern's bid. Heery was required under its contract to perform the alleged actions of which Eastern complains. Eastern may disagree with the information that Heery uncovered during its review, but such disagreement is insufficient to create a triable issue as to whether Heery acted with actual malice or in bad faith in performing its review for the City.

Accordingly, because Eastern cannot identify legally sufficient evidence to satisfy the elements of its intentional interference with advantageous relations claim, Eastern's claim against Heery fails as a matter of law.

**H.    Eastern Failed to Allege or Establish Facts Sufficient to Recover Under Chapter 93A.**

Eastern's Chapter 93A claim fails as a matter of law because Heery's alleged actions of recommending that the construction contract for the Project not be awarded to Eastern do not rise to the level of an unfair or deceptive trade practice.

18

In deciding whether a Chapter 93 claim under § 11 is viable, the Court must assess: "(1) whether the practice . . . is at least within the penumbra of some common-law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive or unscrupulous; [and] (3) whether [the actions of the defendant] caused substantial injury to the [plaintiff]." PMP Associates, Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975); see also Anthony's Pier Four, Inc. v. HBC Assoc., 411 Mass. 451 (1991); Damon v. Sun Co., Inc., 87 F.3d 1467 (1st Cir. 1996); Tagliente v. Himmer, 949 F.2d 1 (1st Cir. 1991).

The Chapter 93A standard by its very nature, presupposes a certain level of intent. While no particular "intent" formulation has been adopted, it is clear from the language used in the § 11 cases, and the fact patterns themselves, that the conduct must breach ethical standards in the commercial marketplace. See, e.g. Tagliente, 949 F.2d at 7 (1st Cir. 1991) (the misrepresentations alleged by appellant are not so deceptive as to rise to a Chapter 93A claim); Colonial at Lynnfield, Inc. v. Sloan, 870 F.2d 761, 768 (1st Cir. 1989) (the court affirmed the denial of a 93A claim finding that "this is not a case in which one party led the other along to their detriment while putting in place a better deal for itself").

In this case, no evidence exists of an immoral, unethical, oppressive, or unscrupulous act on the part of Heery that caused damage to Eastern. Damon, 87 F.3d at 1467. Further, Eastern has no evidence to support any allegation that Heery intentionally provided false information to the City. Heery was required under its contract with the City to perform each of the alleged actions of which Eastern complains. The suggestion that Heery's services were somehow unfair and deceptive to Eastern is baseless, and

19

unsupported by the record in this case. Accordingly, because there is no evidence in the record to support a Chapter 93A claim against Heery, Eastern's Chapter 93A claims must be dismissed.

### IV. CONCLUSION

For the foregoing reasons, Heery requests that this Court grants its motion for summary judgment and direct the Clerk to enter separate and final judgment in their favor.

HEERY INTERNATIONAL, INC. and
THOMAS A. ELLIS,
By their attorneys,

David J. Hatem, PC BBO # 225700
Warren D. Hutchison BBO # 246150
Matthew M. O'Leary BBO # 652033
DONOVAN HATEM LLP
Two Seaport Lane
Boston, MA 02210
(617) 406-4500

Dated: September 15, 2004

### CERTIFICATE OF SERVICE

I, Warren D. Hutchison, hereby certify that on this 15th day of September, 2004, I served a copy of the foregoing on all counsel of record by first class mail, postage prepaid.

Warren D. Hutchison

00833621