F I L E D
Clerk's Office
USDC, Mass.
Date 9-15-04
By /s/
Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EASTERN CONTRACTORS, INC., )
)
Plaintiff, )
) Civil Action No. 03-12216MLW
v. )
)
CITY OF WORCESTER and THOMAS )
R. HOOVER, City Manager, and HEERY )
INTERNATIONAL, INC. and THOMAS E. )
ELLIS, JR., )
)
Defendants. )

## STATEMENT OF UNDISPUTED FACTS OF THE DEFENDANTS, HEERY INTERNATIONAL, INC. AND THOMAS E. ELLIS, JR.

Pursuant to Local Rule 56.1, the defendants, Heery International, Inc. and Thomas E. Ellis, Jr. (collectively "Heery") hereby submit this statement of undisputed facts.[1]

1. Heery entered into an agreement with the City of Worcester ("City") whereby Heery agreed to provide construction program management services to the City ("Agreement") in connection with the construction of a new Worcester Vocational High School located off Skyline Drive in the City ("Project"). **Exhibit A**, Agreement.[2]

2. Heery's scope of services under the Agreement included reviewing the general bids and making a recommendation as to the bid results. **Exhibit A**, Agreement.

3. The Agreement also provides that "[Heery] shall not be responsible for the acts or omissions of the Owner ... or [its] agents or employees." **Exhibit A**, Agreement.

4. The architect for the Project was Lamoureux Pagano Associates ("LPA"). **Exhibit B**, Affidavit of Ramesh K. Motwane In Support of Plaintiff's Application for

---

[1] The facts contained herein are offered for purposes of Heery's motion for summary judgment only. Heery reserves the right to contest these facts for trial or other purposes.
[2] All exhibits are attached to Heery's motion for summary judgment.

Preliminary Injunction ("Matwane Affidavit"), ¶40.; **Exhibit C**, Affidavit of Thomas E. Ellis, Jr. ("Ellis Affidavit"), ¶2.

5. The Project bid documents contain, among other things, Bidding Requirements & Contracting Requirements including a section entitled "Instructions to Bidders." **Exhibit D**, Instructions to Bidders.

6. The "Instructions to Bidders" portion of the bid documents states in relevant part:

> Each bid must also be accompanied by a Contractor Qualifications Statement Update ("Update Statement"). The Owner will furnish copies of the Update Statement form to bidders on request. <u>Any general bid submitted without a currently valid Certificate of Eligibility and Update Statement shall be invalid and will not be accepted by the Owner.</u>
>
> The Owner may at its discretion give the bidder notice of defects or omissions in the bidder's Update Statement and an opportunity to make revisions to this statement. A contractor's bid shall not be rejected if there are mistakes or omissions of form in its Update Statement, provided the contractor promptly corrects those mistakes or omissions upon request by the Owner.
>
> The Owner will consider the information contained in the Update Statement, which it may verify by its own investigation, and any material it may request from the DCAM according to 810 CMR 4.03(12) in determining whether the low bidder is eligible for contract award pursuant to M.G.L. Chapter 149, Section 44A(2). The Owner's eligibility review of the low bidder will concentrate on the bidder's performance since its last certification by the DCAM, provided, however, that the Owner may bring information to the DCAM's attention concerning a contractor's qualifications, if the DCAM was not aware of that information when it certified the contractor.
>
> \*   \*   \*
>
> Should the lower bidder be determined not to be eligible, the Owner shall review the next low bidder's eligibility, in accordance with these procedures and the applicable legal requirements until a bidder is determined to be eligible for contract award.

2

The contract shall not be awarded to any bidder whose submitted background investigation when investigated and verified by the Owner, raises significant question as to his ability to successfully complete the project in question due to problems with his competence and responsibility.

* * *

The Owner reserves the right to reject any and all general bids if it were in the public interest to do so. The Owner reserves the right to reject any sub-bid on any sub-trade, if it determines that such sub-bid does not represent the sub-bid of a person competent to perform the work as specified or that less than three (3) such sub-bids were received and that the prices were not reasonable for acceptance without further competition.

* * *

The Owner shall reject every general bid which ... does not conform to the statutory requirements or the bid documents.

The Owner reserves the right to reject any and all general bids which contains erasures, alterations, additions, errors or irregularities of any kind ... provided, however, that the Owner reserves the right to waive any and all informalities as to form. Matters as to substance shall not be waived.

* * *

The general contract will be awarded to the lowest responsible and eligible general bidder complying with the conditions and requirements provided in these Instructions, the bid forms and other bid documents.

**Exhibit D**, Instructions to Bidders.

7.  The Division of Capital Asset Management ("DCAM") update statement ("Update Statement") requires that the bidder provide the names and resumes of supervisory personnel that will be assigned to the Project if the bidder is awarded the contract. **Exhibit E**, Update Statement.

8.  The bid documents contain the specifications for the Project, which provide in relevant part:

3

> The Contractor shall provide a full time Project Manager qualified for a project of this size and complexity, and having the skills necessary for working with people. ***Project Manager shall primarily be on site.***
>
> The Contractor shall provide a qualified General Superintendent, who shall be present, full time, on site daily during all work in progress until the Date of Substantial Completion, and for such additional time thereafter as the Architect may determine.
>
> The Contractor shall employ a full time Scheduler.
>
> The Contractor shall employ a full time MEP and equipment coordinator.

**Exhibit F**, Project Specifications, Section 01015, 1.18.

9. On or about February 11, 2003, the plaintiff, Eastern Contractors, Inc. ("Eastern") submitted its bid for the Project. **Exhibit B**, Motwane Affidavit, ¶8; **Exhibit C**, Ellis Affidavit ¶3; **Exhibit G**, Amended Verified Complaint, ¶21.

10. Eastern was the apparent low bidder and the second low bidder was Consigli/O'Connor. **Exhibit C**, Ellis Affidavit ¶4; **Exhibit G**, Amended Verified Complaint, ¶¶22, 25.

11. Heery discovered, and so on March 6, 2003 informed Eastern, that there were deficiencies in its Update Statement and afforded Eastern the opportunity to correct the deficiencies as provided in the bid documents. **Exhibit C**, Ellis Affidavit ¶5; **Exhibit H**, Letter to Eastern from Heery dated March 6, 2003.

12. In particular, Heery requested in a March 6, 2003 letter that Eastern provide it with details concerning Eastern's supervisory personnel that would be assigned to the Project. **Exhibit H**, Letter to Eastern from Heery dated March 6, 2003.

13. Heery had learned, and so stated to Eastern, that there appeared to be a number of legal proceedings in which Eastern was a defendant that were not listed on

Eastern's Update Statement.  **Exhibit C**, Ellis Affidavit ¶6; **Exhibit H**, Letter to Eastern from Heery dated March 6, 2003.

14. As a result, Heery requested Eastern to provide a complete list of all legal proceedings that were filed against Eastern and not on Eastern's DCAM filing that was part of Eastern's bid.  **Exhibit H**, Letter to Eastern from Heery dated March 6, 2003.

15. Heery also learned, and so informed Eastern, that some of the construction projects listed in Eastern's Update Statement as "on schedule" in fact "did not finish on schedule or the end date of the project duration is prior to Worcester project bid date of February 11, 2003 with substantial work remaining to be complete."  **Exhibit C**, Ellis Affidavit ¶7; **Exhibit H**, Letter to Eastern from Heery dated March 6, 2003.

16. Heery requested that Eastern provide a complete, updated listing of the schedule status of all projects shown on Eastern's Update Statement.  **Exhibit H**, Letter to Eastern from Heery dated March 6, 2003.

17. Heery also learned, and so informed Eastern, that OSHA violations and fines were issued on the Normandin Middle School project since Eastern's last Certificate of Eligibility was issued by DCAM but were not listed on the Update Statement.  **Exhibit C**, Ellis Affidavit ¶8; **Exhibit H**, Letter to Eastern from Heery dated March 6, 2003.

18. Finally, Heery learned, and so informed Eastern, that a number of state, city and town agencies reported that projects on which Eastern was the general contractor were completed late, were significantly behind schedule, were not completed by Eastern and/or had serious management problems.  **Exhibit C**, Ellis Affidavit ¶9; **Exhibit H**, Letter to Eastern from Heery dated March 6, 2003.

19. Eastern submitted additional information to Heery through letters dated March 10, 2003 and March 14, 2003 and also submitted a revised update statement ("Revised Update Statement"). **Exhibit I,** Letter to Heery from Quinlan & Sadowski, PC dated March 10, 2003 **Exhibit J,** Revised Update Statement; **Exhibit K,** Letter to Heery from Eastern dated March 14, 2003 with attachments.

20. Heery reviewed the additional material and Revised Update Statement supplied by Eastern. **Exhibit C,** Ellis Affidavit ¶10.

21. On March 19, 2003, Heery wrote a letter to the City. **Exhibit C,** Ellis Affidavit ¶11; **Exhibit L,** Letter to the City dated March 19, 2003.

22. Heery had learned, and so its letter to the City stated, that "there are a number of projects that Eastern has indicated on their Update Statement as 'on schedule' which according to the owners of the projects were not completed within the contract timeframe or are not currently on schedule." **Exhibit C,** Ellis Affidavit ¶12; **Exhibit L,** Letter to the City dated March 19, 2003.

23. In particular, Heery learned, and so reported to the City that although Eastern reported the Freetown-Lakeville Middle School project, as "complete" in its Revised Update Statement, the project was not, in fact, complete. **Exhibit C,** Ellis Affidavit ¶13; **Exhibit L,** Letter to the City dated March 19, 2003.

24. The owner of the Freetown-Lakeville Middle School project told Heery that the project was scheduled to be complete in April, 2002 but the educational components of the project were not completed until September of 2002. **Exhibit C,** Ellis Affidavit ¶14; **Exhibit L,** Letter to the City dated March 19, 2003.

25. In addition, there were still ten athletic fields on the Freetown-Lakeville Middle School project that were not completed. **Exhibit C**, Ellis Affidavit ¶15; **Exhibit L,** Letter to the City dated March 19, 2003.

26. Heery also reported in its March 19, 2003 letter that Eastern listed the Greene and Borden Schools project as "on schedule." **Exhibit J,** Revised Update Statement; **Exhibit L,** Letter to the City dated March 19, 2003.

27. In the Revised Update Statement, Eastern changed the end date of the Greene and Borden Schools project from 11/15/02 to 09/02. **Exhibit J,** Revised Update Statement; **Exhibit L,** Letter to the City dated March 19, 2003.

28. The owner of the Greene and Borden Schools project informed Heery that the Greene and Borden Schools project did not achieve substantial completion until January 4, 2003. **Exhibit C**, Ellis Affidavit ¶16; **Exhibit L,** Letter to the City dated March 19, 2003.

29. In addition, the entire Greene and Borden Schools project, including demolition of the existing school, remained incomplete despite the fact that the entire project was to be completed within the original contract timeframe. **Exhibit C,** Ellis Affidavit ¶17; **Exhibit L,** Letter to the City dated March 19, 2003.

30. Heery reported in its March 19, 2003 letter to the City that the Medway High School project was revised from "on schedule" in Eastern's Update Statement to "not on schedule" in Eastern's Revised Update Statement. **Exhibit I,** Revised Update Statement; **Exhibit L,** Letter to the City dated March 19, 2003.

31. In addition, Heery informed the City that Medway High School told Heery that Eastern experienced "significant subcontractor management issues" on the Medway

High School project. **Exhibit C,** Ellis Affidavit ¶18; **Exhibit L,** Letter to the City dated March 19, 2003.

32. Eastern represented in the Revised Update Statement that the Lincoln-Sudbury High School project was on schedule. **Exhibit J,** Revised Update Statement; **Exhibit L,** Letter to the City dated March 19, 2003.

33. The Chairman of the Lincoln-Sudbury High School Building Committee informed Heery that the Lincoln-Sudbury High School project was not on schedule. **Exhibit C,** Ellis Affidavit ¶19; **Exhibit L,** Letter to the City dated March 19, 2003.

34. The Fairhaven High School project was not identified as a current project in Eastern's Revised Update Statement even though the punch list work on that project remained incomplete. **Exhibit C,** Ellis Affidavit ¶20; **Exhibit J,** Revised Update Statement; **Exhibit L,** Letter to the City dated March 19, 2003.

35. In addition, the Fairhaven High School project had an original contract time for completion of 26 months, and it took 42 months for Eastern to reach substantial completion. **Exhibit C,** Ellis Affidavit ¶21; **Exhibit L,** Letter to the City dated March 19, 2003.

36. These problems were all reported to the City. **Exhibit C,** Ellis Affidavit ¶22; **Exhibit L,** Letter to the City dated March 19, 2003.

37. Heery also informed the City in its March 19, 2003 letter:

> It is understood that not all projects are on schedule. For various reasons, some of which are beyond the control of the general contractor, projects get delayed. For example, this winter has probably had some impact on construction projects throughout the state. However, the bidder does have an obligation to correctly report the status of the project. [The Update Statement] does not ask the general contractor if they believe the project will be completed on time or if it opened in time for school to start. The question asks if it is *"on schedule"*. This is a yes or no question. It means

8

> did the contractor meet the contract date for completion, if Substantial Completion has been reached, or is the project progressing in accordance with the current accepted project schedule, which meets all contract completion dates as required by their contract with the Owner. The bidder has the opportunity to provide supplementary information if they see fit to explain an apparent negative response.
>
> This is an important issue for the Awarding Authority to assess, as there are significant tenant fit up time requirements (approximately five months) once the contractor is Substantial Complete to get the new Worcester Vocational High School ready to open on time. If the general contractor does not meet the contract timeline for construction the ability of the City to open the school as scheduled in the fall of 2006 will be greatly compromised.

**Exhibit C,** Ellis Affidavit ¶23; **Exhibit L,** Letter to the City dated March 19, 2003.

38. In its March 19, 2003 letter, Heery also informed the City that in Eastern's Revised Update Statement, Eastern stated that on the Fairhaven High School project it did not complete the "punch list issues and other matters... ...by mutual agreement of the Town." The Fairhaven Town Administrator, however, informed Heery that "the Town would liked to have had some type of understanding with Eastern but that they did not have an agreement with Eastern to cease the punch list work." **Exhibit C,** Ellis Affidavit ¶24; **Exhibit L,** Letter to the City dated March 19, 2003.

39. When Heery asked the Fairhaven Town Administrator whether, in his opinion, Eastern misrepresented the situation with Eastern's statement in the Revised Update Statement, he responded "yes." **Exhibit C,** Ellis Affidavit ¶25; **Exhibit L,** Letter to the City dated March 19, 2003.

40. Heery also contacted the Chairman of the Fairhaven School Building Committee, who stated that "Eastern basically abandoned the punch list of some 400 items..." and that "....the project reached Substantial Completion very late and they

(Eastern) just didn't get it done." **Exhibit C**, Ellis Affidavit ¶26; **Exhibit L,** Letter to the City dated March 19, 2003.

41. Heery also learned, and so informed the City, that Eastern's supervisory personnel listed in the Revised Update Statement and additional materials provided by Eastern did not meet the requirements of the Project documents. **Exhibit C**, Ellis Affidavit ¶27; **Exhibit L,** Letter to the City dated March 19, 2003.

42. In addition, based on Heery's due diligence, the supervisory personnel listed by Eastern as available for the Project appeared to be committed to other projects. **Exhibit C**, Ellis Affidavit ¶28; **Exhibit L,** Letter to the City dated March 19, 2003.

43. In the summary of its March 19, 2003 letter, Heery informed the City:

> The issue is not that Eastern had problems on a number of their projects. Many contractors have problems on projects for various reasons, some of which are outside their control. It should not be interpreted that only the problem projects were analyzed, some references were very happy with Eastern. In fact, we are currently completing a very successful project with the Town of Lynnfield, on which Eastern is the General Contractor.
>
> However, the Awarding Authority must be able to rely on true, accurate and complete information in the bid to evaluate the responsibility of each of the bids. When information is not factually reported in a bid or on an Update Statement, then the credibility and integrity of that bidder should be called into question and challenged.
>
> Eastern was given two opportunities to factually report the information required to be submitted with their bid. Had Eastern provided factual information with their initial bid the responsibility of their bid might not have been questioned. Eastern responded with 99 pages of additional information for our review attempting to respond to the issues outlined in our request. However, since information provided in their revised Update Statement remains inconsistent with reference data received during our review, the responsibility of their bid remains in question.

**Exhibit C**, Ellis Affidavit ¶29; **Exhibit L,** Letter to the City dated March 19, 2003.

44. As a result of its review, Heery recommended that the City "should seriously consider the rejection of Eastern's bid due to the reasons outlined in this letter." **Exhibit C,** Ellis Affidavit ¶30; **Exhibit L,** Letter to the City dated March 19, 2003.

45. In addition, the architect on the Project, LPA, performed its own independent review of Eastern's bid. **Exhibit M,** Letter to the City from LPA dated March 18, 2003; **Exhibit B,** Motwane Affidavit, ¶9.

46. LPA concluded that Eastern may not have met the requirements of the contract documents for supervisory personnel. **Exhibit M,** Letter to the City from LPA dated March 18, 2003.

47. In addition, LPA contacted the civil engineer on the Medway project and was informed that Eastern left the owner of the project to deal with problems relating to Eastern's site subcontractor and "did not coordinate their subcontractor or deal well with the issues and schedule." **Exhibit M,** Letter to the City from LPA dated March 18, 2003.

48. Heery also undertook to review the bid documents submitted by the second lowest bidder, Consigli/O'Connor. **Exhibit C,** Ellis Affidavit ¶31; **Exhibit N,** Letter to the City dated March 19, 2003.

49. During its initial review of Consigli/O'Connor's bid, Heery found that the bid "was not apparent as to the structure of the project staffing." **Exhibit C,** Ellis Affidavit ¶32; **Exhibit N,** Letter to the City dated March 19, 2003.

50. Heery requested additional information regarding Project staffing from Consigli/O'Connor and, in response, Consigli/O'Connor "provid[ed] a thorough and detailed outline of their project staffing and management plan." **Exhibit C,** Ellis Affidavit ¶33; **Exhibit N,** Letter to the City dated March 19, 2003.

51. In addition, Heery informed the City that "There was one project in which Consigli was reported to be approximately four weeks behind schedule, but the Owner, without request, indicated that Consigli had prepared a recovery schedule to address the delay due to winter weather." **Exhibit N,** Letter to the City dated March 19, 2003.

52. On March 26, 2003, the City informed Eastern that it rejected Eastern's bid on the Project because the "it fails to demonstrate that Eastern possessed the skill, ability and integrity to perform this particular contract." **Exhibit O**, Letter to Eastern from the City dated March 26, 2003.

53. In particular, the City concluded that Eastern's bid and supplemental materials: (1) "failed to meet the project management requirements of the bid specifications"; and (2) "omitted relevant information regarding the timeliness of its performance, the existence of litigation and safety violations on other projects." **Exhibit O**, Letter to Eastern from the City dated March 26, 2003.

54. In addition, the City informed Eastern that the City:

> extensively reviewed Eastern's past and present public sector construction contracts, including contracts performed for the City of Worcester. That review reveals repeated instances of instability in the assignment of supervisory personnel to a particular project, failures to maintain project schedules, inordinately long project close out times (i.e., punchlist completions), poor subcontractor relationships and adverse relationships with awarding authorities.

**Exhibit O**, Letter to Eastern from the City dated March 26, 2003.

55. Moreover, the City informed Eastern that:

> The additional information submitted by Eastern failed to demonstrate that it would meet, and would continue to meet throughout the duration of the project, the supervisory requirements of the contract. Frankly, although voluminous, the original information and responses submitted by Eastern were incomplete and contained material omissions that called into question Eastern's ability to be candid and complete in its dealings with an

awarding authority. As such, these submissions and responses fail to demonstrate the "integrity" component of the "skill, ability and integrity" required by law to be a responsible bidder for a particular project.

**Exhibit O**, Letter to Eastern from the City dated march 26, 2003.

56.     Eastern's President filed an affidavit in this action in support of a motion for a preliminary injunction stating that Eastern concluded that the reasons given by the City for rejecting Eastern's bid "are merely a pretext ... and that the underlying motivation for rejection of Eastern's bid may relate to the failure of slate products which were submitted and approved for use on the Quinsigamond Elementary School Project, or institutional resentment and de facto disqualification caused by the fact that Eastern successfully sued the City of Worcester and recovered by settlement substantial monies due on the Quinsigamond Project." **Exhibit B**, Motwane Affidavit, ¶42.

57.     Heery did not consider the race or ethnicity of Eastern's employees or owners when it recommended that the City "should seriously consider the rejection of Eastern's bid due to the reasons outlined in [Heery's March 19, 2003 letter]." **Exhibit C**, Ellis Affidavit ¶34.

HEERY INTERNATIONAL, INC. and
THOMAS A. ELLIS,
By their attorneys,

/s/ Matthew O'Leary
David J. Hatem, PC BBO # 225700
Warren D. Hutchison BBO # 246150
Matthew M. O'Leary BBO # 652033
DONOVAN HATEM LLP
Two Seaport Lane
Boston, MA 02210
(617) 406-4500

Dated: September 15, 2004

### CERTIFICATE OF SERVICE

I, Matthew M. O'Leary, hereby certify that on this 15th day of September, 2004, I served a copy of the foregoing on all counsel of record by first class mail, postage prepaid.

/s/ Matthew O'Leary
Matthew M. O'Leary

00852558.DOC

14