UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

C.A. NO. 03CV-12216MLW

2004 NOV -5  P 3: 49

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |
|---|---|
| EASTERN CONTRACTORS, INC., | ) |
| **Plaintiff** | ) |
| v. | ) |
| CITY OF WORCESTER,<br>THOMAS R. HOOVER, City Manager,<br>HEERY INTERNATIONAL, INC. and<br>THOMAS A. ELLIS, | ) |
| **Defendants** | ) |

**MEMORANDUM OF PLAINTIFF EASTERN CONTRACTORS,
INC. IN OPPOSITION TO DEFENDANT HEERY'S MOTION
FOR SUMMARY JUDGMENT AND IN SUPPORT OF ITS
MOTION TO COMPLETE DISCOVERY UNDER FED.R.CIV.P.56(f)**

## Introduction

Plaintiff Eastern Contractors, Inc. ("Eastern") is a minority business enterprise,

certified by the State Office of Women and Minority Business Assistance, involved in the

construction of municipal projects.[1]  Eastern Statement of Facts ("ESOF") ¶7.  Eastern

is owned and operated by Ramesh K. Motwane, whose national origin is Indian and

race is near Asian.  ESOF ¶5.  Eastern was the low bidder on a project to build the

Worcester Vocational School, and substantially more qualified and experienced than the

second bidder, which could only qualify to bid as a joint venture, between Consigli

Construction Company and O'Connor Constructors, Inc. (hereinafter

---

[1] The City of Worcester required, in their bid documents, that all submissions clearly designate whether
the submitting contractor was a minority contractor.  In this instance, Eastern designated it is, while
Consigli/O'Connor designated it is not.  ESOF ¶¶7, 8.

"Consigli/O'Connor"). ESOF ¶8. Neither Consigli nor O'Connor are minority business entities. ESOF ¶8.

The Worcester Vocational School project was a public project bid under the public bidding laws G.L.c.149 §44A et seq. As specifically set forth in §44A(2), every contract bid under the public bidding laws shall be awarded to the lowest bidder. Eastern was the low bidder on the project. The difference between Eastern's bid and that of the second low bidder, Consigli/O'Connor, was one million three hundred forty three thousand and six hundred thirty two dollars ($1,343,632.00). ESOF ¶15.

Defendant Heery International, Inc. ("Heery") is a construction manager hired by the City of Worcester to review the successful bidder and to perform construction management services. Heery's principal on the bid review was Defendant Ellis. After the opening of the bids, Eastern was determined to be the low bidder, and Worcester directed Heery to review Eastern's qualifications. Heery however, focused on Consigli/O'Connor as the successful bidder, and undertook a biased, negative attack on Eastern. ESOF ¶¶15, 19. Committing numerous procedural irregularities and substantive distortions of fact, Heery and Ellis joined with Worcester's wrongful intent and actions, and caused the bid of Eastern to be rejected. ESOF ¶46. The contract was awarded to Consigli/O'Connor, a far less experienced contractor and not a minority, at a price $1,343,632.00 higher than the price of Eastern, a minority. ESOF ¶48. In these times, where municipalities are under tight fiscal constraints, why would a municipality go out of its way to spend an additional $1,343,632.00 for the same building with a contractor who is less qualified and less experienced than Eastern, the low bidder? It is clear, Heery and Worcester engaged in a concerted effort to disqualify the more experienced, more qualified, and more financially advantageous bid of

Eastern, a minority contractor, to award the project to Consigli/O'Connor, a majority owned contractor.

Under the well defined standards in the First Circuit in the case of T&S Service Associates, Inc. v. Crenson, 666 F.2d 722 (1st Cir. 1981), the First Circuit set forth the standards for denial of a contract based on race. Eastern has made out a prima facie case, entitling a fact finder to judge the issue of discriminatory intent and pretext based on circumstantial evidence. Further, any request for summary judgment should and must await completion of discovery which has only commenced.

Heery suggests, throughout its memorandum, and erroneously, that Eastern must prove direct evidence of discriminatory intent in a case where the circumstantial evidence is substantial and compelling. There is not such a requirement, and the motion for summary judgment should be denied or not granted or considered by the Court until discovery is complete. Under the applicable standards set for this type of claim, Eastern has demonstrated sufficient circumstantial evidence to raise genuine issues of material fact for trial. See T&S Service Assoc. Inc. v. Crenson, 666 F.2d 722 (1st Cir. 1981).

In addition to the civil rights claims upon which Heery seeks summary judgment, it also seeks summary judgment on all state claims, although there is ample evidence, even before discovery, that Heery acted inappropriately and in a wrongful manner toward Eastern. There are genuine issues for trial on these claims.

## Factual and Legal Background

Easter has submitted herewith a concise statement of facts upon which genuine issues are subject to trial. This statement is incorporated herein by reference and sets forth in detail the nature of the evidence upon which a trial will be necessary in this

case. An itemized summary of material facts and the legal issues raised by this
evidence, is as follows:

- Eastern, a minority contractor was the low bidder on the project by
  $1,343,632.00. ESOF ¶15.
- Eastern was more experienced and more qualified than the second
  bidder, a joint venture between Consigli and O'Connor, neither of which
  had built a public project of this magnitude – while Eastern had built many
  school and other similar public projects. ESOF ¶¶8, 4.
- Consigli/O'Connor, although not the successful bidder, was immediately
  contacted by Heery while Heery declined to meet with Eastern, based on
  several memos, indicating favoritism and procedural illegalities against
  Eastern. ESOF ¶¶16, 17.
- Consigli/O'Connor engaged in numerous <u>pre-award</u> communications with
  Heery discussing specific project details such as project staffing, and
  project completion dates, all factors not set forth in the invitation to
  bidders. ESOF ¶¶16, 17.
- Heery obtained information from Consigli/O'Connor about scheduling and
  staffing, which was not part of the bid documents and which was an illegal
  means of circumventing bid requirements and the public bidding laws.
  ESOF ¶18.
- Heery wrongfully and falsely investigated specific Eastern projects, while
  ignoring others, and failed to solicit or to review truthful information about
  those projects which would have shown no "irresponsible" actions by
  Eastern. ESOF ¶¶41-47.
- Heery repeatedly declined Eastern's requests to obtain specific
  information and/or to meet to resolve any factual discrepancies, even
  though Heery met with Consigli/O'Connor. ESOF ¶¶23, 30.
- Heery made a report to Worcester attacking Eastern's integrity which was
  untrue and based on Heery's failure to investigate fairly. ESOF ¶¶41-47.
- In an independent review for a $73 million school project in Lawrence,
  Flansburgh Associates, a well-known and experienced architectural firm
  rejected Heery's review for Defendant Worcester, and found Eastern well
  qualified and possessing the skill and integrity to undertake a comparable
  project. ESOF ¶54.
- It is reasonable for a fact finder to infer that these circumstances show
  discriminatory intent by Heery and Worcester against Eastern, and
  pretextual reasons for Eastern's bid rejection and the biased review by
  Heery and Worcester. ESOF ¶¶1-54.

## **ARGUMENT**

I.   THE STANDARD OF REVIEW AT SUMMARY JUDGMENT
     ON A CASE INVOLVING QUESTIONS OF MOTIVATION
     IN A CIVIL RIGHTS CASE, REQUIRES EASTERN TO ESTABLISH
     ONLY A PRIMA FACIE CASE BY MEETING A BURDEN OF
     PRODUCTION.

The well-known standard for summary judgment is that all inferences must be resolved in favor of the non-moving party and that, in this case, Eastern, as the non-moving party, is entitled to a view of the evidence most favorable to it. *See, e.g.,* Rogers v. Fair, 902 F.2d 140, 143 (1st Cir.1990); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 325, (1986). This generalized standard has been applied with particular attention to issues of intent, motive or pretext in discrimination cases, in a manner recognizing the usual lack of direct evidence and reliance on circumstantial evidence. All courts have recognized the need to rely upon circumstantial evidence about a party's racial intent since it is highly unlikely that a defendant will produce direct evidence or "smoking gun" demonstrating its unlawful intent. *See, e.g.,* Stepanischen v. Merchants Despatch Trans. Corp., 722 F.2d 922, 929 (1st Cir. 1983); Baker v. Coxe, 52 F.Supp.2d 244, 250 (D.Mass. 1999); Smith v. F.W. Morse & Co. Inc., 76 F.3d 413, 421 (D.N.H. 1996); Hoeppner v. Crotched Mountain Rehabilitation Center Inc., 1993 WL 730415, 3 (D.N.H. 1993).

In the leading case, T&S Service Associates, Inc. v. Crenson, 666 F.2d 722 (1st Cir. 1981), the First Circuit considered the similar claims made here, where a minority owned business, such as Eastern, alleged that it was denied a contract, based on race. (In T&S for awarding federally funded school lunch contracts). The First Circuit applied a variation of the so-called "McDonnell-Douglas" principles and procedures for proof of claims of discrimination under 42 USC §1981, 1988 and 1985, comparable to the case

here and deriving from <u>McDonnell Douglas Corp. v. Green</u>, 411 US 792 (1973). <u>Id.</u> at

724. The First Circuit modified those guidelines to fit the government contract situation,

by indicating that the plaintiff must show by a preponderance of the evidence, a <u>prima</u>

<u>facie</u> case, by proof that:

> (a) the plaintiff was a minority owned firm; (b) that it met the bid
> specifications required of those competing for the contract; (c) that
> the bid of the minority contractor is significantly more advantageous
> to the government than the bid actually awarded; and (d) that the
> defendant selected another contractor. <u>T& S Service Associates,</u>
> <u>Inc. v. Crenson</u>, 666 F.2d at 725, n.4.

In this case, Eastern has established all these factors, and summary judgment

must be denied. Eastern was a certified minority contractor unlike the

Consigli/O'Connor joint venture; it had substantial experience in school construction (it

is the largest school contractor in Massachusetts) certified by DCAM to do this project,

which keeps rigorous records and standards for contractors. It met the bid

specifications required as set forth and gave to Worcester a significantly more

advantageous bid in monetary terms by $1,343,632.00 dollars, and its experience,

responsibility and qualifications were far more extensive than those of the second

bidder. Eastern meets all of the elements of a <u>prima</u> <u>facie</u> case under §§1981, 1983

and 1985.

As the <u>T&S Service</u> court noted, the test is not a burden of persuasion, but one of

<u>production</u>. <u>T&S Service</u>, 666 F.2d at 726. In <u>T&S Service</u>, the First Circuit determined

that then the burden shifts to the Defendants to establish a legitimate non-discriminatory

reason for rejecting the successful bid by the minority contractor. If such reasons are

set forth, the Plaintiff has the burden to produce evidence, by which a jury could find

that the purported reasons for rejection, were pretextual. The issues of intent and

pretext, presents a unique and genuine issue of material fact, which precludes summary judgment. Here there was clearly not a legitimate reason for rejecting Eastern because of a lack of qualifications or the absence of a vacancy in the job sought. Id. at 726. Worcester, with the direct assistance of Heery, acted out of pretext by putting forth incomplete, misleading and erroneous information about Eastern. ESOF ¶40. Rather than acting as a neutral professional, Heery's actions appear to be those of a hired gun, focused on improperly eliminating Eastern.

Under the applicable standard as establish in T&S Service, it is up to the trier of fact to consider all of the circumstances under 42 USC §§1981, 1983 and 1985 in order to reach a determination as to whether or not the Defendants acted out of a discriminatory motive as a substantial factor.

In addition to the T&S Service case, the First Circuit has indicated on repeated occasions that cases based upon discriminatory motives or intent are not really suitable for resolution at the summary judgment stage. In fact, the First Circuit has specifically discouraged the use of summary judgment in motive or pretext cases. See, e.g., Tatro v. Kervin, 41 F.3d 9 (1st Cir. 1997); Broderick v. Roache, 996 F.2d 1294 (1st Cir. 1993); Stepanischen v. Merchants Despatch Trans. Corp., 722 F.2d 922 (1st Cir. 1983). Discovery permits a party to fully probe all of the allegedly pretextural reasons for the defendant's actions and to permit a full ventilation of the issues which, in this case, Eastern contends will demonstrate a pattern of improper characterizations of its past work which tend to show pretext and discriminatory intent. The standard of review of the court is not to weigh the evidence but to be "particularly cautious" about granting defendant's motions for summary judgment and should use "restraint" in granting summary judgment where discriminatory animus is an issue. See, e.g., Hodgens v.

General Dynamics Corp., 144 F.3d 151, 167 (1st Cir. 1998); DeNovellis v. Shallelah, 124 F.3d 298, 306 (1st Cir. 1997).  As noted by the United States Supreme Court on several occasions, where motive and intent play leading roles in certain types of cases, including discriminatory awards of contracts where a successful minority bidder is overlooked, summary judgment should be used sparingly.  Findings as to the design, motive and intent with which men act are factual issues for the trier of fact and matters frequently only shown by circumstantial evidence.  See, e.g., Polier v. CBS, 368 US 464, 473 (1962).  See also Reeves v. Sanderson Plumbing Products, Inc., 530 US 133, 150 (2000).

Eastern has met the prima facie standards of the T&S Service governing law by the First Circuit has shown substantial circumstantial evidence suggesting the possibility of discriminatory animus as a motivating factor, by not only Worcester, but also by Heery, which did not provide a legal or an even handed review of Eastern's work. Heery can be shown to have acted through multiple procedural irregularities, violations of the Massachusetts bid statute, and the presentation of false and incomplete reasoning and investigation of Eastern to justify its deprivation of a contract in favor of a less experienced, majority owned, favored bidder, not investigated in the same manner.

II.    PLAINTIFF'S CLAIMS UNDER G.L.c.93 §102 MUST
       STAND FOR TRIAL.

In addition to his federal civil rights claims under 42 USC §§1981, 1983 and 1985, Plaintiff's claims against Worcester and Heery include a claim under G.L.c.93 §102, which prohibits unfair and unequal protection of minorities in the award of contracts and on other grounds.  The Commonwealth of Massachusetts expressly acknowledged that such claims would not necessarily be based upon direct

discriminatory evidence, but would be "based on a totality of the circumstances".

G.L.c.93 §102(c). By expressly setting forth a circumstantial evidence test, the

Massachusetts legislature determined that the courts must consider at trial all of the

relevant circumstances, and allow a fact finder to make a determination of whether or

not discrimination can be inferred or determined by the evidence concerning the

favoritism provided to "white male citizens", which would in this case include the

Consigli/O'Connor joint venture.

Here, where there is substantial mistreatment of the minority contractor, Eastern,

and express favoritism shown to a white majority owned contractor which bid over a

million dollars higher on the project and which had less experience and less

qualifications. The very significant circumstantial evidence of unfairness and inequity in

the treatment of Eastern by Heery and Worcester must be evaluated as part of the

"totality of the circumstances" at trial. The state law claim must stand due to the

substantial disparity in treatment evidence, and the right of Eastern to satisfy both the

First Circuit test for such discrimination cases, as well as to meet the statutory test of

state law, requiring "a totality of circumstances" evaluation of evidence.

III.    PLAINTIFF EASTERN HAS MET OR CAN MEET, AFTER
        DISCOVERY, ITS BURDEN OF PRODUCTION WITH
        REGARD TO ITS CONSTITUTIONAL CLAIMS AGAINST
        HEERY AND ELLIS UNDER 42 USC §1981, 1983 AND
        1985 AND G.L.c.93 §102.

If the Court applies the circumstantial evidence test established by the First

Circuit and followed in most, if not all, discrimination cases or other cases where an

issue of motive or intent governs, Eastern's claim clearly survives summary judgment.

The pretext, or the truth, of Defendant's justification for its conduct, raises genuine

issues of fact. Here, many factors, including a combination of procedural irregularities

9

and substantive decisions show a choice of an inferior contractor based upon false, illegitimate and pretextual reasons.    Heery and Ellis advanced such a pretext to Worcester, that Eastern was somehow unqualified or irresponsible, whereas the less experienced and less qualified, second lowest bidder by $1,343,632.00, was qualified and responsible.  From this course of conduct, the inference may be drawn, that racial prejudice and bias was a substantial motivating factor for the preference of Heery and Worcester to exclude from its contractual relations a certified minority company, more highly qualified and a lower bidder than the less qualified, but known and majority owned, Consigli/O'Connor business joint venture.

A.    The Facts of Record Demonstrate Pretext and Meet the First Circuit Standards.

Eastern is a qualified minority owned construction company which is a frequent and successful bidder on public construction projects in Massachusetts.[2]  ESOF ¶7. Eastern is certified by the Division of Capital Assets and Managements ("DCAM") which certified aggregate limits for which a company like Eastern is qualified and eligible to bid major projects for public construction within the Commonwealth of Massachusetts. ESOF ¶6.  Eastern was the low bidder on this project underbidding the second low bidder by over $1,343,632.00 dollars.  Heery and Ellis were retained to investigate Eastern, a company well known to Heery.  Eastern had successfully worked with Heery on other projects including a high school project in Springfield, Massachusetts known as the Van Sickle High School involving a budget of approximately $34 million dollars and for a similar construction project in the Town of Lynnfield, Massachusetts.

---

[2] The bid form which was prepared by Worcester, asked the bidder to designate if it was a minority. Eastern clearly identified itself as a minority.  Consigli/O'Connor designated itself as a non-minority.

Mr. Motwane, having built numerous schools in the Commonwealth of Massachusetts, a fact well known to Heery and Ellis, recognized that the inquiries which he was receiving were not directed to a fair review of Eastern's work and its status as the successful and more experienced bidder, but rather seeking any negative information concerning Eastern's performance at different projects, which were taken out of context.  Sensing that Heery and Ellis were seeking selective negative information, Eastern instructed its counsel to send various correspondence to Heery advising Heery in part that they would provide as much information as possible, requesting further clarification and to have the opportunity to meet and rebut any positions which Heery would take.  ESOF ¶¶22, 24.

In addition, although not a requirement of the initial bid document, Eastern was requested to produce specific project team member designations for the project which it did.  Eastern further offered to provide substitute members of the project team if necessary and to discuss further details to find out what would best accommodate Worcester.  ESOF ¶19.  Any such request was rejected completely by Heery and Ellis.  ESOF ¶¶23, 24, 29.  Eastern had sought this information specifically because of its actual experience in which erroneous information could be obtained by Heery or Worcester and used as a pretext for justifying rejection of a successful bid when accurate information would reveal the contrary result.

The so-called Heery report contains completely incorrect or inaccurate information which Eastern never had the opportunity to review or to provide the correct information.  ESOF ¶40.  Indeed, partial, false and wrongful information was sent to Worcester by Heery about a project in Fairhaven, a project in Medway, a project in Fall River and the prior project in Worcester in which Eastern had successfully sued

Worcester and obtained more than $700,000 by way of a settlement.  ESOF ¶¶41-44, 52.  In these instances, Heery gave incomplete information to Worcester where the complete information would have resolved a particular concern or issue, it falsified information, or deliberately ignored information, about Eastern's work, or even the reports from its own architects.  Given the standards applied to such actions, and given the fact that an objective report from Flansburgh Associates, conducted within several weeks of Heery's report to Worcester, revealed how biased and false the Heery Report was.  The Flansburgh Report  involved Eastern's successful $73 million bid to build a school in Lawrence, a similar project to Worcester, and the rejection of the Heery Report and any legitimate claim that Eastern was not a responsible bidder.

There exists a substantial basis from which a finder of fact could infer that the design, motive and intent of Heery in working with Worcester was to adopt its racial preference, and to blackball Eastern as a foreign minority owned business out of the inner circle with which Worcester wanted to do business.

B.    Heery Admits that it Acted in Concert with Worcester and Its Conduct was "State Action".

Under 42 USC §§1981, 1983 and 1985, a private party may act in concert with a public entity so as to both act under color of state law and to deprive a plaintiff such as Eastern a contract based upon discriminatory reasons held by the public entity.  Here, Heery and Ellis admit in their papers that they were acting as a "agent" of Worcester and they were performing a state action of assisting Worcester in determining which contractor to select.  Compare West v. Atkins, 487 US 42 (1988), Frazier v. Bailey, 957 F.2d 920 (1st Cir. 1992).  ESOF ¶19.  As such, the private actor if it affects the discriminatory purposes of the public entity, acts under color of state law and assists

and/or conspires in taking the wrongful discriminatory intent of the public entity. *See, e.g.,* Addickes v. S.H. Kress and Co., 394 US 144 (1970); Dennis v. Sparks, 449 US 24 (1980); Roche v. John Hancock Mutual Life Insurance Co., 81 F.3d 249 (1st Cir. 1996). A finder of fact must be permitted to infer that the false light in which Eastern was cast was based upon discrimination against it because of its national origin, since there is no other legitimate basis for such actions and Worcester has shown a consistent intent to favor its favored, white contractors in this case.

Defendants incorrectly rely on National Collegiate Athletic Association v. Tarkanian, 488 U.S. 179 (1988), in support of their proposition that Heery is not a state actor. The facts here are clearly distinguishable and Tarkanian is irrelevant because it dealt with whether the NCAA was a state actor, while here Worcester clearly is a state actor. The Supreme Court found the NCAA not be a state actor where UNLV, though an NCAA member and a participant in the promulgation of the NCAA's rules, the source of the adopted rules was the NCAA and not Nevada. Id. at 179. UNLV "conducted its athletic program under the color of the policies adopted by the NCAA, rather than that those policies were developed and enforced under the color of state law." Id.

Here, the exact opposite is true. First, Heery acted as an agent of the City of Worcester in its application and enforcement of state law. Heery was retained by the City of Worcester in order to conduct an inquiry as to whether Eastern was a responsible and eligible bidder on the contract. This determination is a right conferred on the City under G.L.c.149. The City of Worcester, a municipality, empowered Heery, a private actor, with its statutory authority to conduct this post-bid investigation on the contract. Heery, in the course of the investigation stated unequivocally, they were acting "collectively" with the City of Worcester to determine whether Eastern was "the

lowest and eligible bidder". ESOF ¶19. Heery's own use of the term "collectively" in its correspondence to Eastern is not without significant importance. Heery acting "collectively" with Worcester establishes "such a close nexus between the State and the challenged action" that its behavior "may be fairly treated as that of the State itself." Additionally, Heery formally held itself out as the "City" throughout the course of this post-bid inquiry. Id. Heery acted as the City for the City and at the behest of the City thereby aligning themselves so "closely with either state action or state actors that the undertow pulls them inexorably into the grasp "of state action." Roche v. John Hancock Mutual Life Ins. Co., 81 F.3d 249, 259 (1st Cir. 1996).

C.    Heery's Actions and Report Demonstrates Substantial Bias.

Heery and Ellis could be found by a fact finder to have adopted Worcester's discriminatory intent by preparing a report which falsified, omitted and distorted Eastern's record for the express purpose of acting as an agent for Worcester, as Heery has admitted. Such circumstantial proof of wrongful intent is common in civil rights litigation and other litigation, as noted above, and is supported in this case by circumstantial evidence which will be developed in discovery demonstrating that a proper evaluation of Eastern conducted at the same time regarding the Lawrence High School project, which was not discriminating based upon minority status, and indeed whose school department was run by a minority, found Eastern to be a responsible and eligible bidder – rejecting the already published "Heery report". Lawrence did in fact award the contract to Eastern, apparently upon a balanced, fair and truthful review of Eastern's work. ESOF ¶53.

In addition to the foregoing, Heery and Ellis were made clearly aware that Eastern had received extensive pre-qualification evaluation by DCAM pursuant to

G.L.c.149 §44D and that this evaluation included a review of performance of previous projects as well as the ability of Eastern to provide appropriate staff and management for the practice as set forth by Attorney Quinlan on behalf of Eastern in his letter to Mr. Ellis date March 10, 2003 (ESOF ¶24). Heery sought meetings and undertook a superficial, cursory review of the second bidder, an untested joint venture in school construction in a premature, improper and very different manner from its review of Eastern as successful bidder. Major Eastern projects were referenced by Attorney Quinlan where Eastern had been highly successful, and yet these projects were not investigated fairly by Heery.[3] The allegations made by Heery and set forth in its undisputed facts are completely untrue and do not represent a fair or complete statement of Eastern's position, but rather reflect Heery's inadequate and jaded review of Eastern's work.

IV.    SUMMARY JUDGMENT SHOULD NOT BE GRANTED AT THIS TIME ON EASTERN'S COMMON LAW CLAIMS AGAINST HEERY AND ELLIS.

In addition to its constitutional claims against Heery and Ellis, Eastern has advanced three common law claims against these Defendants. Eastern claims that Heery and Ellis may be liable to them for negligent misrepresentation, interference with advantageous prospective relationship and for liability under G.L.c.93A §§2 and 11. Each of these claims should survive summary judgment because they are not barred as

---

[3] In addition, a full explanation was given for certain litigation matters which postdated the original bid and Heery seems to have ignored a proper evaluation of the correctness of Eastern's initial disclosure at that time. Further, certain OSHA violations were designated as "other than serious", but they were unduly and improperly emphasized by Heery. Further, the full explanation was given to Heery about most of Eastern's concerns about delays or other problems with prior projects and a demonstrated basis upon which Eastern received a favorable review particularly indicating that any perceived problems were resolved adequately and successfully. These issues were ignored by Heery. Further, a direct affidavit was given by the architect who had worked on behalf of Worcester in connection with the prior project where Eastern had successfully sued Worcester. This affidavit demonstrated that Eastern had performed properly and adequately and that its actions were not in question.

a matter of law, and present information, as well as information which may be advanced during discovery, which demonstrate a substantial basis for such claim.

A.    Negligent Misrepresentation.

Eastern's claim against Ellis and Heery should stand for trial also on the grounds of misrepresentation. Ellis and Heery falsified information and gave half truths, which omitted critical information, when it submitted its factual evaluation of Eastern to Worcester. At the same time, Ellis and Heery represented to Eastern in a false manner that it had all the facts necessary and required no further input, despite Eastern's request to provide such input, particularly to clarify perceived problems at projects upon which Heery was focusing. Heery falsely represented to Eastern that it had the necessary information on these projects, a number of which Heery was involved with. In addition, a full explanation was given for certain litigation matters which postdated the original bid and Heery seems to have ignored a proper evaluation of the correctness of Eastern's initial disclosure at that time. Further, certain OSHA violations were designated as "other than serious", but they were unduly and improperly emphasized by Heery. Further, the full explanation was given to Heery about most of Eastern's concerns about delays or other problems with prior projects and a demonstrated basis upon which Eastern received a favorable review particularly indicating that any perceived problems were resolved adequately and successfully. These issues were ignored by Heery. Further, a direct affidavit was given by the architect who had worked on behalf of Worcester in connection with the prior project where Eastern had successfully sued Worcester. This affidavit demonstrated that Eastern had performed properly and adequately and that its actions were not in question. Heery therefore falsely allowed Eastern to rely upon its objectivity and fairnesses and promises that it

had critical information, when in turn it ignored such information and falsified portions of the information.  A misrepresentation may occur as a result of an outright factual lie or the rendering of half truths or insufficient information from which it is expected that other parties take actions and upon which other parties will rely.

As stated by the Appeals Court, in <u>Golder v. Bay Bank Valley Trust Company</u>, 46 Mass.App.Ct. 256, 258 (1999), the uttering of a half truth is tantamount to a falsehood, and is actionable because ..." a party who does speak with regard to a given point of information, must divulge ... all the material facts bearing upon the point that lie within his knowledge".  This is because "fragmentary information may be as misleading ... as active misrepresentations and half truths may be as actionable as whole lies".  <u>Id.</u> (citing <u>Kannavos v. Annino</u>, 356 Mass. 42, 48 (1969)).  This rule applies precisely to this case because there a genuine issues of material fact concerning the "half truths" and incomplete information which Heery provided to Worcester and which contrasted with Heery's representations to Eastern that it was conducting a fair investigation, did not need more factual information, that it would reveal all material facts when in fact it didn't.

Heery and Ellis further attack Plaintiff's case based upon the issue of reasonable reliance and liability to a non-contractual third party for negligent misrepresentation under Restatement (Second) Torts Section 552.  In <u>NYCAL Corp. v. KPMG Peat Marwick, LLP</u>, 426 Mass. 491 (1998), the Supreme Judicial Court addressed the liability of accountants and while rejecting broad public liability for representations made to third parties, the court held under the "near-privity" test that liability may be incurred to non-contractual third parties where the accountant is aware that its report is to be used for a particular purpose upon which the third party would necessarily rely.  <u>Id.</u> at 494.  Here, Eastern was a third party to Heery's contract with Worcester and it was known by Heery

that Eastern had to rely upon Heery to produce a balanced truthful report to Worcester for the specific purpose of affirming (or not affirming) Eastern's status as a qualified responsible bidder.  Further, Eastern did rely upon Heery's representation that it had all the facts it needed, even though it received false, unclear information, and even data from Consigli.  Rather than getting clarifying information which was clearly sufficient to dispel any concerns about Eastern's responsibility and integrity, Heery and Ellis directed their report to Worcester strongly criticizing Eastern in a false and inaccurate way.  This was inconsistent with other reports, such as the Flansburgh report given on the same data to Lawrence in the same time frame.  ESOF ¶53.

Under such circumstances, this type of gross derogation of professional duty to render a fair report on the basis of information, while representing to Eastern that it could rely on Heery's objectivity and fairness and lack of need for clarifying information, Eastern was substantially harmed by the inaccurate, incomplete and false or half truth representations made by Heery.  For these reasons, liability should be considered by a jury on this count.

B.    Interference with Advantageous Relations.

As the successful low bidder, and a certified responsible bidder by DCAM, Eastern had an advantageous business relationship with Worcester in connection with the construction of the vocational school.  Indeed, many courts have construed Eastern's position as holding a constitutionally protected "property interest" because of the state statutes which required the responsible low bidder to be awarded the construction contract.  *See, e.g.* Charlie's Towing and Recovery, Inc. v. Jefferson County, 183 F.3d 524 (6th Cir. 1999); Circa Limited v. City of Miami, 79 F.3d 1057 (11th Cir. 1996).  In Sciaba Const. Corp. v. Mass. Turnpike Authority, 412 Mass. 606 (1992)

the SJC stated "an awarding authority … must provide a meaningful appellate process which provides the same or analogous procedural safeguards as … G.L.c.29 §8B", due to a bidder's due process right in bid pre-qualification. Id. at 611.

The complaint alleges that Heery and Ellis' actions interfered with this advantageous relationship, particularly when they falsified information about Eastern's background to propose that Worcester not award the construction contract to Eastern despite the fact that it was the lowest, responsible bidder within the meaning of state law, G.L.c.149 §44A et seq.

The test for "wrongful interference" under the law has been changed from "malice", since United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 814 (1990), to a test of interference conducted by "improper means or improper purposes". In Draghetti v. Chmielewski, 416 Mass. 808, 816 (1994), the Supreme Judicial Court established that reports even from a supervisor of an employee to corporate or business authority or supervisor will constitute both "improper means" and "improper purposes" if it contains false statements or information. Id. at 816-17. Here it is alleged and demonstrated by Mr. Motwane's affidavit and supporting documentation that Defendants Heery and Ellis made misstatements, provided inaccurate information and deprived Eastern of the opportunity to correct any of that information thereby falsifying matters about the background of Eastern. Falsification may be established by the rendering of "half truths" which can be as damaging as complete misstatements or, in this context, more damaging when the represent a false characterization by a professional.[4]

---

[4] Heery's position that it could not be liable because it was Worcester's "agent" is in opposite since under Draghetti and many other cases, even direct employees can interfere with their own corporation's contract with another prospective employee or customer. See, e.g. Shafir v. Steele, 431 Mass. 365 (2000); Wright v. Shriner's Hospital, 412 Mass. 469 (1992); Boothby v. Texon, 414 Mass. 468 (1993); Gram v. Liberty Mutual Ins. Co., 384 Mass. 659 (1981).

Contrary to Heery's memo, if improper means or improper purpose is shown, it is not necessary to demonstrate actual malice, because that standard has been replaced fully by the standard of either improper means or improper purpose. *See, e.g.*, Buster v. George W. Mooring, 438 Mass. 635 (2003); G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 272 (1991); United Truck Leasing v. Geltman, 406 Mass. 811, 812-17 (1990). Accordingly, the factual background here shows genuine issues of material fact which should be resolved by a jury.

C.    G.L.c.93A §11 Claim.

While agreeing with the standard as set forth on page 18 of Heery and Ellis' memorandum, Eastern substantially disagrees with the conclusion that Heery and Ellis' conduct could not amount to an unfair and deceptive trade practice under G.L.c.93A §11. The conduct of Heery and Ellis violate basic notions of procedural and substantive fairness and contain falsifications which are unethical and an unwillingness to listen to the complaints of Eastern to provide truthful and fair information and to correct errors which, in this instance, was improper and oppressive to the interests of Eastern.

While Ellis and Heery's memorandum recites boilerplate law, it ignores the fact that Ellis and Heery treated Eastern differently than another more fair and objective professional in the same situation did with regard to the Lawrence project at the same time frame and that Ellis and Heery misused and distorted information and applied different standards to the review of the Consigli/O'Connor joint venture which was far less experienced, qualified and skilled at school construction for major projects when compared to Eastern.

Under c.93A, the statute created "broad new rights" and can forbid conduct previously not unlawful and which may be lawful under the common law or various statutes. Linkage Corp. v. Trustees of Boston University, 425 Mass. 1, 27 (1997). The statute thus creates new substantive rights and has been similarly guided by standards set forth for the breach of the implied covenant of good faith and fair dealing. See Anthony's Pier Four, Inc. v. HBC Associates, 411 Mass. 471, 474 (1991). Deceptive conduct includes words or conduct asserting the existence of a fact or omitting disclosure of the existence of facts material to the transactions which made various disclosures misleading or false. Powell v. Rasmusen, 355 Mass. 117, 118-19 (1969); Zapatha v. Dairy Mart, 481, Mass. 284, 291-92 (1980).

The analysis of a particular case under c.93A §11 is an inherently fact-specific inquiry. See, e.g., Linkage Corp. v. Trustees of Boston Univ., 425 Mass. 1, 26 (1997) (court emphasized "fact-specific nature of inquiry"); Arthur D. Little v. Do Yang Corp., 147 F.3d 47 (1st Cir. 1998) ("due to the fact-specific nature of the c. 93A inquiry, generalizations are always somewhat undetermined"); Duclersaint v. Federal Nat'l Mortgage Ass'n, 427 Mass. 809 (1998) ("unfairness under G.L. c. 93A is determined under all the circumstances"). See also V Mark Software, Inc. v. EMC Corp., 37 Mass. App. Ct. 610 (1994) (whether the particular conduct violates c. 93A depends upon the unique facts of each case).

In this case there is ample evidence to show that Heery and Ellis both acted unfairly and deceptively by making misleading and inaccurate statements about Eastern, by failing to act in a procedurally fair manner toward Eastern, and by showing bias and favoritism toward Consigli/O'Connor and a review of their experience which is neither scathing as it was in Eastern, questioning Eastern's basic integrity as a

21

contractor and Mr. Motwane's integrity as the principal of the company, versus a very "softball" review of Consigli/O'Connor's work which compare in scope or dimension to the experience and skill of Eastern.

A fact finder must judge the c.93A claim as Eastern has alleged facts and provided substantiation for facts which show gross unfairness and deceptiveness in Heery and Ellis' conduct.

## CONCLUSION

For the foregoing reasons, Defendant Heery and Ellis' motions for summary judgment must be denied, and/or the cross motion, allowing Eastern to complete its discovery under Fed.R.Civ.P. 56(f) must be allowed.

Respectfully submitted,
EASTERN CONTRACTORS, INC.
By its attorney,

*George C Deptula*

Edward F. Vena, Esquire
BBO No. 508660
George C. Deptula, Esquire
BBO No. 120820
Sabatino F. Leo, Esquire
BBO No. 642302
VENA, RILEY, DEPTULA, LLP
250 Summer Street
Boston, MA 02210
(617)951-2400

//s//

Edward J. Quinlan (BBO#409060)
Quinlan & Sadowski, P.C.
Vanderbilt Avenue, Suite 250
Norwood, MA 02062
(781) 440-9909

### CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by (hand)(mail) on 5 Nov 2004

Dated: November 5, 2004

22