UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EASTERN CONTRACTORS, INC., ) | |
| ) | Civil Action No. 03-12216MLW |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| CITY OF WORCESTER and THOMAS ) | |
| R. HOOVER, City Manager, and HEERY ) | |
| INTERNATIONAL, INC. and THOMAS E. ) | |
| ELLIS, JR. ) | |
| ) | |
| Defendants. ) | |

**MOTION OF THE DEFENDANTS, HEERY INTERNATIONAL, INC. AND THOMAS E. ELLIS, JR., TO STRIKE PORTIONS OF THE AFFIDAVIT OF RAMESH MOTWANE AND TO STRIKE INADMISSIBLE DOCUMENTARY EVIDENCE**

The defendants, Heery International, Inc. and Thomas E. Ellis, Jr. (collectively "Heery"), hereby move to strike portions of the Affidavit of Ramesh Motwane ("Motwane Affidavit") and to strike inadmissible documents submitted by Eastern Contractors, Inc. ("Eastern") in opposition to Heery's motion for summary judgment. As grounds for this motion, Heery states that portions of the Motwane Affidavit contain statements not made on personal knowledge and portions of the Motwane Affidavit contain inadmissible testimony and therefore, the evidence cannot be considered under Mass. R. Civ. P. 56(e). As a result, portions of the Motwane Affidavit as well as a number of exhibits attached to Eastern's opposition to summary judgment must be stricken and disregarded by the Court.

I.     **INTRODUCTION**

This matter arises out of a decision by the City of Worcester ("City") not to award a publicly bid contract for the construction of the Worcester Vocational High School ("Project") to Eastern because the City determined that Eastern was not a responsible bidder. Heery's involvement with the Project is by virtue of a contract between Heery and the City whereby Heery agreed to provide construction management services on the Project, including but not limited to, reviewing general bids and recommending the award of the general bid.

After the City received general bids for the Project, Heery and the Project architect, Lamoureux Pagano Associates ("LPA"), conducted independent reviews of Eastern's references, bid documents, and Division of Capital Asset Management ("DCAM") update statement ("Update Statement"). During the course of their independent reviews, Heery and LPA discovered that there were a number of inaccurate statements and missing information in Eastern's Update Statement. The City offered Eastern the opportunity to correct the inaccurate statements and missing information in the Update Statement but Eastern failed to do so, demonstrating a lack of honesty and integrity warranting disqualification. Therefore, Heery and LPA recommended to the City that the City consider not awarding the construction contract on the Project to Eastern. The City subsequently determined that Eastern was not a responsible bidder and awarded the construction contract for the Project to the second lowest bidder.

Eastern filed this lawsuit against Heery alleging: (1) violation of c. 93 §102 (Count I); (2) violation of 42 U.S.C. §1981 (Count II); (3) violation of 42 U.S.C. §1983 (Count III); (4) violation of 42 U.S.C. §1985 (Count IV); (5) negligent misrepresentation

715, 720 (1985) (hearsay, conclusory statements, and general denials are improper).

In addition, portions of the Motwane Affidavit, in which he purports to offer expert opinions as to the general practices in the construction industry regarding information required in general bids on construction projects, must be stricken. What is "required" in a general bid form, which constitutes a proposed form of contract, would be an issue for the Court. A party cannot make an issue of fact from an issue of law and avoid summary judgment. See, Johnson v. Watts Regulatory Co., 63 F.3d 1129, 1138 (1st Cir. 1995) (Courts will not recognize a party's labeling of an issue as "factual" when, in fact, it is a legal issue). Further, expert testimony of this nature would only be admissible if Eastern could establish that there actually was a "general practice" in the construction industry regarding information required in general bids in response to this precise set of contract documents. Courts routinely disregard testimony if the record establishes that evidence from a proffered expert is outside the area of his or her expertise. Prellwitz v. Cromwell, Truemper, Levy, Parker & Woodsmale, Inc., 802 S.W.2d 316, 319 (Texas 1990). Nor can expert testimony be given where it has the air of being "made up" and cannot be verified by industry standards or publications.

In granting summary judgment for a defendant, the Fifth Circuit Court of Appeals rejected five "expert" opinions which supported the plaintiff's claims. Berry v. Armstrong River Co., 989 F.2d. 822 (5th Cir. 1993). The Berry Court held that the Rules of Civil Procedure do not make "summary judgment impossible whenever a party has produced an expert to support its position." Id. at 824 (citations omitted). Of significance to this case is the Court's holding that Courts should disregard so-called "expert" evidence when opinions are based on tests not performed by the witness, when

4

the opinions <u>are outside the expertise of the witness</u>, when a witness <u>is not qualified to give the opinion</u>, and where rendering an opinion relies on data or methodology not recognized in the relevant fields of study. <u>Id</u>. at 828. <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579, 587 n.10 (1993), citing <u>Bourjaily v. United States</u>, 483 U.S. 171, 175-76 (1987); <u>Kumho Tire Company, Ltd v. Carmichael</u>, 526 U.S. 137 (1999).

Moreover, the portions of the Motwane Affidavit that contain irrelevant testimony must be stricken. "Evidence that is not relevant is not admissible." Liacos, HANDBOOK OF MASSACHUSETTS EVIDENCE, 109 (7th Ed. 1999) (citations omitted). To be relevant, evidence must establish facts "material to the issue in the case." <u>Id.</u> at 108. Thus, affidavits submitted in opposition to a motion for summary judgment must be stricken if they are irrelevant to the resolution of the motion. <u>Bergendahl v. Massachusetts Electric Co.</u>, 45 Mass. App. Ct. 715, 717 n. 2 (1998) (holding that the affidavit concerning the circumstances of the accident was immaterial and therefore irrelevant to the motion for summary judgment and must be stricken).

The following paragraphs of the Motwane Affidavit must be stricken:

**Paragraph 14** states: "The Bidding Requirements and Contracting Requirements found at sections 00100 through sections 00950 are generally understood to include the bidding requirements which also incorporate the provisions and statutory forms created pursuant to General Laws chapter 149, section 44 A-H and also prequalification requirements from the Division of capital asset management."

This paragraph of the Motwane Affidavit must be stricken because the Motwane Affidavit does not establish that Mr. Motwane has personal knowledge concerning what is "generally understood" in the construction industry. The Motwane Affidavit does not

5

state who "generally understands" the propositions contained in Paragraph 14 or how and when Mr. Motwane obtained this information or that he is competent to say what is "generally understood" in the construction industry with regard to bidding requirements. Paragraph 14 must be stricken for the additional reason that it addresses a legal issue of interpretation of the contractual bid requirements. Indeed, even if there were some "general understanding" in the construction industry regarding bidding requirements, that is irrelevant to Eastern's claims against Heery because the contract documents and the requirements of the awarding authority, and not anyone's "general understanding" of construction industry practice, determines what was required in the general contractor's bid.

**Paragraph 15** states, "The SPECIFICATIONS and DIVISION 1 GENERAL REQUIREMENTS are generally understood to contain provisions applicable <u>after</u> a bidder has been selected for award of the contract, not part of bidder qualifications, and includes provisions pertaining to such things as a summary of the work, control of the site, the procedure for submitting applications for payment and other general conditions requirements.

This paragraph of the Motwane Affidavit must be stricken because the Motwane Affidavit does not establish that Mr. Motwane has personal knowledge concerning what is "generally understood" in the construction industry with regard to a bidder's qualifications. The Motwane Affidavit does not state who "generally understands" the propositions contained in Paragraph 15 or how and when Mr. Motwane obtained this information or that he is competent to say what is "generally understood" in the construction industry with regard to a bidder's qualifications. Paragraph 15 must be

6

stricken for the additional reason that it addresses a legal issue of interpretation of the contractual bid requirements. Indeed, even if there were some "general understanding" in the construction industry regarding a bidder's qualifications, that is irrelevant to Eastern's claims against Heery because the contract documents and the requirements of the awarding authority, and not anyone's "general understanding" of construction industry practice, determines what qualifications are required of the general contractor

**Paragraph 16** states, "Section 01015 of the Division 1 General Requirements is entitled Control of Site, Work and Materials and includes the specific general requirements applicable to the performance of the work by the Contractor, after selection and award of the general contract. This is particularly true, since the successful bidder under section 01015 is referred to as "the Contractor" whereas in the instructions to bidders sections, numerous references are made to the participant identified as the "bidder" or "successful bidder."

This paragraph of the Motwane Affidavit must be stricken because the Motwane Affidavit does not establish that Mr. Motwane has personal knowledge concerning what requirements of the contract documents are applicable before the contract is awarded and what requirements are applicable after the contract is awarded. The Motwane Affidavit does not state how and when Mr. Motwane obtained this information or that he is competent to say what requirements of the contract documents are applicable before the contract is awarded and what requirements are applicable after the contract is awarded. Paragraph 16 must be stricken for the additional reason that it addresses a legal issue of interpretation of the contractual bid requirements. Indeed, the contract documents and the requirements of the awarding authority determine what requirements of the contract

documents are applicable before the contract is awarded and what requirements are applicable after the contract is awarded

**Paragraph 17** states, "Article 1.18 of section 01015 is entitled CONTRACTORS PROJECT TEAM and identifies specific categories of individuals who are expected to be assigned to oversee work performed at the project after the general contract has been awarded. A copy of these provisions are attached hereto as Exhibit 3. The qualifications of the Project Manager and others are to be determined after the contract has been awarded, and appear to be subject to the approval of the project Architect. Contrary to statements attributed to Mr. Ellis, there is no requirement that the Project Manager be present on-site on a full-time basis as found in Article 1.18. There is a requirement that the General Superintendent be present full-time on-site daily during all work in progress."

This paragraph of the Motwane Affidavit must be stricken because the Motwane Affidavit does not establish that Mr. Motwane has personal knowledge concerning whether the qualifications of the Project Manager and others are to be determined after the contract has been awarded or during the bid. The Motwane Affidavit does not state how and when Mr. Motwane obtained this information or that he is competent to say whether the qualifications of the Project Manager and others are to be determined after the contract has been awarded or during the bid. Paragraph 17 must be stricken for the additional reason that it addresses a legal issue of interpretation of the contractual bid requirements. Indeed, the contract documents and the requirements of the awarding authority determine whether the qualifications of the Project Manager and others are to be determined after the contract has been awarded or during the bid.

**Paragraph 18** states, "The Contract documents provide at Article 2.2.7 and 2.2.8 that the Architect is the party who will interpret the requirements of the contract documents and judge the performance by both the Owner and the Contractor. Based on my experience in the construction industry, and in particular with regard to public construction projects, such an interpretation would extend to the determinations pertaining to the qualifications of project managers, superintendents, and others employed at the work."

This paragraph of the Motwane Affidavit must be stricken because the Motwane Affidavit does not establish that Mr. Motwane has personal knowledge concerning who was responsible on the Project for making "determinations pertaining to the qualifications of project managers, superintendents, and others employed at the work." The Motwane Affidavit does not state how and when Mr. Motwane obtained this information or that he is competent to say who was responsible on the Project for making "determinations pertaining to the qualifications of project managers, superintendents, and others employed at the work." Paragraph 18 must be stricken for the additional reason that it addresses a legal issue of interpretation of the contractual bid requirements. Indeed, the contract documents and the requirements of the awarding authority determine who was responsible on the Project for making "determinations pertaining to the qualifications of project managers, superintendents, and others employed at the work."

**Paragraph 20** states, "I had concerns regarding the nature of the inquiries, since there were comments I had heard which suggested that the direction of such questions appeared to be seeking negative information concerning Eastern's performance at different projects, and ignoring Eastern's extensive successful public school construction

9

experience."

To the extent that Paragraph 20 is being offered for the truth of the statement that Heery's "questions appeared to be seeking negative information concerning Eastern's performance at different projects, and ignoring Eastern's extensive successful public school construction experience", it must be stricken because it is inadmissible speculation and rank hearsay.

**Paragraph 25** states, "I began to become concerned with inquiries concerning the qualifications of the Project Manager, General Superintendent and others, since such matters are usually resolved by and reserved to the Architect who was far more familiar with the qualifications of Eastern's personnel based on actual experience."

The Motwane Affidavit fails to demonstrate that Mr. Motwane has any personal knowledge concerning LPA's or Heery's familiarity with the qualifications of Eastern's personnel. In addition, the Motwane Affidavit does not demonstrate that Mr. Motwane has any personal information concerning whether "such matters are usually resolved by and reserved to the Architect who was far more familiar with the qualifications of Eastern's personnel based on actual experience." To the extent that Paragraph 25 contains Mr. Motwane's opinion regarding who on a construction project is generally responsible for making inquiries into a contractor's personnel's qualifications Paragraph 25 must be stricken because the Motwane Affidavit does not establish that Mr. Motwane is qualified to give an expert opinion regarding that issue, or that his opinion is based on the actual agreements between the City and its consultants in this case.

Who is generally or usually responsible for making inquiries into a contractor's personnel's qualifications is also irrelevant. The City and the contract documents, and

not anyone's "general understanding" of construction industry practice, determine who was responsible for making such inquiries on the Project.

**Paragraphs 29 through 32** contain numerous statements regarding the purported unconstitutionality of the City's resident hiring preference and a protest by a filed sub-bidder regarding the City's resident hiring preference. The City's resident hiring preference is irrelevant to the issues raised in Heery's motion for summary judgment. In addition, nothing in the Motwane Affidavit demonstrates that Mr. Motwane has any personal knowledge regarding these issues. Instead, Paragraphs 29 through 32 are replete with statements such as "I learned at some time", "I have since learned", and "I am informed and believe". This is rank hearsay. As a result, Paragraphs 29 through 32 must be stricken.

**Paragraph 36** contains a number of statements regarding Mr. Motwane's alleged experiences on other construction projects where "erroneous information obtained by persons may be used as a pretext for bias and the purpose of justifying a rejection of a bid when the accurate information would yield a contrary result." According to Mr. Motwane, "Eastern had firsthand experience with this circumstance in which erroneous information was disseminated affecting Eastern's status as a bidder, ostensibly suggesting criminal convictions and/or labor violations when the contrary is true."

Paragraph 36 must be stricken because the statements contained therein are irrelevant and rank hearsay. Eastern alleges, but has no evidence, that the City rejected its bid based on racial or ethnic bias. Any alleged experience that Eastern may have had or may not have had on other construction projects relating to bias or erroneous information has no bearing on why the City rejected Eastern's bid. As a result, Paragraph

11

36 must be stricken.

**Paragraph 38** contains the statement, "Heery characterizes statements as attributed to individuals at Fairhaven High School based upon telephone interviews which appear to have been designed to elicit negative comments." The Motwane Affidavit does not demonstrate that Mr. Motwane has any personal knowledge concerning the design of Heery's telephone interviews with individuals at Fairhaven High School or whether they were designed to "elicit negative comments." As a result, this portion of Paragraph 38 must be stricken.

**Paragraph 41** states, "Heery's failure to furnish Eastern with even minimal information as to the specific issues, or to meet with us to discuss the specific assertions is not consistent with my experience of a fair and reasonable evaluation of a bidder, particularly when Eastern's bid in question is more than $1 million lower than other bidders."

Paragraph 41 appears to state Mr. Motwane's personal opinion concerning the actions required of a reasonable construction manager retained to provide a recommendation to owners concerning bidders. Paragraph 41 must be stricken because the Motwane Affidavit does not establish that Mr. Motwane is qualified to give an expert opinion regarding that issue or that the opinion would meet the standard for admissibility outlines above. Further, whether something is "consistent with my experience" is irrelevant.

**Paragraph 44** contains a recitation of "subtle and blatant discrimination" allegedly suffered by Eastern in the public construction industry, none of which pertain to the Project at issue in this case. Instead, the incidents of alleged discrimination relate to a

12

construction project in Medway, Massachusetts. Paragraph 44 must be stricken because other incidents of alleged discrimination have no bearing whatsoever on why the City rejected Eastern's bid on the Project.

**Paragraph 46** states, "Those portions of the so-called Heery Report which relate to Project staffing and management are not bid criteria conditions. Again we had repeatedly offered to meet with Heery and the representatives of the City of Worcester to review the specific concerns; however, it is apparent to me that both the City and Heery declined to furnish specific information regarding concerns and instead sought anecdotal information for the purposes of justifying a determination to award this contract to the second low bidder."

Paragraph 46 must be stricken because the Motwane Affidavit does not demonstrate that Mr. Motwane has any personal knowledge regarding the purposes of Heery's review of Eastern's bid and, specifically, whether Heery "sought anecdotal information for the purposes of justifying a determination to award this contract to the second low bidder." In addition, the Motwane Affidavit does not demonstrate that Mr. Motwane has personal knowledge regarding whether project staffing and management are bid requirements or not. Further, Paragraph 46 contains Mr. Motwane's interpretation of the contract documents, which is a question for the Court as a matter of law. Whether project staffing and management are bid requirements are legal issues and Mr. Motwane is not qualified to give that opinion.

**Paragraph 47** contains statements that Heery "either deliberately omitted or ignored" information provided to Heery by Eastern regarding certain construction projects on which Eastern was the general contractor. The Motwane Affidavit, however,

13

does not demonstrate that Mr. Motwane has personal knowledge regarding what Heery did or did not do with any information supplied to Heery and why. As a result, those portions of Paragraph 47 must be stricken.

**Paragraph 51** states, "This information (and indeed the provisions of this entire section of the specifications [section 01015]) generally applies to matters occurring during the performance of the work after award of the contract, and does not generally create bid requirements. As can be seen from the attached Exhibit 3, the criteria for the contractor's team (s. 1.18) are extremely general in nature, for example, 'a Project Manager qualified for a project of this size and complexity'; 'a qualified General Superintendent' and 'a full-time Scheduler' and requires employment of 'a full-time M.E.P. and equipment coordinator.' The specifications do **not** provide any detailed criteria or baseline measurements such as number of years of experience, number of projects, types of projects supervised, dollar value of projects, etc. The criteria which are stated are so subjective that it is difficult, if not impossible, for any bidder to be able to understand the specific requirements he must meet."

Paragraph 51 of the Motwane Affidavit must be stricken because the Motwane Affidavit does not demonstrate that Mr. Motwane has personal knowledge or is competent to testify concerning whether the specifications cited create any bid requirements or relate to the project staffing portion of the DCAM Update Statement. Further, Mr. Motwane's opinion that the specifications "are so subjective that it is difficult, if not impossible, for any bidder to be able to understand the specific requirements he must meet", is inadmissible as no record exists that Mr. Motwane is competent to give such an expert opinion, or if he were competent to give such

testimony, that the testimony would be relevant. Further, the interpretation of legal requirements is for the Court. As a result, Paragraph 51 must be stricken.

**Paragraph 52** states in part, "I believe that each member of the Project Team which Eastern submitted to Worcester fulfilled all of the requirements described in section 01015." Paragraph 52 merely offers Mr. Motwane's personal opinion regarding the adequacy of Eastern's proposed "Project Team" and must be stricken. Mr. Motwane's personal opinion is not relevant.

**Paragraphs 63 through 66** contain statements concerning Eastern's performance on other construction projects after its bid on the Project was rejected by the City. Such statements are irrelevant to the issues raised in this case and must be stricken.

B.  **DOCUMENTS SUBMITTED IN SUPPORT OF EASTERN'S OPPOSITION MUST BE STRICKEN.**

In addition to the portions of the Motwane Affidavit described above, certain documents submitted by Eastern in opposition to Heery's motion for summary judgment are irrelevant to the issues in this case and must be stricken.

Exhibit 11 to the Motwane Affidavit is a newspaper article describing certain racist comments allegedly made the Building Inspector for the Town of Medway. This article is irrelevant to the City's conclusion that Eastern was not a responsible bidder on the Project. In addition, the newspaper article was written, and the alleged discriminatory statements were made, months after Eastern's bid on the Project was rejected. Because Exhibit 11 to the Motwane Affidavit is irrelevant, it must be stricken.

Exhibit 12 to the Motwane Affidavit is a letter from an architect on a construction project unrelated to the Project at issue in this case. Apparently, Eastern submits this exhibit in an effort to show that an architect on another project believed that Eastern was

a capable contractor for that project. Such evidence is inadmissible and irrelevant to the issues in this case. As a result, Exhibit 12 to the Motwane Affidavit must be stricken.

Exhibit S to Eastern's Statement of Facts contains a letter from an architect on a construction project unrelated to the Project at issue in this case. Apparently, an architect on another construction project believed that Eastern was a capable contractor for that project. Such evidence is inadmissible and irrelevant to the issues in this case. As a result, Exhibit 12 to the Motwane Affidavit must be stricken.

## IV.   CONCLUSION

For the foregoing reasons, Heery requests that this Court grant its motion to strike and disregard the above portions of the Motwane Affidavit and above portions of Eastern's opposition papers.

HEERY INTERNATIONAL, INC. and
THOMAS A. ELLIS,
By their attorneys,

_____
David J. Hatem, PC BBO # 225700
Warren D. Hutchison BBO # 246150
Matthew M. O'Leary BBO # 652033
DONOVAN HATEM LLP
Two Seaport Lane
Boston, MA 02210
(617) 406-4500

Dated: November /9, 2004

## CERTIFICATE OF SERVICE

I, Warren D. Hutchison, hereby certify that on this 17th day of November, 2004, I served a copy of the foregoing on all counsel of record by first class mail, postage prepaid.

_____
Warren D. Hutchison

00875857.DOC

16