UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EASTERN CONTRACTORS, INC., | )<br>)<br>) Civil Action No. 03-12216MLW |
| Plaintiff, | ) |
| v. | )<br>) |
| CITY OF WORCESTER and THOMAS<br>R. HOOVER, City Manager, and HEERY<br>INTERNATIONAL, INC. and THOMAS E.<br>ELLIS, JR. | )<br>)<br>)<br>) |
| Defendants. | )<br>)<br>) |

**REPLY OF THE DEFENDANTS, HEERY INTERNATIONAL, INC. AND
THOMAS E. ELLIS, JR., TO THE PLAINTIFF'S OPPOSITION
TO SUMMARY JUDGMENT**

The defendants, Heery International, Inc. and Thomas E. Ellis, Jr. (collectively "Heery"), submit this reply to the opposition of Eastern Contractors, Inc. ("Eastern") to Heery's motion for summary judgment.[1]

## I.   INTRODUCTION

Eastern's entire theory of recovery is predicated upon the argument that Heery endeavored to disqualify Eastern as the lowest responsible bidder for the construction contract relating to the design and construction of the Worcester Vocational High School ("Project"). Eastern alleges that the motivation behind Heery's alleged attempts to disqualify Eastern is an alleged desire on the part of Heery to discriminate against Eastern based on Eastern's principal's ethnicity. Eastern admits in its opposition papers, however, that it has no evidence that any actions by Heery were motivated by discriminatory intent. Instead, Eastern relies on strained and unreasonable purported

---

[1] For those arguments made by Eastern in its opposition not specifically addressed herein, Heery relies on its motion for summary judgment and supporting papers filed with the Court.

"inferences" in an effort to create a triable issue. An analysis of the undisputed facts, however, reveals that the admissible evidence in the record does <u>not</u> allow any reasonable inference that any actions of Heery were motivated by the ethnicity of Eastern's principal.

Eastern also seeks to avoid summary judgment by claiming that summary judgment cannot enter because Eastern has made out a <u>prima facie</u> case of racial discrimination pursuant to <u>T&S Service Associates, Inc. v. Crenson</u>, 666 F.2d 722 (1st Cir. 1981). <u>T&S Services</u>, however, does not prevent this Court from entering summary judgment in favor of Heery. Eastern has failed to make out a <u>prima facie</u> case of racial discrimination because the undisputed facts demonstrate that the City, <u>and not Heery</u>, concluded that Eastern did not meet the bid specifications on the Project. <u>T&S Services</u> is distinguishable from this case because, unlike in <u>T&S Services</u>, where the defendant that allegedly discriminated against the plaintiff was the entity that refused to contract with the plaintiff, Heery did not make the decision not to award the construction contract to Eastern. Even if Eastern had made out a <u>prima facie</u> case, Heery has set forth a valid, non-race-based justification for recommending that the City that the City consider not awarding the construction contract to Eastern. As a result, the burden for putting forth evidence of racial discrimination falls upon Eastern – a burden that they admittedly cannot meet. As a result, summary judgment must enter in favor of Heery.

There is also no evidence that Heery is a state actor. As a result, Heery cannot be liable under 42 U.S.C. §1983 ("Section 1983"). Eastern's attempts to characterize Heery's actions as "state action" merely because Heery entered into a contract with the City pursuant to which Heery evaluated Eastern's bid are unavailing as a matter of law.

2

The fact remains that the City, and not Heery, made the decision not to award the construction contract to Eastern. There is no evidence that Heery took any action that could be considered "state action."

Moreover, Eastern's attempts to salvage its negligent misrepresentation claim by asserting that it somehow relied on Heery's "objectivity and fairness and promises that it had critical information" are without merit. There is no evidence that Heery made any "promised that it had critical information." Eastern cannot put forth any evidence that Eastern took any action or refrained from taking any action based on any representations made by Heery. Instead, Eastern makes conclusory allegations that it "relied" on Heery's "responsibility and integrity." Because there is no evidence that Eastern relied on any allegedly false statements by Heery, Eastern's negligent misrepresentation claim fails as a matter of law.

In addition, Eastern is incorrect in claiming that the elements of the tort of intentional interference with contractual relations has "changed" as Eastern describes. One of the elements of intentional interference with contractual relations is improper motive or means on the part of the defendant. King v. Driscoll, 418 Mass. 576, 587 (1994). The improper motive that is required is "actual malice" which is defined as "a spiteful, malignant purpose, unrelated to the legitimate corporate interest." Id. Eastern has no evidence of any improper motive or means on the part of Heery. Even if, as Eastern alleges, Heery's statements concerning Eastern's performance on other construction projects were false, an inference of malice cannot be made as a matter of law on that evidence alone.

Moreover, an employee or agent is privileged to interfere with his employee's or principal's contractual relations <u>except</u> where the employee's or agent's actions were with "actual malice" and unrelated to the legitimate corporate interest. Again, Eastern has no evidence of "actual malice" by Heery or that any actions of Heery were unrelated to the legitimate interest of its principal, the City.

Finally, Eastern has set forth no evidence of a violation of M.G.L. c. 93A ("Chapter 93A") by Heery. Eastern makes conclusory allegations that Heery did not subject Consigli/O'Connor to the same level of scrutiny as Heery did Eastern. These conclusory allegations are, however, unsupported by the record. As a result, Eastern's claim under Chapter 93A fails as a matter of law.[2]

## II.    ARGUMENT

**A.    <u>T&S Services</u> Does not Prevent this Court from Entering Summary Judgment in Favor of Heery.**

Contrary to the arguments made by Eastern, <u>T&S Services</u> does not prevent this Court from entering summary judgment in favor of Heery. <u>T&S Services</u> sets forth the burden of proof in claims brought under 42 U.S.C. §1981 ("Section 1981") and 42 U.S.C. §1983 ("Section 1983") where there is no proof of intent. First, the plaintiff is required to set forth a <u>prima facie</u> case by demonstrating: (1) that it is a minority-owned firm; (2) that its bid met the specifications required of those competing for the contract; (3) that its bid was significantly more advantageous to the defendant than the bid actually awarded the contract; and (4) that the defendant selected another contractor. <u>T&S Service Associates,</u>

---

[2]    Eastern does not address the following arguments made by Heery: (1) Eastern's claim under 42 U.S.C. §1985 fails because there is no evidence of a conspiracy; (2) and Eastern's claim for intentional interference with contractual relations fails Heery's actions under its agreement with the City are privileged. As a result, summary judgment must enter in favor of Heery on Eastern's 42 U.S.C. §1985 and intentional interference with contractual relations claim.

4

Inc. v. Crenson, 666 F.2d 722, 725 (1st Cir. 1981). After the plaintiff sets forth a prima facie case of discrimination, the burden is on the defendant to articulate some legitimate, nondiscriminatory reason for the rejection. Id. at 724. The plaintiff must then prove that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. Id.

      **1.    Eastern Has not Made out a Prima Facie Case of Discrimination Against Heery.**

Eastern's argument in its opposition is flawed because it has not made out a prima facie case of discrimination against Heery. The prima facie case for discrimination described in T&S Services requires proof that the defendant selected another contractor. Here, there is no evidence that Heery took any action adverse to Eastern, such as selecting another contractor for the Project. The decision whether or not to select a contractor was made by the City – not Heery. Heery merely reviewed Eastern's qualifications and reported what it discovered to the City. Eastern cannot, therefore, make out a prima facie case of discrimination against Heery. As a result, Eastern's discrimination claims against Eastern fail as a matter of law.

An independent reason that Eastern failed to make out a prima facie case of discrimination against Heery is that its bid did not comply with the bid requirements, the interpretation of which are a matter of law for this Court to decide. Pursuant to the bid requirements, Heery was required to establish that it was the lowest responsible bidder. As stated by the City, Eastern (1) "failed to meet the project management requirements of the bid specifications"; and (2) "omitted relevant information regarding the timeliness of its performance, the existence of litigation and safety violations on other projects."

5

Heery's Statement of Undisputed Facts ("SOF"), at ¶53. The City also informed Eastern that the City:

> extensively reviewed Eastern's past and present public sector construction contracts, including contracts performed for the City of Worcester. That review reveals repeated instances of instability in the assignment of supervisory personnel to a particular project, failures to maintain project schedules, inordinately long project close out times (i.e., punchlist completions), poor subcontractor relationships and adverse relationships with awarding authorities.

SOF, ¶54.

Moreover, the City informed Eastern that:

> The additional information submitted by Eastern failed to demonstrate that it would meet, and would continue to meet throughout the duration of the project, the supervisory requirements of the contract. Frankly, although voluminous, the original information and responses submitted by Eastern were incomplete and contained material omissions that called into question Eastern's ability to be candid and complete in its dealings with an awarding authority. As such, these submissions and responses fail to demonstrate the "integrity" component of the "skill, ability and integrity" required by law to be a responsible bidder for a particular project.

SOF, ¶55.

The City determined that Eastern failed to meet the bid requirements for the reasons set forth above.[3] Therefore, Eastern cannot demonstrate that it made out a prima facie case of discrimination against Heery because it did not meet the bid requirements and Eastern's discrimination claims fail as a matter of law.

---

[3] Under Massachusetts public procurement laws, "The awarding authority may reject any and all bids, if it is in the public interest to do so." M.G.L. c. 30, §39M. "[T]he purpose of competitive bidding statutes is not only to ensure that the awarding authority obtain the lowest price among responsible contractors, but also to establish an open and honest procedure for competition for public contracts." Annese Elec. Serv., Inc. v. Newton, 431 Mass. 763, 767 (2000). The determination of who is the lowest responsible and eligible bidder is a matter delegated to the awarding authority. Capuano, Inc. v. School Bldg. Committee, 330 Mass. 494, 496 (1953). The courts will not interfere to decide questions committed by law to the determination of public officials. Id. citing, Mullholland v. State Racing Commission, 295 Mass. 286, 291-292 (1936); Criscuolo v. Department of Public Utilities, 302 Mass. 438, 442 (1939). "The court has no authority to take from such officers the duty of deciding the questions submitted to them and in the absence of illegal or arbitrary action their conclusions as to matters of fact within their jurisdiction cannot be controverted." Capuano, 330 Mass. at 496 (citations omitted).

### 2. Even if Eastern had made out a Prima Facie Case of Discrimination, Heery set forth a Legitimate Non-Discriminatory Reason for the City's Rejection of Eastern's Bid.

Even if Eastern has set forth a prima facie case of discrimination against Heery, Heery articulated in its brief a legitimate non-discriminatory reason for the City's rejection of Eastern's bid on the Project. As a result, the burden shifts to Eastern to produce evidence that the legitimate reasons offered by Heery were not the true reasons for the City's rejection of Eastern's bid, but were a pretext for discrimination. T&S Service, 666 F.2d at 724. If Eastern is unable to meet this burden, summary judgment must enter in favor of Heery. Oliver v. Digital Equipment Corporation, 836 F.2d 103, 109-110 (1st Cir. 1988) (granting summary judgment in favor of defendant on plaintiff's discrimination claims where defendant articulated legitimate reasons for terminating defendant's employment and plaintiff could not offer evidence of discrimination). Contrary to the arguments made by Eastern, it is not entitled to bring its case before a jury merely because it allegedly set forth a prima facie case of discrimination. Id. at 108. Once Heery meets its burden of articulating a legitimate nondiscriminatory reason for the rejection by the City of Eastern's bid, Eastern must introduce "admissible evidence that 'raises a genuine issue of fact as to whether [defendant] discriminated against the plaintiff.'" Id. at 109. Eastern has failed to introduce any such admissible evidence and, as a result, its claims fail as a matter of law.

Heery has submitted evidence that the City rejected Eastern's bid because Eastern (1) "failed to meet the project management requirements of the bid specifications"; and (2) "omitted relevant information regarding the timeliness of its performance, the existence of litigation and safety violations on other projects." SOF at ¶53. In addition,

7

the City's review of Eastern's bid review "reveal[ed] repeated instances of instability in the assignment of supervisory personnel to a particular project, failures to maintain project schedules, inordinately long project close out times (i.e., punchlist completions), poor subcontractor relationships and adverse relationships with awarding authorities." SOF, ¶54. Moreover, the City rejected Eastern's bid because Eastern "failed to demonstrate that it would meet, and would continue to meet throughout the duration of the project, the supervisory requirements of the contract." SOF, ¶55.

In addition, Heery introduced evidence that Heery did not consider the race or ethnicity of Eastern's employees or owners when it recommended that the City "should seriously consider the rejection of Eastern's bid due." SOF, ¶57. Eastern has failed to submit any evidence to rebut the evidence introduced by Heery and, as a result, its claims fail as a matter of law.[4]

**B.      Eastern put Forth no Evidence that Heery was a State Actor.**

Eastern has failed to put forth any evidence that Heery was a state actor and, as a result, its Section 1983 claim fails as a matter of law. Eastern argues that because Heery was an "agent" of the City and assisted in reviewing Eastern's bid, Heery was a state actor.

Eastern's attempt to distinguish National Collegiate Athletic Association v. Tarkanian, 488 US 179 (1988) is unsuccessful. The situation in Tarkanian is identical to the situation in the case at bar. In Tarkanian, after a lengthy investigation of recruitment violations at UNLV, the NCAA recommended that UNLV impose sanctions on Tarkanian and the university accepted those recommendations. Id. at 186. Subsequently,

---

[4]    In fact, the only evidence introduced by Eastern regarding any alleged ulterior motive for the rejection of Eastern's bid by the City is that prior litigation between the City and Eastern was a factor in the City's rejection of Eastern's bid. Eastern's Statement of Facts, ¶53.

8

Tarkanian filed suit against UNLV and the NCAA under §1983 claiming violations of due process. Id. at 189. The Court framed the issue as "whether UNLV's actions in compliance with the NCAA rules and recommendations turned the NCAA's actions into state action." Id. at 193. In ruling that the NCAA was not a state actor, it stated that "[c]learly UNLV's conduct was influenced by the rules and recommendations of the NCAA, a private party." Id. It was UNLV, the state entity, however, that actually suspended the plaintiff. Id. UNLV's decision to adopt the NCAA rules and recommendations did not transform them into state rules or the NCAA into a state actor since UNLV retained plenary power to withdraw from the NCAA and establish its own standards. Id. at 194-5. Neither UNLV's decision to adopt the NCAA's standards nor its minor role in their formulation is a sufficient reason for concluding that the NCAA was acting under the color of law when it promulgated the standards governing athletes. Id. at 194. In addition, the NCAA's investigation, enforcement proceedings, and recommendations did not constitute state action on a theory that they resulted from a delegation of power by UNLV. Id. at 196. UNLV retained other options besides suspending the plaintiff and did not delegate its powers to the NCAA. Id. at 197.

Eastern claims that because Heery investigated Eastern's bid on behalf of the City, Heery was transformed into a state actor. As in Tarkanian, however, it was the City, and not Heery, that took the ultimate action of rejecting Eastern's bid. The City's decision to adopt Heery's recommendation did not transform Heery's recommendations into state action just as UNLV's decision to accept and enforce the NCAA's recommendations did not turn those recommendations into state action. Contrary to Eastern's arguments, the City did not delegate any power to Heery. The City retained the

9

power to accept Heery's recommendation, reject Heery's recommendation, or seek recommendations from other sources. As a result, Heery was not a state actor as a matter of law.[5]

**C.     There is no Evidence that Heery made any Negligent Misrepresentations to Eastern.**

Eastern attempts to salvage its negligent misrepresentation claim by asserting that it somehow relied on Heery's "objectivity and fairness and promises that it had critical information." Eastern, however, has not put forth <u>any evidence</u> that Heery made any alleged statement that it "had critical information" or had the necessary information regarding Eastern's bid. Eastern, instead, relies on conclusory and unsupported statements for its argument.

Moreover, Eastern cites a number of cases regarding "half truths" but fails to put forth any evidence that Heery made any "half truths" to Eastern. The statements about which Eastern complains were made in a letter written from Heery to the City. No "false statements" or "half truths" were made to Eastern. As a result, Eastern's claims fail as a matter of law.

Eastern also fails to put forth any evidence that it relied on any statements made by Heery to its detriment. Eastern does not identify any evidence that Eastern took any action or refrained from taking any action based on any alleged representations made by Heery. Instead, Eastern makes conclusory allegations that it "relied" on Heery's "responsibility and integrity." Because there is no evidence that Eastern relied on any

---

[5] The case law cited by Eastern is inapposite. Each of the cases cited by Eastern deals with a situation where a state entity empowered a private entity to take a discriminatory action or where the state and the private entity engaged in a joint discriminatory action. Here, Heery was engaged to review Eastern's bid and make recommendations to the City. The City never empowered Heery to reject Eastern's bid and never acted jointly with Heery in rejecting Eastern's bid. Instead, the City retained the authority to reject bids.

allegedly false statements by Heery, Eastern's negligent misrepresentation claim fails as a matter of law.

### D. Eastern has no Evidence in Support of its Intentional Infliction of Emotional Distress Claim.

Eastern is incorrect in claiming that the elements of the tort of intentional interference with contractual relations has "changed" as Eastern describes. One of the elements of intentional interference with contractual relations is improper motive or means on the part of the defendant. King v. Driscoll, 418 Mass. 576, 587 (1994). The improper motive that is required is "actual malice" which is defined as "a spiteful, malignant purpose, unrelated to the legitimate corporate interest." Id. Eastern has no evidence of any actions taken by Heery for any spiteful or malignant purpose unrelated to the legitimate interests of Heery in performing its services to the City.

Moreover, an employee or agent is privileged to interfere with his employee's or principal's contractual relations except where the employee's or agent's actions were with "actual malice" and unrelated to the legitimate corporate interest. Boothby v. Texon, Inc., 414 Mass. 468, 487 (1993); Wright v. Shriner's Hosp. for Crippled Children, 412 Mass. 469, 476 (1992); Gram v. Liberty Mut. Inc. Co., 384 Mass. 659, 663 (1981). Again, Eastern has no evidence of "actual malice" by Heery or that any actions of Heery were unrelated to the legitimate interest of its principal, the City. As a result, Eastern's claim for intentional infliction of emotional distress fails as a matter of law.

### E. Eastern put forth no Evidence of a Violation of M.G.L. c. 93A by Heery.

In addition to the reasons set forth in Heery's motion for summary judgment and supporting papers, Eastern's Chapter 93A claim against Heery fails as a matter of law because the alleged actions of Heery of which Eastern complains did not concern an

entrepreneurial or business aspect of Heery's practice. Chapter 93A applies only to entrepreneurial or business aspects of a professional's practice. <u>Darviris v. Petros</u>, 442 Mass 274 (2004). There is no evidence to suggest that any actions of Heery (allegedly making false statements to the City concerning Eastern's qualifications) concern any entrepreneurial or business aspects of Heery's practice. There is no evidence to suggest that any of the alleged actions of Heery of which Eastern complains were taken for Heery's own financial gain.

Accordingly, because there is no evidence in the record to suggest that any alleged actions of Heery concern an entrepreneurial or business aspect of Heery's practice, and, as set forth and in Heery's summary judgment materials, there is no evidence that Heery acted in any "unfair and deceptive" manner, Eastern's Chapter 93A claim must be dismissed.

### III.  CONCLUSION

For the foregoing reasons, Heery requests that this Court grants its motion for summary judgment and direct the Clerk to enter separate and final judgment in their favor.

                                              HEERY INTERNATIONAL, INC. and
                                              THOMAS A. ELLIS,
                                              By their attorneys,

_____
David J. Hatem, PC BBO # 225700
Warren D. Hutchison BBO # 246150
Matthew M. O'Leary BBO # 652033
DONOVAN HATEM LLP
Two Seaport Lane
Boston, MA 02210
(617) 406-4500

Dated: December ___, 2004

## CERTIFICATE OF SERVICE

    I, Matthew M. O'Leary, hereby certify that on this ___ day of December, 2004, I served a copy of the foregoing on all counsel of record by first class mail, postage prepaid.

_____
Matthew M. O'Leary

00876530.DOC