UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EASTERN CONTRACTORS, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF WORCESTER and THOMAS R. HOOVER, City Manager, and, HEERY INTERNATIONAL, INC. and THOMAS E. ELLIS, JR.<br><br>    Defendants. | C.A. NO.  03-12216MLW |

**MOTION OF THE PLAINTIFF, EASTERN CONTRACTORS, INC., TO
<u>VACATE THE PROTECTIVE ORDER</u>**

**I.  INTRODUCTION**

The Plaintiff, Eastern Contractors, Inc. (hereinafter "Eastern") hereby moves this Honorable Court to Vacate the Protective Order issued by this Honorable Court on March 15, 2005, one day prior to the date of the scheduled deposition of Thomas E. Ellis, Jr., and to permit all discovery as to post-bid events.

As grounds for this motion, Eastern asserts that it was not provided with an opportunity to respond to Heery International, Inc.'s (hereinafter "Heery") Motion for a Protective Order since  this Honorable Court ruled one day following the filing of said Motion.  Additionally, the post-bid documents and testimony are relevant to the pending cause of action as they pertain to lost profit damages of Eastern on the Project.  Further, the conduct of Heery and the City of Worcester (hereinafter "Worcester") following the award of the Contract to Consigli/O'Connor-A Joint venture (hereinafter "Consigli"), the second low-bidder, is particularly relevant in ascertaining facts, actions and

1

communications of Heery with regard to the Project particularly possible admissions regarding bidding irregularities or conversations concerning issues arising in this suit.

## II. STANDARD OF REVIEW

The Federal Rules of Civil procedure allows examination of a deponent concerning "any matter not privileged which is relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." Fed. R. Evid. 401. Relevant evidence need not be admissible at the ultimate trial of the matter so long as the discovery "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). The court must balance the needs of the party requesting the information and the hardship to the party subject to the deposition. Truswall Systems Corp., v. Hydro-Air Engineering, Inc., 813 F.2d 1207, 1210 (Fed. Cir.1987). The standard in determining relevance, as recognized by the United States Supreme Court, is one broad enough to "encompass any matter that bears on, or that reasonably could lead other matters that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). Relevance "is construed more broadly for discovery than for trial." Truswall Systems Corp., 813 F.2d at 1211 *citing* Heat & Control, Inc. v. Hester Industries, Inc., 785 F.2d 1017, 1024 (Fed. Cir. 1986) *citing* Centurion Industries, Inc. v. Warren Steurer & Associates, 665 F.2d 323, 326 (10th Cir. 1981).

For purposes of Rule 26(b)(1), the term relevant "is not to be equated with 'relevant' as ordinarily used in determining admissibility of evidence upon a trial."

Foremost Promotions v. Pabst Brewing Co., 15 F.R.D. 128, 129 (N.D.Ill.1953) (quoting Kaiser-Frazer Corp. v. Otis Co., 11 F.R.D. 50, 53 (S.D.N.Y.1951)); accord, Enger-Kress Company v. Amity Leather Products Co., 18 F.R.D. 347, 349 (E.D.Wis.1955). "Relevancy is broadly construed at the discovery stage of litigation and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." Miller v. Doctor's General Hospital, 76 F.R.D. 136, 138 (W.D.Okla.1977) (citations omitted) (emphasis added). Thus, "[d]iscovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action." Miller, 76 F.R.D. at 139 (citations omitted). Gagne v. Reddy, 104 F.R.D. 454, 451 (D.Mass. 1993).

### III. ARGUMENT

**A. DOCUMENTS AND TESTIMONY REGARDING POST-BID ACTIVITIES ARE RELEVANT AS EASTERN WOULD BE ENTITLED TO RECOVER THE DIFFERENCE BETWEEN ITS ACTUAL EARNINGS DURING THE RELEVANT PERIOD AND THE EARNINGS IT WOULD HAVE REALIZED ABSENT DEFENDANT'S CONDUCT.**

If Eastern were to prevail in the pending cause of action, it would be entitled to seek money damages as Worcester and Heery violated Eastern's rights and should have awarded the contract to Eastern as low-bidder entitling Eastern to the value of the profits of the contract. Though section 1983 of the United States Code[1] does not specify the

---

[1] Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

3

nature or extent of money damages available to an "injured party", federal common law has evolved on the subject, and would use the same measure of damages under the bad faith denial of a successful bid under the state law claim.[2] In Memphis Community School Dist. v. Stachura, 477 U.S. 299, (1986), the Supreme Court commented, "(w)e have repeatedly noted that 42 U.S.C. §1983 creates 'a species of tort liability' in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." Id. at 305 quoting Carey v. Piuhus, 435 U.S. 247, 253 (1978) and Imbler v. Pachtman, 424 U.S. 409, 417 (1976) (footnote and other citations omitted). See also, Smith v. Wade, 461 U.S. 30, 34 (1983) and Newport v. Fact Concerts. Inc., 453 U.S. 247, 258-259 (1981).

Accordingly, as in tort law, damages under §1983 are intended to provide full compensation to the injured party for injury caused by the defendant's breach of duty. Stachura, 477 U.S. at 306. In determining the appropriate measure of damages, courts look to the full extent of the loss, including out-of-pocket costs as well as other monetary harm and, in appropriate cases, damage to reputation, humiliation, mental anguish and suffering. Id. at 307; See also Gertz v. Robert Welch. Inc., 418 U.S. 323, 350 (1974) and Carey at 264 (mental distress compensable under §1983). In Stachura, supra, the Court also recognized that, in addition to the above factors, "(d)eterrence is ... an important purpose of this system, but it operates through the mechanism of damages which are compensatory...." Id. at 307.

---

[2] In instances where the wrongful rejection of a bid is in bad faith, or is arbitrary and capricious, the sanction is lost profits. Roblin Hope Industries. Inc. v. J.A. Sullivan Corp., 6 Mass. App. Ct. 481, 489-491 (1978); Bradford & Bigelow v. Commonwealth, 24 Mass. App. Ct. 349, (1987); J.S. Luiz. III. Inc. v. Town of Hanson, No. 94-P-2112, Slip Op. (Mass. App. Ct., August 13, 1996), Cf. Peabody Constr. Co., Inc. v. City of Boston, 28 Mass. App. Ct. 101, 106 (1989). The Appeals Court upheld the award of lost profits in a case where the refusal of the Town of Hanson to exercise its discretion to waive an informality in a bid which was deminimus, was found to be arbitrary and capricious. J.S. Luiz. III. Inc. v. Town of Hanson.

On the constitutional claims, the measure and scope of damages is described by the United States Supreme Court as follows:

> In order to further the purpose of §1983, the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular rights in question . . . We agree with Mr. Justice Harlan that 'the experience of judges in dealing with private (tort) claims supports the conclusion that courts of law are capable of making the types of judgment concerning causation and magnitude of injury necessary to afford meaningful compensation for invasion of constitutional rights.'

Carey, 435 U.S. at 259 (quoting Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. at 409 (Harlan, J., concurring in judgment)).

Eastern was eligible and qualified to perform the contract at issue in this case. It would have performed the Contract in its entirety, including any and all change orders issued on the Contract but for unconstitutional or improper obstacles placed in its path by Worcester and Heery. The facts of this case compel the conclusion that Worcester's and Heery's unconstitutional actions deprived Eastern of the Contract and that meaningful compensation under §1983 includes full recovery of all the benefits of that contract including post-bid changes to the Contract. See Adarand Constructors, Inc.v. Pena, 115 S.Ct. 2097, 2104 (1995) ("Adarand's allegation that it has lost a contract in the past because of a subcontractor compensation clause of course entitles it to seek damages for the loss of that contract....") (emphasis added). Indeed, the United States Court of Appeals for the First Circuit, citing Carey and Stachura, has specifically held that lost profits are the appropriate measure of damages where a contractor loses a contract as the result of unconstitutional, race-based state action. T&S Service Associates. Inc. v. Crenson, 666 F.2d 722 (1st Cir. 1981).

In T&S, a minority-owned catering service claimed that a municipal school committee and school superintendent had wrongfully denied a federally funded school lunch contract to it because of race. Id. The plaintiff in T&S prevailed in the United States District Court for the District of Rhode Island and was awarded compensatory damages for lost profits. T&S at 723, 728. On appeal, the First Circuit remanded the case for further findings but commented specifically on the appropriate measure of damage under 42 U.S.C. §1983 for the loss of a contract as follows:

> In the case of an injury of an economic nature the injured party is to be placed as near as possible in the situation he would have been in had the wrong not occurred. (citation omitted). Thus, damages for the relevant period are to be determined by measuring the difference between plaintiff's actual earnings for the period and those which he would have earned absent the discrimination of defendants. (citation omitted).

T&S, 666 F.2d at 728.

Here, there is evidence related to the calculation of Eastern's lost profit damages on the Project arising from post-bid activities, particularly of Heery. Heery served as the Project's construction manager and was intimately involved in the Project throughout construction. Change orders, request for information, scope changes and the like would impact the cost of the Project and in turn would be directly relevant to Eastern's lost profits analysis. Additionally, if there were Project delays, this would again impact Eastern's analysis. Absent testimony and documents pertaining to post-bid activities, Eastern is left to solely rely on the contract amount set forth in Consigli's bid. This, however, is not an accurate reflection of the course and scope of the Project as built. Construction projects, primarily those of this magnitude, inevitably encounter factors that influence the cost of the Project. These factors have a clear bearing upon the subject

6

matter of this cause of action.  Absent a clear showing to the contrary, this Court must allow Eastern to inquire into the post-bid activities of Heery.  <u>Miller v. Doctor's General Hospital,</u> 76 F.R.D. 136, 138 (W.D.Okla.1977).

**B. DOCUMENTS AND TESTIMONY REGARDING POST-BID ACTIVITIES ARE RELEVANT AS EASTERN WOULD BE ABLE TO ASCERTAIN ADDITIONAL FACT DISCOVERY**

Post-bid documents and testimony would allow Eastern to inquire into the activities of Heery, post award.  Specifically, whether or not meetings took place in which Heery and/or Worcester were present pertaining to the Project would be relevant in determining whether in fact the Project proceeded as scheduled.  Additionally, post-bid communications by and between Heery, Worcester and/or any person party or entity which incorporated, discussed and/or commented on Eastern's bid would clearly be relevant.

Further, as identified during the course of discovery there existed pre-bid communications between Heery, Worcester and Consigli, specifically as to Consigli's "perspective site contractors and plans" and where Consigli indicated its plan to complete the work in 30-32 months.  This occurred following direction from Worcester not to contact Eastern with regard to the Project despite it being the low bidder and, where none of the factors communicated by Consigli were included in Worcester's invitation to bid.  Whether in fact these illegal pre-bid promises were realized during the course of construction are indeed relevant in assessing not only the validity of the Heery Report but also whether these pre-bid promises influenced the selection of Consigli.

Additionally, on March 26, 2003, Worcester submitted a letter to Eastern rejecting Eastern's bid as "not the lowest responsible bidder" on the Project.   Worcester further

7

stated Eastern "fails to demonstrate [it] possessed the skill, ability and integrity to perform this particular contract" and that Eastern "failed to meet the <u>project management requirement</u> of the bid specifications" (emphasis added).  It is this specific reference that is particularly relevant to Heery's post bid activities, that is whether in fact Consigli was held to the project management requirements of the Project which was, as Worcester deemed, relevant in its determination that Eastern was not the lowest eligible and responsible bidder on the Project. If Consigli was not, then clearly it should not have been a factor in rejecting Eastern's bid.  Clearly, in order to assess whether Consigli was held to the same standard as Eastern with regard to project staffing requirements, Eastern must be able to inquire into the post-bid activities of Heery and others.

Further, Consigli drafted a letter denouncing Eastern in an unfair and untruthful manner which may have caused further conversations after the bid was awarded to Consigli.  Additionally, in the following months, Heery was involved in reviewing Eastern's background in a comparable school project for Lawrence; the design and construction of the new Lawrence High School, a project worth in excess of $70,000,000.00.  Eastern's qualifications were found acceptable by Lawrence and its architect even after reviewing the Heery Report and undoubtedly discussing issues with Heery.  Counsel in this case should be able to fully probe any inconsistencies or errors in Heery's positions or communications about Eastern.

### IV. CONCLUSION

For the forgoing reasons, Eastern respectfully requests that this Honorable Court VACATE the Protective Order limiting Eastern's topics of inquiry and documents requested to Heery's role during the bid phase of the Project, and allow reasonable

8

inquiries as may be permitted by the rules of discovery and which might lead to discoverable information. Counsel can object to questions if they are too far removed from reasonable inquiry, and the absolute bar of post-bid discovery is excessive.

### **RULE 26(C) AND LOCAL RULE 7.1(A)(2) CERTIFICATION**

Counsel for Eastern hereby certifies that they have attempted to confer with counsel for Defendants in good faith to resolve or narrow the issues.

                                EASTERN CONTRACTORS, INC.,

                                By its attorneys,

//s//
Edward F. Vena (BBO# 508660)
Sabatino F. Leo (BBO# 642302)
George C. Deptula (BBO#1200820)
Vena Riley Deptula LLP
250 Summer Street, 2nd Floor
Boston, MA 02210
(617) 951-2400


//s//
Edward J. Quinlan (BBO#409060)
Quinlan & Sadowski, P.C.
Vanderbilt Avenue, Suite 250
Norwood, MA 02062
(781) 440-9909