UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EASTERN CONTRACTORS, INC.,

      Plaintiff,

v.

CITY OF WORCESTER and THOMAS R.
HOOVER, City Manager, and, HEERY
INTERNATIONAL, INC. and THOMAS E.
ELLIS, JR.

      Defendants.

C.A. NO. 03-12216MLW

## OPPOSITION OF THE PLAINTIFF, EASTERN CONTRACTORS, INC., TO DEFENDANT'S, HEERY INTERNATIONAL, INC.'S, MOTION TO QUASH SUBPOENA SERVED ON FLANSBURGH ASSOCIATES, INC. AND FOR PROTECTIVE ORDER

### I. INTRODUCTION

The Plaintiff, Eastern Contractors, Inc., (hereinafter "Eastern") hereby opposes

the motion of the Defendant, Heery International, Inc., (hereinafter "Heery") to quash the

subpoena served on Flansburgh Associates, Inc. (hereinafter "Flansburgh"). Eastern

opposes Heery's motion on the grounds that the subpoena, validly served on January 15,

2005, seeks documents and testimony relevant to the pending cause of action.

Additionally, the motion to quash is untimely and inappropriate. Heery's motion was

served on April 11, 2005, three months after the subpoena, and two weeks prior to the

close of discovery (subject to the joint motion of Eastern, Worcester and Hoover to

provide a necessary forty-five (45) day extension). For the reasons set forth below,

Flansburgh is a critical and important fact witness in the pending cause of action.

Further, Heery's counsel is attempting to obstruct important discovery, while at the same

1

time representing Flansburgh and preventing Eastern from obtaining discoverable information via deposition, interview and/or affidavit. Heery's motion must be denied and any appropriate objections should be made during the deposition of Flansburgh to ensure this Honorable Court can rule on a complete record. Additionally, Heery's counsel, Donovan Hatem LLP, should be barred from representing Heery and/or representing or advising Flansburgh on this matter and Eastern should be awarded its costs and attorneys' fees pursuant to Rule 37 for having to oppose this belated and inappropriate motion.

## II. STANDARD OF REVIEW

The Federal Rules of Civil procedure allow examination of a deponent concerning "any matter not privileged which is relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." Fed. R. Evid. 401. Relevant evidence need not be admissible at the ultimate trial of the matter so long as the discovery "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). The court must balance the needs of the party requesting the information and the hardship to the party subject to the deposition. Truswall Systems Corp., v. Hydro-Air Engineering, Inc., 813 F.2d 1207, 1210 (Fed. Cir.1987). The standard in determining relevance, as recognized by the United States Supreme Court, is one broad enough to "encompass any matter that bears on, or that reasonably could lead other matters that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). Relevance "is

construed more broadly for discovery than for trial." Truswall Systems Corp., 813 F.2d at 1211 *citing* Heat & Control, Inc. v. Hester Industries, Inc., 785 F.2d 1017, 1024 (Fed. Cir. 1986) *citing* Centurion Industries, Inc. v. Warren Steurer & Associates, 665 F.2d 323, 326 (10th Cir. 1981).

For purposes of Rule 26(b)(1), the term relevant "is not to be equated with 'relevant as ordinarily used in determining admissibility of evidence upon a trial." Foremost Promotions v. Pabst Brewing Co., 15 F.R.D. 128, 129 (N.D.Ill.1953) (quoting Kaiser-Frazer Corp. v. Otis Co., 11 F.R.D. 50, 53 (S.D.N.Y.1951)); accord, Enger-Kress Company v. Amity Leather Products Co., 18 F.R.D. 347, 349 (E.D.Wis.1955). "Relevancy is broadly construed at the discovery stage of litigation and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." Miller v. Doctor's General Hospital, 76 F.R.D. 136, 138 (W.D.Okla.1977) (citations omitted) (emphasis added). Thus, "[d]iscovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action." Miller, 76 F.R.D. at 139 (citations omitted). Gagne v. Reddy, 104 F.R.D. 454, 451 (D.Mass. 1993).

### III. FACTUAL BACKGROUND RELEVANT TO MOTION

Worcester submitted its invitation for bids on the new $75 million dollar Worcester Vocational High School project (hereinafter "Project") in early 2003. Eastern is a general contractor, with probably the most public school construction experience in the Commonwealth of Massachusetts. Eastern is qualified and experienced in this field, and certified by the Division of Capital and Asset Management (hereinafter "DCAM") of

3

the Commonwealth of Massachusetts which, in accordance with public bidding laws, has strict rules for the qualification of general contractors bidding on public construction projects.

Eastern was the low bidder on the Worcester Vocational School Project by a sum in excess of $1.3 million dollars. The second bidder had never constructed a public school project of the size, magnitude and complexity of this Project. In fact, it was unable to even qualify to construct such a school project except by means of a joint venture between Consigli Construction Company and O'Connor Constructors, Inc. The Consigli/O'Connor-Joint Venture (hereinafter referred to as "Consigli/O'Connor") had no track record whatsoever in coordinating work forces on similar major public school construction projects. In fact, Mr. Anthony Consigli, president of Consigli Construction Company, purportedly had some influence in Worcester, and wrote a defamatory letter concerning Eastern's qualifications to perform the Project once he had learned that Consigli/O'Connor was found to be the second low bidder on the project. A true and accurate copy of Anthony Consigli's letter of February 26, 2003 is attached hereto as Exhibit A.

In fact, Worcester utilized not only information it had received from Mr. Consigli, but additional matters that were delivered to Worcester via his attorneys, Hinckley Allen & Snyder, LLP (hereinafter "Hinckley Allen"). On February 28, 2003, via Hinckley Allen, Mr. Consigli submitted an eighty-three (83) page fax to Heery and Worcester consisting of the results of a docket search for Eastern's name in court indexes for the entire Commonwealth. Examination of this information revealed a number of cases which involve a totally different entity known as Eastern General Contractors which is

4

not affiliated with Eastern in any way. No explanation as to the nature of each cause of action was provided to Worcester. A number of those cases appear to be matters in which Eastern may have been merely a stakeholder. The list also appears to include docket listings from other jurisdictions not involving Eastern, but another entity with the same name. Additionally, when Eastern sought an injunction following Worcester's award of the Project to Consigli/O'Connor, lawyers at Hinckley Allen, served Worcester's arguments in opposition, as evidenced by that firm's transmittal of Worcester's briefs to counsel for Eastern. A true and accurate copy of Hinckley Allen's correspondence serving said pleadings is attached hereto as Exhibit B.

Such an action, asserting that Eastern is not a "qualified" or a "responsible" bidder, conflicts with Worcester's DCAM certification and strongly injures its reputation in the community. Nonetheless, Worcester proceeded to review and to reject Eastern's qualifications in a false manner. In later February 2003, post bid and prior to the contract award, Robert Para of Lamoureaux Pagano Associates (hereinafter "LPA"), as directed by Worcester's Clerk of the Works, Richard M. Trifero, contacted Consigli/O'Connor directly on "their perspective site contractors and plans." Consigli/O'Connor in turn responded in writing, via facsimile, providing LPA with its plans and further indicated its plan to complete the work in 30-32 months. Further, Worcester gave a directive not to contact Eastern with regard to the Project, despite it being the low bidder. Also, none of the factors communicated by Consigli/O'Connor seeking the contract were included in Worcester's invitation to bid. This gave an unfair and improper advantage to the second low bidder, Consigli/O'Connor.

Moreover, Heery produced a false and one sided negative review of Eastern upon which Worcester then relied purportedly upon "objective" terms to reject Eastern's bid, to incur an additional $1.3 million dollars in costs on the project of municipal funds, and to award the contract to the favored company, Consigli/O'Connor. Such action directly conflicts with the public bidding laws in Massachusetts which are designed to prevent bad faith selections of "favored" contractors. Interstate Engineering Corp. v. Fitchburg, 367 Mass. 751, 758 (1975); Phipps Production Corp. v. Mass. Bay Transp. Auth., 387 Mass. 687, 691-92 (1982); Sciaba Constr. Corp. v. Boston, 35 Mass.App.Ct. 181 (189-190 (1993).

Eastern has encountered circumstances where public statements of a discriminatory manner have been made about its owner's national origin – in one instance, Eastern's company was referred to as "sand niggers" and in another instance a public statement was made about whether Mr. Motwane was a "dot or feather". Frequently, however, action is latent and must be proven by circumstantial evidence, as the leading case in this Circuit recognizes. T&S Service Associates, Inc. v. Crenson, 666 F.2d 722 (1st Cir. 1981).

In the case at bar, Flansburgh is a critical witness for multiple reasons. Flansburgh has very substantial public school construction experience within the Commonwealth of Massachusetts. Indeed, Eastern and Flansburgh have worked on numerous projects including those involving Heery. Of critical importance are Heery's review or lack of review and report to Worcester on two other projects, and whether Worcester relied on information in a pretextual manner, hiding its unjustified favoritism and/or bias against Eastern because of past litigation.

First, a project in the Town of Fairhaven involving the phased rebuilding of a new high school. In Fairhaven, Flansburgh was the architect and Eastern was the general contractor. The project was delayed through multiple reasons, but Heery and Worcester not only endeavored to blame the delay inappropriately solely upon Eastern, but they also asserted that Eastern "lied" about the project and that Eastern didn't have the "integrity" to serve as a public school contractor. In fact, the Town of Fairhaven actually sued Flansburgh on the project as a result of numerous design issues on the project. The Town of Fairhaven did not sue Eastern.

Heery never once contacted Flansburgh to obtain information which could have clarified the issues regarding the Fairhaven Project. More importantly, Heery never contacted Flansburgh to obtain information as to how the Eastern contract was eventually "closed out." This issue was readily available as evidenced by letter from town counsel, Thomas Crotty, to Eastern. A true and accurate copy of this letter is attached hereto as Exhibit C.

Another project in which Flansburgh was the architect and Eastern was the contractor, was the Triton Regional High School in South Byfield, Massachusetts. Heery contacted Gary Murphy the superintendent of schools for Triton who provided an exceptional and unqualified excellent recommendation regarding the conduct of Eastern. In fact, he found Eastern's conduct to be exemplary. A true and accurate copy of this document is attached hereto as Exhibit D. Once again, Flansburgh was the architect on this project but was never contacted by Heery. Witnesses, including Mr. Murphy, would be expected to testify that there was no particularly wonderful relationship between Flansburgh and Eastern, and indeed the two companies have had their conflicts in the

past. However, Flansburgh could put any complaints about Eastern into proper perspective and stood as a neutral party, highly experienced, who could and did objectively and fairly evaluate and comment on Eastern's qualifications for a similar project in 2003.

With this background in mind, and perhaps most significantly, in the late summer and early fall of 2003, only a few months after the City of Worcester rejected Eastern's successful bid in favor of the untested local joint venture, Consigli/O'Connor, at a cost in excess of $1.3 million dollars to the municipality, Flansburgh was hired by the City of Lawrence to perform a due diligence review of Eastern's qualifications on the Lawrence Project. Eastern contends in this case that the Heery Report and Worcester's actions based upon the Heery Report were founded upon falsified, incorrect and incomplete information and clear improper favoritism shown to Consigli/O'Connor. Plaintiff has demonstrated, through an expert witness, whose disclosure is attached hereto as Exhibit E, that Heery's and Worcester's actions were not proper and did not accord with the customary practice and standard of care for a construction manager undertaking due diligence on a successful bidder. In fact, Flansburgh, in conducting its evaluation of the same Eastern projects for the Lawrence project, which was of approximately the same size, concluded that Eastern was clearly a responsible and eligible bidder. A true and accurate copy of Flansburgh's Report is attached hereto as Exhibit F.

Additionally, Eastern in this case is not seeking information which is only "post bid" information. Although Flansburgh's review took place only a few months after the Heery Report was issued, 90% or more of Flansburgh's review involved the same projects as those reviewed by Heery as Eastern's DCAM statement or referred to in the

8

Heery report.  Reviewing virtually the identical material, Flansburgh's report was neutral and objective.  Flansburgh's testimony would provide evidence regarding how various projects that Heery reviewed should have been considered if done properly and in an unbiased manner, and how a qualified and proper review of Eastern's work meeting the standard of normal appropriate care was in fact undertaken.  Flansburgh's testimony would further provide factual evidence of how outrageous and inappropriate it would be to claim that Eastern, with its vast experience, was an unqualified and an irresponsible bidder, or lacked integrity to perform a public school construction project within the meaning of the public bidding laws.  Flansburgh could attest that Eastern, as a low bidder, with its successful bid over $1.3 million dollars lower than the second bidder could not be properly overlooked in favor of an untested, but apparently "favored" joint venture.

For these reasons, Flansburgh's deposition was noticed on January 15th, and documents were sought.  Rather than responding appropriately, Heery now seeks to have Flansburgh's deposition quashed and by acting through the same counsel representing both Heery and Flansburgh, has effectively barred Eastern of access to information from Flansburgh and/or interviewing or deposing  Flansburgh.  The evidence is clearly relevant to material issues on the federal and state claims against Worcester and Heery in this case and the deposition should be ordered to proceed.  There is no just cause for this belated effort to quash important information within the broad confines of the rules of discovery.

## IV. ARGUMENT

**A.    A PROTECTIVE ORDER IS NOT WARRANTED AS TESTIMONY AND DOCUMENTS SOUGHT FROM FLANSBURGH ARE RELEVANT TO THE ISSUES IN THE PENDING CAUSE OF ACTION**

An order not allowing the deposition of Flansburgh and prohibiting the production of documents is clearly not warranted in this case. Heery misconstrues the facts associated with the relevance of Flansburgh in the pending litigation. Further, Heery has asserted, as an agent for Worcester, that Eastern was not a "qualified", "responsible" bidder by exaggerating and/or distorting or ignoring evidence about projects Flansburgh had been directly involved in.

Flansburgh was an experienced architectural firm involved extensively in public school construction in Massachusetts. Flansburgh had worked on numerous projects with Eastern, including the Triton Regional High School, Fairhaven High School, and the Lawrence High School. In October 2003, public bidding opened for the construction of the new Lawrence High School. This project had a value of over seventy five million dollars ($75,000,000.00). Pursuant to public bid laws Eastern submitted its bid and, as the low bidder on the project, was eventually awarded the project. Prior to having been awarded the contract, Flansburgh, the Lawrence High School Project architect, conducted a review of Eastern's bid on behalf of the City of Lawrence. During its review of Eastern's bid on the project, the Defendant, Heery, provided Flansburgh with a copy of the Heery Report; the exact report provided to the Defendant, Worcester, in the Worcester Vocational School Project, the subject matter of this litigation. However, Flansburgh rejected Heery's conclusions, understanding that the issues raised were commonplace and not a legitimate basis for rejection of a contractor as not "responsible".

10

Flansburgh concluded Eastern was "the lowest responsible and eligible bidder" and possessed "the skill, ability and integrity necessary to faithfully perform the work." See Exhibit F, Flansburgh's Report.

The discovery is not about "post-bid" information, but rather about the inadequacies of Heery's actions and bias in the actions of Worcester as clearly evidenced by testimony from Flansburgh. Heery utilized the same report and the same references in its review of Eastern on the Lawrence Project as it did on the Worcester Project. Eastern should be allowed to query Flansburgh with respect to what steps it had taken to contact the references in the Heery Report and said references responses to any inquiries made by Flansburgh. For example, rather than rely solely on the Heery Report, did Flansburgh interview the contacts referenced in said report? If so, did they provide alternate or varying information than that provided in the Heery report, and if so, was that a basis for discarding the Heery Report and concluding that Eastern was the lowest responsible and eligible bidder on the Lawrence Project. Inquiries into Flansburgh's actions after receiving the Heery Report are clearly relevant in determining whether the Heery Report was a fair, accurate and truthful review of Eastern's qualification or rather pretextual in nature. Accordingly, such matters are relevant, primarily since courts have consistently recognized the need to rely upon circumstantial evidence concerning a party's racial intent as it is highly unlikely that a defendant will produce direct evidence or "smoking gun" demonstrating its unlawful intent. _See, e.g._, Stepanischen v. Merchants Despatch Trans. Corp., 722 F.2d 922, 929 (1st Cir. 1983); Baker v. Coxe, 52 F.Supp.2d 244, 250 (D.Mass. 1999); Smith v. F.W. Morse & Co. Inc., 76 F.3d 413, 421 (D.N.H. 1996); Hoeppner v. Crotched Mountain Rehabilitation Center Inc., 1993 WL 730415, 3 (D.N.H.

1993). As this testimony and evidence reasonably could lead to other matters that could bear on substantive issues, namely, whether in fact the Heery Report was a truthful and accurate review of Eastern's qualifications, it is clearly relevant. <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351 (1978).

Additionally, Heery's attempt to limit its argument solely to Flansburgh's involvement in the Lawrence High School Project is in error. Flansburgh was reviewing objectively the same information which Worcester and Heery used in a biased manner. Further details are as follows: Flansburgh was also the architect on the project involving Fairhaven High School, Fairhaven Massachusetts; a project in which Eastern served as the general contractor. During its investigation of Eastern's qualifications, Heery contacted Andrew Tillett, Chairman of the Fairhaven School Building Committee and Jeffery Osuch, the Fairhaven Town Administrator. Despite having referred to the Fairhaven Project in the Heery Report, Heery never once contacted Flansburgh, the architect on the Project. Rather than perform a complete, thorough, fair and accurate review of Eastern's involvement on the Fairhaven project, Heery chose not to contact the architect, Flansburgh, to assess Eastern's performance on the Project.

In fact, Heery, in its Heery Report, referenced the Fairhaven High School project as follows:

> We have been told that the original contract time for completion of construction was 26 months, but that it took 42 months to reach substantial completion.

A true and accurate copy of Heery's Report is attached hereto as Exhibit G. Heery Report Page 3.

12

In fact, the Fairhaven High School project was a combination project which
included renovation of an existing school building and new construction as well as
certain work on athletic fields and other work. This was a phased project which had
different substantial completion dates for different phases of the work. Eastern had
substantially completed each phase of work including extra work and changes and was
working to complete the punchlist over a period of a number of months. The punchlist
completion became difficult to resolve because the Owner and Architect were attempting
to include items into the final punchlist for the then most recent phase of work which
were Owner maintenance items which had been completed years earlier in previous
phases of work. There were also a number of significant design defect issues affecting the
scope of work which also contributed to difficulties in reaching agreement on close out of
the project work. After working for a number of months on the punchlist with the Owner
and special consultants in an effort to resolve the disputes, Eastern had reached an
agreement with the School Building Committee to close out the construction work under
the Fairhaven High School Contract effective June 30, 2001, with the understanding that
work would cease as of that date and the parties would attempt to negotiate a final
monetary adjustment in contract balances. *See* Exhibit C.

Clearly, in a project of this complexity and with numerous design issues, Eastern
should be allowed to inquire further into its actual performance on the project rather than
accept at face value Heery's assessment of its performance on the project. In addition,
Eastern has deposed Jeffrey Osuch, the Fairhaven Town Administrator on the project
who admitted that there were numerous design issues encountered on the project and that
the Town of Fairhaven had in fact filed claims against Flansburgh which resulted in a

cash settlement paid to the Town. The claim that Eastern "lied" about the completion of

this project was not a fair and accurate review of Eastern's performance on the Fairhaven

project, and Eastern should be allowed to inquire directly of Flansburgh the facts

associated with the project. Limiting Eastern's ability to do so would in fact allow

Heery, a defendant, to control discovery, limit the witnesses Eastern may call at trial and

would result in hardship and unfair prejudice to Eastern.

Further, evidence concerning the Triton Regional High School Project is quite

significant. Again, Flansburgh was the architect and Eastern the general contractor.

Triton gave Heery an exceptionally complementary recommendation of Eastern. Heery

ignored it. Why, without consulting Flansburgh, the architect on both Fairhaven and

Triton, would Heery emphasize how dishonest and incompetent Eastern was, based upon

false information, and yet ignore Triton as a more representative project and reference to

check? In a motivation based case, certainly such discovery of the underlying facts is

merited.

**B.    THERE IS NO UNDUE BURDEN AND HEERY AND FLANSBURGH
MUST NOT BE REPRESENTED BY THE SAME COUNSEL IN SEEKING
TO BAR RELEVANT INFORMATION IN THE PENDING CAUSE OF
ACTION**

Heery's unjustified attempt to assert that subjecting Flansburgh to reviewing and

producing post-bid documents would pose an undue burden is another attempt by Heery

to limit proper and complete discovery in this matter. As the facts set forth herein clearly

state, the testimony and documents of Flansburgh are clearly relevant to the pending

cause of action and Heery's assertion that it would incur a financial burden by having its

counsel prepare and attend the deposition is without merit. If Heery is concerned with

legal fees mounting as a result of the deposition the answer is abundantly clear, though

14

invited to attend and cross-examine, Heery's counsel need not attend and counsel for Eastern is more than willing to provide a complete copy of the deposition transcript once completed.[1]

In addition to the foregoing, the firm of Donovan Hatem, LLP has a conflict of interest problem and a possible basis for court mandated disqualification due to their representation of both Defendant, Heery International, and a Plaintiff's witness, Flansburgh Associates.[2]  In the criminal context, where a law firm purports to represent a Defendant, but also has represented or is representing a prosecution witness, disqualification may be almost mandatory, notwithstanding the Defendant's Sixth Amendment right to choice of counsel.  *See, e.g.*, In re: Grand Jury Subpoena, 274 F.3d 563 (1st Cir. 2001); In re: Grand Jury Proceedings: Appeal of John Doe, 859 F.2d 1021 (1st Cir. 1988).  Counsel for the Plaintiff is required to bring any conflict or disqualification issue to the attention of the court at the earliest time.  The First Circuit has applied the same criminal analysis to disqualify counsel in a civil case where a counsel represents a defendant and another witness may offer adverse testimony in the course of a civil trial.  *See* Kevlik v. Goldstein, 724 F.2d 844 (1st Cir. 1984).  The problem of such representation in a civil context also does not implicate Sixth Amendment rights so the claim of dual representation stands on a non-constitutional and less substantial basis.

Here, the danger is that as counsel for Heery, the firm of Donovan Hatem LLP is endeavoring to block an important witness for the Plaintiff,  Flansburgh Associates.

---

[1] It is also important to note that Flansburgh is represented by counsel for Heery and counsel would likely attend on behalf of Flansburgh regardless.  In light of this fact, it is preposterous to think that Heery would incur additional or exorbitant legal costs as Heery suggests.

[2] Donovan Hatem, LLP also purports to represent at least two other witnesses.

Further, Donovan Hatem, in its position as counsel for Flansburgh and Heery can advance Heery's interest not only in trying to block the discovery but also in advising Flansburgh and prohibiting the Plaintiff from undertaking informal discovery and contacting Flansburgh directly to interview them, gather information for preparation at trial and/or to prepare affidavits for the purpose of further opposing summary judgment motions (one is pending by Heery and one may be filed by Worcester).

Flansburgh is a critical witness for the reasons set forth above. It reviewed the same data that Heery did and came to an objective fair conclusion that Eastern clearly was a responsible qualified bidder for a very similar project. Further, Flansburgh was in the position to clarify for Heery and Worcester that Eastern was responsible and qualified on its bid for the Worcester Vocational School at issue in this case, and that Worcester not only acted in bad faith and in violation of Plaintiff's constitutional rights by rejecting that bid at a cost of $1.3 million dollars, but also on the basis of biased and improper information. Flansburgh further is in a position to demonstrate how its involvement in several of Eastern's projects reviewed by Heery could have demonstrated that Eastern was clearly qualified.

The firm of Donovan Hatem has endeavored to suppress such information by making a belated and highly improbable claim that Flansburgh possesses no relevant evidence subject to this case and a false claim that our efforts to seek only "post-bid" information which could not have been reviewed by Heery when in fact Flansburgh reviewed the very same Eastern projects as did Heery with only slight alterations occurring in a few months between March of 2003 and October of 2003. There was no change during this time period that could somehow change the view of Eastern as a

16

contractor that didn't possess integrity or didn't have experience or committed so many faults on projects that an objective review would produce such a different outcome. Flansburgh's evidence is critical to show Heery's bias and Donovan Hatem LLP should be precluded from representing or sharing information between Flansburgh and Heery in defense of this action defeating the rights of a third party namely Eastern. All current standards should preclude such representation. *See* Kevlik v. Goldstein, *supra*, relying upon Canon 9 of the Model Code of Professional Responsibility, ABA Model Rules, 1.7 and Restatement (Third) of Law Governing Lawyers, §121 (2000) (stating expressly "a conflict of interest is involved if there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by the lawyer's own interest or by the lawyer's duties to another current client, or former client, or a third person" such as Eastern, an opposing party.)

On this basis, the Court must deny the request for a protective order and should conduct a hearing on whether or not Donovan Hatem LLP or any of its attorneys can represent both Heery and witnesses in this case including Flansburgh Associates and whether it can continue to represent Heery as a Defendant. *See* Kevlik v. Goldstein, *supra* at 847-52, citing DR 1-102 and In re: Gotman, 531 F.2d 262, 265 (5th Cir. 1976).

### V. CONCLUSION

For the foregoing reasons, Eastern respectfully requests that this Honorable Court DENY Heery's Motion to Quash Subpoena served on Flansburgh and for a Protective Order and allow reasonable inquiries as may be permitted by the rules of discovery and which might lead to discoverable information. Counsel can object to questions if they are too far removed from reasonable inquiry. Further, due to the belated and inappropriate

nature of this motion, which effectively blocks discovery sent in January, and bars

informal discovery, Eastern should be awarded its fees under Rule 37.


EASTERN CONTRACTORS, INC.,

By its attorneys,

/s//

Edward F. Vena (BBO# 508660)
Sabatino F. Leo (BBO# 642302)
George C. Deptula (BBO#1200820)
Vena Riley Deptula LLP
250 Summer Street, 2nd Floor
Boston, MA 02210
(617) 951-2400

/s//

Edward J. Quinlan (BBO#409060)
Quinlan & Sadowski, P.C.
Vanderbilt Avenue, Suite 250
Norwood, MA 02062
(781) 440-9909


20 APRIL 2005



26/2003  10:47    781860091'                    HERRY INTERNATIC  .I              PAGE  01

EB-26-2003  10:48    CONSIGLI PROJ MGMNT                            508 478 5389    P.01/04

# CONSIGLI CONSTRUCTION CO., INC.

FAX ORIGINAL
# 02080.02

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO: | FROM: |
| Mr. Frank M. Kennedy | Anthony Consigli |
| COMPANY | DATE: |
| Herry International, Inc. | 2/26/2003 |
| FAX NUMBER | TOTAL NO. OF PAGES INCLUDING COVER: |
| 1-781-860-9108 | 4 |
| PHONE NUMBER: | SENDER'S REFERENCE NUMBER: |
| 1-781-860-9100 | |
| RE: | YOUR REFERENCE NUMBER: |

URGENT    ☐ FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY    ☐ PLEASE RECYCLE

Notes/Comments

Please see attached letter.

M

197 MAIN STREET · MILFORD, MASSACHUSETTS  01757
TELEPHONE: (508) 473-2580 X 362
FACSIMILE: (508) 478-5389

HRY 00009



## CONSIGLI CONSTRUCTION CO. INC.
### EST. 1905

Jill C. Dagillis
Commissioner
City of Worcester
Department of Code Enforcement
25 Meade Street
Worcester, MA 01610

Dear Commissioner Dagillas:

We are writing on behalf of Consigli/O'Connor as the apparent second low bidder on the Worcester Vocational School Project.

Subsequent to bid time, we have reviewed Eastern Contractors' apparent low bid and have researched their capabilities to perform the project. In reviewing the bids and making your final decision, we ask that you consider the following:

1. **DCAM Update Statement:** Prior to the Worcester Voke bid, Eastern was recently the low bidder on the $50 million Algonquin School Project in Northborough. We recommend that you review their DCAM Update Statement to confirm that they have listed this project against their DCAM limits as well as properly reported their costs to complete on other projects. Failure to do so is misleading and deceptive and may be grounds for rejection alone.

2. **Inability to Properly Staff the Project:** Eastern's current workload has limited their ability to properly staff their projects. A specific example is the Medway High School Project, where there has reportedly been a lot of staff turnover to the detriment of the project. With the addition of Worcester Voke to their workload it is unlikely that they can staff the project properly. We recommend that you review their proposed personnel information to ensure that they are in fact available and qualified to administer a project of this complexity. Furthermore, with the inclusion of Algonquin, adequate staffing is even more unlikely. Eastern is known to hire for projects as they acquire them. We expect that they have either proposed the same team for both the Algonquin and Worcester Voke projects or they will be hiring unfamiliar and untested staff for the project. If so, they have misled the City of Worcester into believing that they are capable of performing the project as bid.

**HRY 00010**

3. **Litigious Patterns and Behavior:** Eastern is notorious industry wide for being involved in numerous lawsuits, claims and projects that are behind schedule. The Medway project and the Framingham High School Project are specific current examples of claim ridden projects that are behind schedule. The City of Worcester knows first hand of their litigious patterns, having recently been involved in an Eastern lawsuit during the Quinsigamond School Project. We also know first hand of their deficiencies, as we have been called in to potentially take over their work for the Lakeville School District where they have failed to complete the work.

4. **HVAC Rejection:** Their Filed Sub Bid to perform the HVAC work should be rejected. As identified on their bid form, Eastern has not performed an HVAC project where they have also been the General Contractor for any HVAC project in excess of $2.2M. Their current bid for the HVAC work at Worcester Voke is $7.7M. They have not proven they can perform HVAC work event remotely comparable to the work of this project, especially when they are also focused on performing the work of the General Contractor. This scenario as it stands could severely jeopardize the Worcester Voke project quality and schedule. KMD Mechanical, the second low HVAC Filed Sub Bidder, shares our concerns, as they have filed a protest against Eastern's HVAC bid with the Attorney General. The mechanical system for a school building housing children should not be a test case for Eastern's HVAC capabilities.

5. **Sitework Issues:** The sitework on the Voke project is of the utmost importance to the overall success of the job. On prior projects, Eastern has estimated the cost of this work at a very low price at bid time, only to find our later that they could not perform the work for the price they carried. This leads to them seeking additional money from the Owner and hiring unqualified subcontractors, or attempting to self-perform the work at an unreasonably low price end with unqualified personnel. This is the recipe for claims, schedule delays and poor quality. We believe that the discrepancy between Eastern's bid price and the other bidders is in a large part on their inability to accurately price and perform sitework.

The city has to ask themselves if the $1.3 million difference between the Eastern and Consigli/O'Connor bids will have been a good value four years from now, after change orders, claims, schedule delays, legal challenges, quality issues, never ending punch lists, hassles, and the negative publicity which stems from all of the performance issues with a typical Eastern project. The low bid at bid time is not necessarily the lowest cost at the completion of the project, and it definitely is not necessarily the best value.

Eastern Construction has a poor reputation in the public school construction market. Eastern has a reputation for continually under-bidding projects, hiring for the job, and surviving on the cash flow rather than the merits of each job. The problem with this "roulette" methodology is that when the music stops, and it will stop, the municipalities with Eastern on its projects will be left to deal with the costly fall out. The city has the

**CONSIGLI CONSTRUCTION CO. INC.**

HRY 00011

opportunity to make a strong statement for all municipalities stuck with our state's cumbersome procurement system, and say that it is not continually acceptable for a contractor to over-commit and under-perform; that contractors need to take heed of qualifications and working relationships rather than continual reliance solely on low bids with the intent of getting the difference back in other ways; that you cannot sue a municipality and its agents, completely disregard all tenants of team-work and ethics, and then expect to get their next project. The city has the ability to reject Eastern's low bid as it is not in the best interest for the city to accept it and deal with the problems their involvement will bring. Taking the low bid for the sake of the money is a gamble at best.

The Worcester Vocational School is a high profile, highly visible project within the city and region. It is not an ordinary municipal school building project. The city and its agents have to ask who they want on their team for the next three years, in whose hands do they want to leave this project, and which contractor would provide the best overall value at the end of the day?

Sincerely,

Anthony Consigli
President

AMC:mm

cc:    Herry International
       Lemoreux – Pagano Architects
       Rick Trifero – City of Worcester

**HRY 00012**

TOTAL P.04