UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EASTERN CONTRACTORS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF WORCESTER and THOMAS R.<br>HOOVER, City Manager, and, HEERY<br>INTERNATIONAL, INC. and THOMAS E.<br>ELLIS, JR.<br><br>Defendants. | C.A. NO. 03-12216MLW |

## OPPOSITION OF THE PLAINTIFF, EASTERN CONTRACTORS, INC., TO DEFENDANT'S, CITY OF WORCESTER'S, MOTION FOR PROTECTIVE ORDER

### I. INTRODUCTION

The Plaintiff, Eastern Contractors, Inc., (hereinafter "Eastern") hereby opposes

the motion of the Defendant, City of Worcester (hereinafter "Worcester"), for a

protective order as to the deposition of Mr. Anthony Consigli, of Consigli/O'Connor – A

Joint Venture. Eastern opposes Worcester's motion on the grounds that said subpoena,

validly served on Mr. Anthony Consigli, seeks documents and testimony relevant to the

pending cause of action; that is, the conduct of Mr. Consigli, following the award of the

contract is particularly relevant in ascertaining facts, actions and communications of

Consigli, Worcester and/or Heery International, Inc. (hereinafter "Heery") with regard to

the Project, possible admissions about bidding irregularities and conversations regarding

issues arising in this suit. In addition, post-bid and construction phase documents and

1

testimony are relevant to the pending cause of action as they pertain to lost profit damages of Eastern on the Project.

## II. STANDARD OF REVIEW

The Federal Rules of Civil procedure allow examination of a deponent concerning "any matter not privileged which is relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." Fed. R. Evid. 401. Relevant evidence need not be admissible at the ultimate trial of the matter so long as the discovery "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). The court must balance the needs of the party requesting the information and the hardship to the party subject to the deposition. Truswall Systems Corp., v. Hydro-Air Engineering, Inc., 813 F.2d 1207, 1210 (Fed. Cir.1987). The standard in determining relevance, as recognized by the United States Supreme Court, is one broad enough to "encompass any matter that bears on, or that reasonably could lead other matters that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). Relevance "is construed more broadly for discovery than for trial." Truswall Systems Corp., 813 F.2d at 1211 *citing* Heat & Control, Inc. v. Hester Industries, Inc., 785 F.2d 1017, 1024 (Fed. Cir. 1986) *citing* Centurion Industries, Inc. v. Warren Steurer & Associates, 665 F.2d 323, 326 (10th Cir. 1981).

For purposes of Rule 26(b)(1), the term relevant "is not to be equated with 'relevant' as ordinarily used in determining admissibility of evidence upon a trial."

2

Foremost Promotions v. Pabst Brewing Co., 15 F.R.D. 128, 129 (N.D.Ill.1953) (quoting

Kaiser-Frazer Corp. v. Otis Co., 11 F.R.D. 50, 53 (S.D.N.Y.1951)); accord, Enger-Kress

Company v. Amity Leather Products Co., 18 F.R.D. 347, 349 (E.D.Wis.1955).

"Relevancy is broadly construed at the discovery stage of litigation and a request for

discovery should be considered relevant if there is any possibility that the information

sought may be relevant to the subject matter of the action." Miller v. Doctor's General

Hospital, 76 F.R.D. 136, 138 (W.D.Okla.1977) (citations omitted) (emphasis added).

Thus, "[d]iscovery should ordinarily be allowed under the concept of relevancy unless it

is clear that the information sought can have no possible bearing upon the subject matter

of the action." Miller, 76 F.R.D. at 139 (citations omitted). Gagne v. Reddy, 104 F.R.D.

454, 451 (D.Mass. 1993).

### III. FACTUAL BACKGROUND RELEVANT TO OPPOSITION

Worcester submitted its invitation for bids on the new $70 million dollar

Worcester Vocational High School project (hereinafter "Project") in early 2003. Eastern

is a general contractor, with probably the most public school construction experience in

the Commonwealth of Massachusetts. Eastern is qualified and experienced in this field,

and certified by the Division of Capital Asset Management (hereinafter "DCAM") of the

Commonwealth of Massachusetts which, in accordance with public bidding laws, has

strict rules for the qualification of general contractors bidding on public construction

projects.

Eastern was the low bidder on the Worcester Vocational School Project by a sum

in excess of $1.3 million dollars. The second bidder had never constructed a public

school project of the size, magnitude and complexity of this Project. In fact, it was

3

unable to even qualify to construct such a school project except by means of a joint venture between Consigli Construction Company and O'Connor Constructors, Inc. The Consigli/O'Connor-Joint Venture (hereinafter referred to as "Consigli/O'Connor") had no track record whatsoever in coordinating work forces on similar major public school construction projects. In fact, Mr. Anthony Consigli, president of Consigli Construction Company, purportedly had some influence in Worcester, and wrote a defamatory letter, addressed to Jill Dagilis, concerning Eastern's qualifications to perform the Project once he had learned that Consigli/O'Connor was found to be the second low bidder on the project. A true and accurate copy of Anthony Consigli's letter of February 26, 2003 is attached hereto as Exhibit A.[1]

Worcester's actions asserting that Eastern is not a "qualified" or a "responsible" bidder, conflicts with Eastern's DCAM certification and strongly injures its reputation in the community. Nonetheless, Worcester proceeded to review and to reject Eastern's qualifications in a false manner. The persons undertaking this action were primarily defendant, Thomas Hoover, Ms. Dagilis, Eric Twickler and Richard M. Trifero, all of Worcester. In later February 2003, post bid and prior to the contract award, Robert Para of Lamoureaux Pagano Associates (hereinafter "LPA"), as directed by Worcester's Clerk

---

[1] In fact, Worcester utilized not only information it had received from Mr. Consigli, but additional matters that were delivered to Worcester via his attorneys, Hinckley Allen & Snyder, LLP (hereinafter "Hinckley Allen"). On February 28, 2003, via Hinckley Allen, Mr. Consigli submitted an eighty-three (83) page fax to Heery and Worcester consisting of the results of a docket search for Eastern's name in court indexes for the entire Commonwealth. Examination of this information revealed a number of cases which involve a totally different entity known as Eastern General Contractors which is not affiliated with Eastern in any way. No explanation as to the nature of each cause of action was provided to Worcester. A number of those cases appear to be matters in which Eastern may have been merely a stakeholder. The list also appears to include docket listings from other jurisdictions not involving Eastern, but another entity with the same name. Additionally, when Eastern sought an injunction following Worcester's award of the Project to Consigli/O'Connor, lawyers at Hinckley Allen, served Worcester's arguments in opposition, as evidenced by that firm's transmittal of Worcester's briefs to counsel for Eastern. A true and accurate copy of Hinckley Allen's correspondence serving said pleadings is attached hereto as Exhibit B.

4

of the Works, Richard M. Trifero, contacted Consigli/O'Connor directly on "their
perspective site contractors and plans." A true and accurate copy of this email
communiqué is attached hereto as Exhibit C. Consigli/O'Connor in turn responded in
writing, via facsimile, providing LPA with its plans and further indicated its plan to
complete the work in 30-32 months. Further, Worcester gave a directive not to contact
Eastern with regard to the Project, despite it being the low bidder. Also, none of the
factors communicated by Consigli/O'Connor seeking the contract were included in
Worcester's invitation to bid. This gave an unfair and improper advantage to the second
low bidder, Consigli/O'Connor.

Moreover, Heery produced a false and one sided negative review of Eastern upon
which Worcester then relied purportedly upon "objective" terms to reject Eastern's bid,
to incur an additional $1.3 million dollars in costs on the project of municipal funds, and
to award the contract to the favored company, Consigli/O'Connor. Such action directly
conflicts with the public bidding laws in Massachusetts which are designed to prevent
bad faith selections of "favored" contractors. Interstate Engineering Corp. v. Fitchburg,
367 Mass. 751, 758 (1975); Phipps Production Corp. v. Mass. Bay Transp. Auth., 387
Mass. 687, 691-92 (1982); Sciaba Constr. Corp. v. Boston, 35 Mass.App.Ct. 181 (189-
190 (1993).

Eastern has encountered circumstances where public statements of a
discriminatory manner have been made about its owner's national origin – in one
instance, Eastern's company was referred to as "sand niggers" and in another instance a
public statement was made about whether Mr. Ramesh Motwane, president of Eastern,
was a "dot or feather". Frequently, however, action is latent and must be proven by

5

circumstantial evidence, as the leading case in this Circuit recognizes. T&S Service
Associates, Inc. v. Crenson, 666 F.2d 722 (1st Cir. 1981).

For these reasons, the evidence is clearly relevant to material issues on the federal
and state claims against Worcester and Heery in this case and the depositions should be
ordered to proceed. There is no just cause for this belated effort to quash important
information within the broad confines of the rules of discovery.[2]

## IV. ARGUMENT

### A.    A PROTECTIVE ORDER IS NOT WARRANTED AS POST-BID TESTIMONY AND DOCUMENTS SOUGHT FROM ANTHONY CONSIGLI ARE RELEVANT TO THE ISSUES IN THE PENDING CAUSE OF ACTION

A protective order limiting the deposition testimony of Anthony Consigli is
clearly not warranted in this case. Post-bid documents and testimony would allow
Eastern to inquire into the activities and statements of Mr. Consigli, Worcester and Heery
occurring both before and after the award of the contract. Specifically, whether or not
meetings took place in which Anthony Consigli was present pertaining to the Project
would be relevant in determining whether in fact the Project proceeded as scheduled.
Additionally, post-bid communications by and between Mr. Consigli, Heery, Worcester
and/or any person party or entity which incorporated, discussed and/or commented on
Eastern's bid would clearly be relevant. Further, as identified during the course of
discovery there existed pre-bid communications between Heery, Worcester, specifically
Richard M. Trifero, and Consigli/O'Connor, as to Consigli/O'Connor's "perspective site
contractors and plans" and where Consigli/O'Connor indicated its plan to complete the

---

[2] It is important to note that the deposition of Anthony Consigli was held, as scheduled, on May 26, 2005.
However, counsel for Worcester repeatedly objected to inquiries regarding post bid and construction phase
activities and communications. As such, the deposition was suspended pending the outcome of
Worcester's Motion for a Protective Order.

work in 30-32 months. See Exhibit C. This occurred following direction from Richard
Trifero not to contact Eastern with regard to the Project despite it being the low bidder
and, where none of the factors communicated by Consigli/O'Connor were included in
Worcester's invitation to bid. Whether in fact these illegal pre-bid promises were
realized during the course of construction are indeed relevant in assessing not only the
validity of the Heery Report but also whether these pre-bid promises influenced the
selection of Consigli/O'Connor.

Additionally, on March 26, 2003, Worcester, based on the recommendations and
input of Jill Dagilis, Richard M. Trifero and Eric Twickler of Worcester, among others,
submitted a letter to Eastern rejecting Eastern's bid as "not the lowest responsible bidder"
on the Project. Worcester further stated Eastern "fails to demonstrate [it] possessed the
skill, ability and integrity to perform this particular contract" and that Eastern "failed to
meet the project management requirement of the bid specifications" (emphasis added). It
is this specific reference that is particularly relevant to Worcester's post bid activities,
that is whether in fact Consigli/O'Connor was held to the project management
requirements of the Project which was, as Worcester deemed, relevant in its
determination that Eastern was not the lowest eligible and responsible bidder on the
Project. If Consigli/O'Connor was not, then clearly it should not have been a factor in
rejecting Eastern's bid. Clearly, in order to assess whether Consigli/O'Connor was held
to the same standard as Eastern with regard to project staffing requirements, Eastern must
be able to inquire into the post-bid activities of Mr. Anthony Consigli, and others.

Accordingly, such matters are relevant, primarily since courts have consistently
recognized the need to rely upon circumstantial evidence concerning a party's racial

intent as it is highly unlikely that a defendant will produce direct evidence or "smoking gun" demonstrating its unlawful intent. *See, e.g.*, Stepanischen v. Merchants Despatch Trans. Corp., 722 F.2d 922, 929 (1st Cir. 1983); Baker v. Coxe, 52 F.Supp.2d 244, 250 (D.Mass. 1999); Smith v. F.W. Morse & Co. Inc., 76 F.3d 413, 421 (D.N.H. 1996); Hoeppner v. Crotched Mountain Rehabilitation Center Inc., 1993 WL 730415, 3 (D.N.H. 1993). As his testimony and evidence reasonably could lead to other matters that could bear on substantive issues, it is clearly relevant. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).

Additionally, if Eastern were to prevail in the pending cause of action, it would be entitled to seek money damages as the Defendants' violated Eastern's rights and should have awarded the contract to Eastern as low-bidder entitling Eastern to the value of the profits of the contract. Change orders increase the value of the contract and have a built-in markup for overhead and profit. Thus, for example, if the Project price increased by $3,000,000 in change orders and the markup for overhead and profit is 15%, Eastern would have an additional $450,000 in lost profit. Though section 1983 of the United States Code[3] does not specify the nature or extent of money damages available to an "injured party", federal common law has evolved on the subject, and would use the same measure of damages under the bad faith denial of a successful bid under the state law

---

[3] Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

claim.[4]  In Memphis Community School Dist. v. Stachura, 477 U.S. 299, (1986), the

Supreme Court commented, "(w)e have repeatedly noted that 42 U.S.C. §1983 creates 'a

species of tort liability' in favor of persons who are deprived of 'rights, privileges, or

immunities secured' to them by the Constitution." Id. at 305 quoting Carey v. Piuhus, 435

U.S. 247, 253 (1978) and Imbler v. Pachtman, 424 U.S. 409, 417 (1976) (footnote and

other citations omitted). See also, Smith v. Wade, 461 U.S. 30, 34 (1983) and Newport v.

Fact Concerts. Inc., 453 U.S. 247, 258-259 (1981).

As in tort law, damages under §1983 are intended to provide full compensation to

the injured party for injury caused by the defendant's breach of duty. Stachura, 477 U.S.

at 306.  In determining the appropriate measure of damages, courts look to the full extent

of the loss, including out-of-pocket costs as well as other monetary harm and, in

appropriate cases, damage to reputation, humiliation, mental anguish and suffering. Id. at

307; See also Gertz v. Robert Welch. Inc., 418 U.S. 323, 350 (1974) and Carey at 264

(mental distress compensable under §1983).  In Stachura, supra, the Court also

recognized that, in addition to the above factors, "(d)eterrence is ... an important purpose

of this system, but it operates through the mechanism of damages which are

compensatory...." Id. at 307.

On the constitutional claims, the measure and scope of damages is described by

the United States Supreme Court as follows:

---

[4] In instances where the wrongful rejection of a bid is in bad faith, or is arbitrary and capricious, the
sanction is lost profits. Roblin Hope Industries. Inc. v. J.A. Sullivan Corp., 6 Mass. App. Ct. 481, 489-491
(1978); Bradford & Bigelow v. Commonwealth, 24 Mass. App. Ct. 349, (1987); J.S. Luiz. III. Inc. v. Town
of Hanson, No. 94-P-2112, Slip Op. (Mass. App. Ct., August 13, 1996), Cf. Peabody Constr. Co., Inc. v.
City of Boston, 28 Mass. App. Ct. 101, 106 (1989). The Appeals Court upheld the award of lost profits in a
case where the refusal of the Town of Hanson to exercise its discretion to waive an informality in a bid
which was deminimus, was found to be arbitrary and capricious. J.S. Luiz. III. Inc. v. Town of Hanson.

9

> In order to further the purpose of §1983, the rules governing compensation
> for injuries caused by the deprivation of constitutional rights should be
> tailored to the interests protected by the particular rights in question . . .
> We agree with Mr. Justice Harlan that 'the experience of judges in dealing
> with private (tort) claims supports the conclusion that courts of law are
> capable of making the types of judgment concerning causation and
> magnitude of injury necessary to afford meaningful compensation for
> invasion of constitutional rights.'

Carey, 435 U.S. at 259 (quoting Bivens v. Six Unknown Federal Narcotics Agents, 403
U.S. at 409 (Harlan, J., concurring in judgment)).

Eastern was eligible and qualified to perform the contract at issue in this case. It

would have performed the Contract in its entirety, including any and all change orders

issued on the Contract but for unconstitutional or improper obstacles placed in its path by

the Defendants. The facts of this case compel the conclusion that Worcester's and

Heery's unconstitutional actions deprived Eastern of the Contract and that meaningful

compensation includes full recovery of all the benefits of that contract including post-bid

changes to the Contract. See Adarand Constructors, Inc.v. Pena, 115 S.Ct. 2097, 2104

(1995) ("Adarand's allegation that it has lost a contract in the past because of a

subcontractor compensation clause of course entitles it to seek damages for the loss of

that contract....") (emphasis added). Indeed, the United States Court of Appeals for the

First Circuit, citing Carey and Stachura, has specifically held that lost profits are the

appropriate measure of damages where a contractor loses a contract as the result of

unconstitutional, race-based state action. T&S Service Associates. Inc. v. Crenson, 666

F.2d 722 (1st Cir. 1981).

In T&S, a minority-owned catering service claimed that a municipal school

committee and school superintendent had wrongfully denied a federally funded school

lunch contract to it because of race. Id. The plaintiff in T&S prevailed in the United

10

States District Court for the District of Rhode Island and was awarded compensatory

damages for lost profits. T&S at 723, 728. On appeal, the First Circuit remanded the case

for further findings but commented specifically on the appropriate measure of damage

under 42 U.S.C. §§1981 and 1983 for the loss of a contract as follows:

> In the case of an injury of an economic nature the injured party is to be
> placed as near as possible in the situation he would have been in had the
> wrong not occurred. (citation omitted). Thus, damages for the relevant
> period are to be determined by measuring the difference between
> plaintiff's actual earnings for the period and those which he would have
> earned absent the discrimination of defendants. (citation omitted).

T&S, 666 F.2d at 728.

Here, there is evidence related to the calculation of Eastern's lost profit damages

on the Project arising from post-bid activities, particularly of Anthony Consigli.

Consigli/O'Connor was awarded the contract on the Project and was intimately involved

in the Project throughout construction. Change orders, requests for information, scope

changes and the like would impact the cost of the Project and in turn would be directly

relevant to Eastern's lost profits analysis. Additionally, if there were Project delays, this

would again impact Eastern's analysis. Absent testimony and documents pertaining to

post-bid activities, Eastern is left to solely rely on the contract amount set forth in

Consigli/O'Connor's bid. This, however, is not an accurate reflection of the course and

scope of the Project as built. Construction projects, primarily those of this magnitude,

inevitably encounter factors that influence the cost of the Project. These factors have a

clear bearing upon the subject matter of this cause of action. Absent a clear showing to

the contrary, this Court must allow Eastern to inquire into the post-bid activities of

Worcester. Miller v. Doctor's General Hospital, 76 F.R.D. 136, 138 (W.D.Okla.1977).

11

## V. CONCLUSION

For the foregoing reasons, Eastern respectfully requests that this Honorable Court

DENY Worcester's Motion for a Protective Order and allow reasonable inquiries as may

be permitted by the rules of discovery and which might lead to discoverable information.

Counsel can object to questions if they are too far removed from reasonable inquiry.

EASTERN CONTRACTORS, INC.,

By its attorneys,

Edward F. Vena (BBO# 508660)
Sabatino F. Leo (BBO# 642302)
George C. Deptula (BBO#1200820)
Vena Riley Deptula LLP
250 Summer Street, 2nd Floor
Boston, MA 02210
(617) 951-2400

Edward D. Quinlan (BBO#409060)
Quinlan & Sadowski, P.C.
Vanderbilt Avenue, Suite 250
Norwood, MA 02062
(781) 440-9909

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by (hand) (mail) on 3 JUNE 2005

12