UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EASTERN CONTRACTORS, INC., | |
| Plaintiff, | |
| v. | C.A. NO. 03-12216MLW |
| CITY OF WORCESTER and THOMAS R. HOOVER, City Manager, and, HEERY INTERNATIONAL, INC. and THOMAS E. ELLIS, JR. | |
| Defendants. | |

**MOTION OF THE PLAINTIFF, EASTERN CONTRACTORS, INC., TO COMPEL THE PRODUCTION OF DOCUMENTS AND THINGS OF THE DEFENDANTS, CITY OF WORCESTER, THOMAS R. HOOVER, HEERY INTERNATIONAL, INC. AND THOMAS E. ELLIS, JR.**

### I. INTRODUCTION

Now comes the Plaintiff, Eastern Contractors, Inc., (hereinafter "Eastern") and

hereby moves this Honorable Court to compel the production of documents and things

relating to the post-bid and construction phase of the Worcester Vocational High School

Project (hereinafter "Project"). As grounds for this Motion, Eastern hereby states that

activities following the award of the contract, during the post-bid and construction phase

of the Project, are particularly relevant in ascertaining facts, actions and communications

of the Defendants, City of Worcester, Thomas R. Hoover, Heery International, Inc. and

Thomas E. Ellis (collectively referred to as "Defendants") with regard to the Project,

possible admissions about bidding irregularities and conversations regarding issues

arising in this suit. In addition, post-bid and construction phase documents are relevant to

1

the pending cause of action as they pertain to lost profit damages of Eastern on the
Project.

## II. STANDARD OF REVIEW

Relevant evidence is "evidence having any tendency to make the existence of any
fact that is of consequence to the determination of the action more probable or less
probable that it would be without the evidence." Fed. R. Evid. 401. Relevant evidence
need not be admissible at the ultimate trial of the matter so long as the discovery "appears
reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P.
26(b)(1). The court must balance the needs of the party requesting the information and
the hardship to the party subject to the deposition. Truswall Systems Corp., v. Hydro-Air
Engineering, Inc., 813 F.2d 1207, 1210 (Fed. Cir.1987). The standard in determining
relevance, as recognized by the United States Supreme Court, is one broad enough to
"encompass any matter that bears on, or that reasonably could lead other matters that
could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v.
Sanders, 437 U.S. 340, 351 (1978). Relevance "is construed more broadly for discovery
than for trial." Truswall Systems Corp., 813 F.2d at 1211 *citing* Heat & Control, Inc. v.
Hester Industries, Inc., 785 F.2d 1017, 1024 (Fed. Cir. 1986) *citing* Centurion Industries,
Inc. v. Warren Steurer & Associates, 665 F.2d 323, 326 (10th Cir. 1981).

For purposes of Rule 26(b)(1), the term relevant "is not to be equated with
'relevant' as ordinarily used in determining admissibility of evidence upon a trial."
Foremost Promotions v. Pabst Brewing Co., 15 F.R.D. 128, 129 (N.D.Ill.1953) (quoting
Kaiser-Frazer Corp. v. Otis Co., 11 F.R.D. 50, 53 (S.D.N.Y.1951)); accord, Enger-Kress
Company v. Amity Leather Products Co., 18 F.R.D. 347, 349 (E.D.Wis.1955).

2

"Relevancy is broadly construed at the discovery stage of litigation and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." Miller v. Doctor's General Hospital, 76 F.R.D. 136, 138 (W.D.Okla.1977) (citations omitted) (emphasis added). Thus, "[d]iscovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action." Miller, 76 F.R.D. at 139 (citations omitted). Gagne v. Reddy, 104 F.R.D.

## III. FACTUAL BACKGROUND RELEVANT TO MOTION

Worcester submitted its invitation for bids on the new $70 million dollar Worcester Vocational High School project (hereinafter "Project") in early 2003. Eastern is a general contractor, with probably the most public school construction experience in the Commonwealth of Massachusetts. Eastern is qualified and experienced in this field, and certified by the Division of Capital Asset Management (hereinafter "DCAM") of the Commonwealth of Massachusetts which, in accordance with public bidding laws, has strict rules for the qualification of general contractors bidding on public construction projects.

Eastern was the low bidder on the Worcester Vocational School Project by a sum in excess of $1.3 million dollars. The second bidder had never constructed a public school project of the size, magnitude and complexity of this Project. In fact, it was unable to even qualify to construct such a school project except by means of a joint venture between Consigli Construction Company and O'Connor Constructors, Inc. The Consigli/O'Connor-Joint Venture (hereinafter referred to as "Consigli/O'Connor") had no track record whatsoever in coordinating work forces on similar major public school

3

construction projects. In fact, Mr. Anthony Consigli, president of Consigli Construction

Company, purportedly had some influence in Worcester, and wrote a defamatory letter,

addressed to Jill Dagilis, concerning Eastern's qualifications to perform the Project once

he had learned that Consigli/O'Connor was found to be the second low bidder on the

project. A true and accurate copy of Anthony Consigli's letter of February 26, 2003 is

attached hereto as Exhibit A.[1]

Worcester's actions asserting that Eastern is not a "qualified" or a "responsible"

bidder, conflicts with Eastern's DCAM certification and strongly injures its reputation in

the community. Nonetheless, Worcester proceeded to review and to reject Eastern's

qualifications in a false manner. The persons undertaking this action were primarily

defendant, Thomas Hoover, Ms. Dagilis, Mr. Twickler and Mr. Trifero. In later February

2003, post bid and prior to the contract award, Robert Para of Lamoureaux Pagano

Associates (hereinafter "LPA"), as directed by Worcester's Clerk of the Works, Richard

M. Trifero, contacted Consigli/O'Connor directly on "their perspective site contractors

and plans." A true and accurate copy of this email communiqué is attached hereto as

Exhibit C. Consigli/O'Connor in turn responded in writing, via facsimile, providing LPA

with its plans and further indicated its plan to complete the work in 30-32 months.

---

[1] In fact, Worcester utilized not only information it had received from Mr. Consigli, but additional matters that were delivered to Worcester via his attorneys, Hinckley Allen & Snyder, LLP (hereinafter "Hinckley Allen"). On February 28, 2003, via Hinckley Allen, Mr. Consigli submitted an eighty-three (83) page fax to Heery and Worcester consisting of the results of a docket search for Eastern's name in court indexes for the entire Commonwealth. Examination of this information revealed a number of cases which involve a totally different entity known as Eastern General Contractors which is not affiliated with Eastern in any way. No explanation as to the nature of each cause of action was provided to Worcester. A number of those cases appear to be matters in which Eastern may have been merely a stakeholder. The list also appears to include docket listings from other jurisdictions not involving Eastern, but another entity with the same name. Additionally, when Eastern sought an injunction following Worcester's award of the Project to Consigli/O'Connor, lawyers at Hinckley Allen, served Worcester's arguments in opposition, as evidenced by that firm's transmittal of Worcester's briefs to counsel for Eastern. A true and accurate copy of Hinckley Allen's correspondence serving said pleadings is attached hereto as Exhibit B.

4

Further, Worcester gave a directive not to contact Eastern with regard to the Project, despite it being the low bidder. Also, none of the factors communicated by Consigli/O'Connor seeking the contract were included in Worcester's invitation to bid. This gave an unfair and improper advantage to the second low bidder, Consigli/O'Connor.

Moreover, Heery produced a false and one sided negative review of Eastern upon which Worcester then relied purportedly upon "objective" terms to reject Eastern's bid, to incur an additional $1.3 million dollars in costs on the project of municipal funds, and to award the contract to the favored company, Consigli/O'Connor. Such action directly conflicts with the public bidding laws in Massachusetts which are designed to prevent bad faith selections of "favored" contractors. Interstate Engineering Corp. v. Fitchburg, 367 Mass. 751, 758 (1975); Phipps Production Corp. v. Mass. Bay Transp. Auth., 387 Mass. 687, 691-92 (1982); Sciaba Constr. Corp. v. Boston, 35 Mass.App.Ct. 181 (189-190 (1993).

Eastern has encountered circumstances where public statements of a discriminatory manner have been made about its owner's national origin – in one instance, Eastern's company was referred to as "sand niggers" and in another instance a public statement was made about whether Mr. Motwane was a "dot or feather". Frequently, however, action is latent and must be proven by circumstantial evidence, as the leading case in this Circuit recognizes. T&S Service Associates, Inc. v. Crenson, 666 F.2d 722 (1st Cir. 1981).

On July 15, 2004, Eastern served its First Request for Production of Documents on the Defendant, Heery, pursuant to Fed.R.Civ.P. 34. On August 12, 2004, Heery responded to Eastern's request and objected on the grounds that said requests were overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible, and sought irrelevant documents. A true and accurate copy of Heery's Response is attached hereto as Exhibit D. Specifcally, Heery objected to the production of any and all documents that were unrelated to the bid-phase of the Project.[2]

Additionally, on July 15, 2004, Eastern serve its First Request for Production of Documents upon the Defendant, Worcester, pursuant to Fed.R.Civ.P. 34. On October 29, 2004, Worcester responded to Eastern's request and objected to each request as overly broad, unduly burdensome and specifically limited its production to documents relating "to the bidding process, including the submittal of bids, evaluation of bids and rejection of Eastern's bid regarding [the Project]." A true and accurate copy of Worcester's response is attached hereto as Exhibit E.

## IV. ARGUMENT

**A.    THE DEFENDANTS' REFUSAL TO PRODUCE THE REQUESTED DOCUMENTS IS NOT WARRANTED AS POST-BID DOCUMENTS SOUGHT FROM THE DEFENDANTS ARE RELEVANT TO THE ISSUES IN THE PENDING CAUSE OF ACTION**

Documents relating to the post-bid and construction phase of the Project would allow Eastern to inquire into the activities and statements of the Defendants occurring both before and after the award of the contract. Specifically, whether or not meetings took place in which the Defendants were present pertaining to the Project would be relevant in determining whether in fact the Project proceeded as scheduled. Additionally,

---

[2] In fact, in each response, Heery limited production to the "bidding process, bids received by [Worcester], evaluation of bids by Heery or the rejection of Eastern's bid by [Worcester]…"

6

post-bid communications by and between the Defendants and/or any person party or

entity which incorporated, discussed and/or commented on Eastern's bid would clearly be

relevant. Further, as identified during the course of discovery there existed pre-bid

communications between Heery, Worcester, specifically Richard M. Trifero, Worcester's

Clerk of the Works, and Consigli/O'Connor, as to Consigli/O'Connor's "perspective site

contractors and plans" and where Consigli/O'Connor indicated its plan to complete the

work in 30-32 months. See Exhibit C. This occurred following direction from

Worcester, specifically Mr. Trifero, not to contact Eastern with regard to the Project

despite it being the low bidder and, where none of the factors communicated by

Consigli/O'Connor were included in Worcester's invitation to bid. Whether in fact these

illegal pre-bid promises were realized during the course of construction are indeed

relevant in assessing not only the validity of the Heery Report but also whether these pre-

bid promises influenced the selection of Consigli/O'Connor.

Additionally, on March 26, 2003, Worcester submitted a letter to Eastern rejecting

Eastern's bid as "not the lowest responsible bidder" on the Project. Worcester further

stated Eastern "fails to demonstrate [it] possessed the skill, ability and integrity to

perform this particular contract" and that Eastern "failed to meet the project management

requirement of the bid specifications" (emphasis added). It is this specific reference that

is particularly relevant to the Defendants' post bid activities, that is whether in fact

Consigli/O'Connor was held to the project management requirements of the Project

which was, as Worcester, in concert with Heery, deemed relevant in its determination that

Eastern was not the lowest eligible and responsible bidder on the Project. If

Consigli/O'Connor was not, then clearly it should not have been a factor in rejecting

Eastern's bid. Clearly, in order to assess whether Consigli/O'Connor was held to the same standard as Eastern with regard to project staffing requirements, Eastern must be able to inquire into the post-bid activities of the Defendants and others.

Accordingly, such matters are relevant, primarily since courts have consistently recognized the need to rely upon circumstantial evidence concerning a party's racial intent as it is highly unlikely that a defendant will produce direct evidence or "smoking gun" demonstrating its unlawful intent. *See, e.g.*, Stepanischen v. Merchants Despatch Trans. Corp., 722 F.2d 922, 929 (1st Cir. 1983); Baker v. Coxe, 52 F.Supp.2d 244, 250 (D.Mass. 1999); Smith v. F.W. Morse & Co. Inc., 76 F.3d 413, 421 (D.N.H. 1996); Hoeppner v. Crotched Mountain Rehabilitation Center Inc., 1993 WL 730415, 3 (D.N.H. 1993). As this evidence reasonably could lead to other matters that could bear on substantive issues, it is clearly relevant. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).

Additionally, if Eastern were to prevail in the pending cause of action, it would be entitled to seek money damages as the Defendants' violated Eastern's rights and should have awarded the contract to Eastern as low-bidder entitling Eastern to the value of the profits of the contract. Change orders increase the value of the contract and have a built-in markup for overhead and profit. Thus, for example, if this Project increased by $3,000,000 in change orders and the markup for overhead and profit is 15%, Eastern would have an additional $450,000 in lost profit. Though section 1983 of the United States Code[3] does not specify the nature or extent of money damages available to an

---

[3] Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any

8

"injured party", federal common law has evolved on the subject, and would use the same

measure of damages under the bad faith denial of a successful bid under the state law

claim.[4] In Memphis Community School Dist. v. Stachura, 477 U.S. 299, (1986), the

Supreme Court commented, "(w)e have repeatedly noted that 42 U.S.C. §1983 creates 'a

species of tort liability' in favor of persons who are deprived of 'rights, privileges, or

immunities secured' to them by the Constitution." Id. at 305 quoting Carey v. Piuhus, 435

U.S. 247, 253 (1978) and Imbler v. Pachtman, 424 U.S. 409, 417 (1976) (footnote and

other citations omitted). See also, Smith v. Wade, 461 U.S. 30, 34 (1983) and Newport v.

Fact Concerts. Inc., 453 U.S. 247, 258-259 (1981).

As in tort law, damages under §1983 are intended to provide full compensation to

the injured party for injury caused by the defendant's breach of duty. Stachura, 477 U.S.

at 306. In determining the appropriate measure of damages, courts look to the full extent

of the loss, including out-of-pocket costs as well as other monetary harm and, in

appropriate cases, damage to reputation, humiliation, mental anguish and suffering. Id. at

307; See also Gertz v. Robert Welch. Inc., 418 U.S. 323, 350 (1974) and Carey at 264

(mental distress compensable under §1983). In Stachura, supra, the Court also

recognized that, in addition to the above factors, "(d)eterrence is ... an important purpose

---

citizen of the United States or other person within the jurisdiction thereof to the
deprivation of any rights, privileges, or immunities secured by the Constitution and laws,
shall be liable to the party injured in an action at law, suit in equity, or other proper
proceeding for redress.

[4] In instances where the wrongful rejection of a bid is in bad faith, or is arbitrary and capricious, the
sanction is lost profits. Roblin Hope Industries. Inc. v. J.A. Sullivan Corp., 6 Mass. App. Ct. 481, 489-491
(1978); Bradford & Bigelow v. Commonwealth, 24 Mass. App. Ct. 349, (1987); J.S. Luiz. III. Inc. v. Town
of Hanson, No. 94-P-2112, Slip Op. (Mass. App. Ct., August 13, 1996), Cf. Peabody Constr. Co., Inc. v.
City of Boston, 28 Mass. App. Ct. 101, 106 (1989). The Appeals Court upheld the award of lost profits in a
case where the refusal of the Town of Hanson to exercise its discretion to waive an informality in a bid
which was deminimus, was found to be arbitrary and capricious. J.S. Luiz. III. Inc. v. Town of Hanson.

9

of this system, but it operates through the mechanism of damages which are

compensatory...." Id. at 307.

On the constitutional claims, the measure and scope of damages is described by

the United States Supreme Court as follows:

> In order to further the purpose of §1983, the rules governing compensation
> for injuries caused by the deprivation of constitutional rights should be
> tailored to the interests protected by the particular rights in question . . .
> We agree with Mr. Justice Harlan that 'the experience of judges in dealing
> with private (tort) claims supports the conclusion that courts of law are
> capable of making the types of judgment concerning causation and
> magnitude of injury necessary to afford meaningful compensation for
> invasion of constitutional rights.'

Carey, 435 U.S. at 259 (quoting Bivens v. Six Unknown Federal Narcotics Agents, 403
U.S. at 409 (Harlan, J., concurring in judgment)).

Eastern was eligible and qualified to perform the contract at issue in this case. It

would have performed the Contract in its entirety, including any and all change orders

issued on the Contract but for unconstitutional or improper obstacles placed in its path by

the Defendants. The facts of this case compel the conclusion that Worcester's and

Heery's unconstitutional actions deprived Eastern of the Contract and that meaningful

compensation includes full recovery of all the benefits of that contract including post-bid

changes to the Contract. See Adarand Constructors, Inc.v. Pena, 115 S.Ct. 2097, 2104

(1995) ("Adarand's allegation that it has lost a contract in the past because of a

subcontractor compensation clause of course entitles it to seek damages for the loss of

that contract....") (emphasis added). Indeed, the United States Court of Appeals for the

First Circuit, citing Carey and Stachura, has specifically held that lost profits are the

appropriate measure of damages where a contractor loses a contract as the result of

10

unconstitutional, race-based state action. T&S Service Associates. Inc. v. Crenson, 666
F.2d 722 (1st Cir. 1981).

In T&S, a minority-owned catering service claimed that a municipal school
committee and school superintendent had wrongfully denied a federally funded school
lunch contract to it because of race. Id. The plaintiff in T&S prevailed in the United
States District Court for the District of Rhode Island and was awarded compensatory
damages for lost profits. T&S at 723, 728. On appeal, the First Circuit remanded the case
for further findings but commented specifically on the appropriate measure of damage
under 42 U.S.C. §§1981 and 1983 for the loss of a contract as follows:

> In the case of an injury of an economic nature the injured party is to be
> placed as near as possible in the situation he would have been in had the
> wrong not occurred. (citation omitted). Thus, damages for the relevant
> period are to be determined by measuring the difference between
> plaintiff's actual earnings for the period and those which he would have
> earned absent the discrimination of defendants. (citation omitted).

T&S, 666 F.2d at 728.

Here, there is evidence related to the calculation of Eastern's lost profit damages
on the Project arising from post-bid activities, particularly of Worcester. Worcester
served as the Project's owner and Heery as the Project's Construction Manager. Each
was intimately involved in the Project throughout construction. Change orders, request
for information, scope changes and the like would impact the cost of the Project and in
turn would be directly relevant to Eastern's lost profits analysis. Additionally, if there
were Project delays, this would again impact Eastern's analysis. Absent testimony and
documents pertaining to post-bid activities, Eastern is left to solely rely on the contract
amount set forth in Consigli/O'Connor's bid. This, however, is not an accurate reflection

of the course and scope of the Project as built. Construction projects, primarily those of this magnitude, inevitably encounter factors that influence the cost of the Project. These factors have a clear bearing upon the subject matter of this cause of action. Absent a clear showing to the contrary, this Court must allow Eastern to inquire into the post-bid activities of Worcester. Miller v. Doctor's General Hospital, 76 F.R.D. 136, 138 (W.D.Okla.1977).

## V. CONCLUSION

For the foregoing reasons, Eastern respectfully requests that this Honorable Court GRANT its Motion Compel Discovery and issue a Court Order compelling such.

## RULE 26(C) AND LOCAL RULE 7.1(A)(2) CERTIFICATION

Counsel for Eastern hereby certifies that they have attempted to confer with counsel for Defendants in good faith to resolve or narrow the issues.

EASTERN CONTRACTORS, INC.,

By its attorneys,

_____
Edward F. Vena (BBO# 508660)
Sabatino F. Leo (BBO# 642302)
George C. Deptula (BBO#1200820)
Vena Riley Deptula LLP
250 Summer Street, 2nd Floor
Boston, MA 02210
(617) 951-2400

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by (hand)(mail) on   6 JUNE 2005

_____
Edward J. Quinlan (BBO#409060)
Quinlan & Sadowski, P.C.
Vanderbilt Avenue, Suite 250
Norwood, MA 02062
(781) 440-9909